UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re )<br><br>SGP ACQUISITION, LLC, )<br><br>Debtor. ) | Chapter 11<br><br>Case No. 04-13382 (PJW) |

| | |
|---|---|
| SLAZENGERS LIMITED; DUNLOP<br>SLAZENGER INTERNATIONAL<br>LIMITED; DUNLOP SPORTS GROUP<br>AMERICAS, INC.; DUNLOP<br>SLAZENGER MANUFACTURING LLC, )<br><br>Appellants,<br><br>against<br><br>SGP ACQUISITION, LLC; CREDITORS'<br>COMMITTEE of SGP ACQUISITION,<br>LLC; PROVIDENT BANK; KIMOLOS II,<br>L.P.; ZAPIS CAPITAL; and BENESCH,<br>FRIEDLANDER, COPLAN &<br>& ARONOFF LLP,<br><br>Appellees. | Civ. No. 05-cv-00563-UNA |

**APPELLANTS' OPENING BRIEF UNDER FED. R. BANKR. P. 8010**

**SCHULTE ROTH & ZABEL LLP**
Michael L. Cook
Sophie Kim
919 Third Avenue
New York, NY 10022
(212) 756-2000

**HAYNESWORTH SINKLER BOYD, P.A.**
Andrew J. White, Jr.
Jesse C. Belcher
75 Beattie Place
Two Liberty Square
Greenville, SC 296012
(864) 240-3200

**ZUCKERMAN SPAEDER LLP**
Thomas G. Macauley (No. 3411)
919 Market Street
Suite 990
Wilmington, DE 19801
(302) 427-0400

Dated:   August 8, 2005

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

BASIS OF APPELLATE JURISDICTION.............................................................. 1

STATEMENT OF ISSUES PRESENTED................................................................. 1

STANDARD FOR APPELLATE REVIEW ............................................................. 3

STATEMENT OF THE CASE................................................................................... 3

BACKGROUND FACTS .......................................................................................... 5

ARGUMENT ............................................................................................................ 13

I.    SLAZENGER, A CREDITOR, HAD STANDING TO OBJECT TO THE
      PROPOSED SETTLEMENT BETWEEN SGP AND THE INSIDERS ...................... 13

      A.    Slazenger Is a Creditor....................................................................... 13

      B.    Slazenger Is a Party in SGP's Chapter 11 Case ..................................... 17

      C.    Slazenger's Motivation Is Irrelevant ................................................... 18

II.   THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN
      EXPEDITING AND APPROVING SGP'S SETTLEMENT WITH
      THE INSIDERS............................................................................................ 19

      A.    Neither the Insiders Nor SGP Disclosed the Material Facts Relating to the
            Proposed Settlement ........................................................................... 20

      B.    The Settlement Motion Should Not Have Been Approved on an Expedited
            Basis................................................................................................... 22

      C.    The Bankruptcy Court Wrongly Deprived Slazenger of the Right To
            Conduct Pre-Trial Discovery, Contrary to Controlling Third Circuit Law .......... 23

      D.    The Bankruptcy Court Disregarded the Insider's Admitted Self-Dealing
            and Breach of Fiduciary Duty in the Proposed Settlement................................... 25

III.  THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW IN
      APPROVING THE INSIDERS' PROPOSED FINANCING......................................... 26

      A.    SGP Failed To Provide Any Notice That It Was Seeking Approval of the
            Insider Financing ................................................................................ 26

**TABLE OF CONTENTS**
(CONTINUED)

B.    The Lower Court Erred in Approving the Insider Financing When SGP Failed To Make Substantive Factual Showings Required for Superpriority and Secured Financing.......................................................................................... 28

CONCLUSION............................................................................................................................... 31

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Amatex Corp.*,
    755 F.2d 1034 (3d Cir. 1985)..........................................................................................17

*In re Ames Dep't Stores, Inc.*,
    115 B.R. 34 (Bankr. S.D.N.Y. 1990)..............................................................................28

*In re Aqua Assoc.*,
    123 B.R. 192 (Bankr. E.D. Pa. 1991) ............................................................................30

*In re AWECO, Inc.*,
    725 F.2d 293 (5th Cir. 1984) .........................................................................................22

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*,
    896 F.2d 54 (3d Cir. 1990)........................................................................................16, 17

*Citicorp Venture Capital, Ltd. v. Comm. of Creditors*,
    160 F.3d 982 (3d Cir. 1998)............................................................................................21

*Citizens Bank  v. Strumpf*,
    516 U.S. 16 (1995)....................................................................................................15, 16

*In re Comstock*,
    154 F. 747 (D.R.I. 1907)................................................................................................19

*In re Davidovich*,
    901 F.2d 1533 (10th Cir. 1990) ......................................................................................16

*In re Fabricators, Inc.*,
    926 F.2d 1458 (5th Cir. 1991) ........................................................................................21

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)................................................................................23, 24, 25

*In re Glickman*,
    204 B.R. 450 (E.D. Pa. 1997) ........................................................................................19

*In re Hartford Sands, Inc.*,
    372 F.3d 637 (4th Cir. 2004) ..........................................................................................21

*In re Herby's Foods, Inc.*,
    2 F.3d 128 (5th Cir. 1993) ..............................................................................................21

## TABLE OF AUTHORITIES
### (CONTINUED)

*In re Joint E. and S. Dist. Asbestos Litig.*, 129 B.R. 710 (E.D.N.Y. 1991), *rev'd on other grounds*, 982 F.2d 721 (2d Cir. 1992) ................................................... 23, 24

*Lee v. Schweiker*,
    739 F.2d 870 (3d Cir. 1984) ........................................................................... 15

*In re Lifschultz Fast Freight*,
    132 F.3d 339 (7th Cir. 1997) .......................................................................... 21

*In re Marin Motor Oil, Inc.*,
    689 F.2d 445 (3d Cir. 1982) ........................................................................... 13

*In re Marvel Entm't Group*,
    140 F.3d 463 (3d Cir. 1998) ............................................................................. 3

*In re Medomak Canning Co., Inc.*,
    123 B.R. 671 (D. Me. 1991) .............................................................................. 1

*In re Merle's Inc.*,
    481 F. 2d 1016 (9th Cir. 1973) .......................................................................... 1

*In re Mid-American Waste Sys., Inc.*,
    284 B.R. 53 (Bankr. D. Del. 2002) ................................................................... 21

*In re Mobile Steel Co.*,
    563 F.2d 692 (5th Cir. 1977) ...................................................................... 21, 25

*Myers v. Martin (In re Martin)*,
    91 F.3d 389 (3d Cir. 1996) ..................................................................... 3, 19, 20

*In re New World Pasta Co.*,
    322 B.R. 560 (M.D. Pa. 2005) ........................................................................... 1

*In re Papercraft Corp.*,
    211 B.R. 813 (W.D. Pa. 1997) ......................................................................... 21

*Protective Committee v. Anderson*
    390 U.S. 414 (1968) ........................................................................................ 21

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000) ............................................................................ 17

*Pepper v. Litton*,
    308 U.S. 295 (1939) .................................................................................. 21, 25

## TABLE OF AUTHORITIES
### (CONTINUED)

*In re RFE Indus., Inc.,*
    283 F.3d 159 (3d Cir. 2002) .............................................................................................19

*In re Remington Rand Corp.,*
    836 F.2d 825 (3d Cir. 1988)..........................................................................................14

*In re Scott Cable Communications, Inc.,*
    2002 Bankr. LEXIS 183 (Bankr. D. Del. 2002) ................................................................13

*Studley v. Boylston Nat'l Bank,*
    229 U.S. 523 (1913).......................................................................................................16

*In re Sully,*
    152 F. 619 (2d Cir. 1907)...............................................................................................19

*In re United Healthcare System, Inc.,*
    396 F.3d 247 (3d Cir. 2005)..............................................................................................3

*United States v. Norton,*
    717 F.2d 767 (3d Cir. 1983)...........................................................................................15

*In re University Med. Ctr.,*
    973 F.2d 1065 (3d Cir. 1992)...................................................................................15, 16

*Unofficial Comm. of Zero Coupon Noteholders v. The Grand Union Co.,*
    179 B.R. 56 (D. Del. 1995) .......................................................................................17, 18

*In re Zerodec Mega Corp.,*
    59 B.R. 272 (Bankr. E.D. Pa. 1986) ...............................................................................14

## FEDERAL STATUTES

11 U.S.C. § 101(5) ............................................................................................................14

11 U.S.C. § 101(10) ..........................................................................................................13

11 U.S.C. § 105................................................................................................................27

11 U.S.C. § 362(a)(1) ..........................................................................................................7

11 U.S.C. § 364....................................................................................................27, 28, 30

11 U.S.C. § 502(a) ...........................................................................................................27

11 U.S.C. § 503(b) ..................................................................................................27, 28, 29

# TABLE OF AUTHORITIES
## (CONTINUED)

11 U.S.C. § 506 .................................................................................................15, 16, 27

11 U.S.C. § 507(a) ....................................................................................................27

11 U.S.C. § 547(b) ......................................................................................................7

11 U.S.C. § 548 ...........................................................................................................7

11 U.S.C. § 553 ...................................................................................................15, 16

11 U.S.C. § 726 .........................................................................................................27

11 U.S.C. § 1107(a) .....................................................................................................2

11 U.S.C. § 1109(b) .............................................................................................13, 17

11 U.S.C. § 1114 .......................................................................................................27

28 U.S.C. § 158(a) ......................................................................................................1

## FEDERAL RULES

Fed. R. Bankr. P. 2002 ..........................................................................................22, 23

Fed. R. Bankr. P. 4001(c) ..........................................................................................27

Fed. R. Bankr. P. 9006(c)(2) ......................................................................................27

Del. Bankr. LR 9006-1(e) ...........................................................................................22

## MISCELLANEOUS AND TREATISES

2 Collier on Bankruptcy (15th rev. ed. 2004) ..............................................................14

4 Collier on Bankruptcy (15th rev. ed. 2005) .........................................................15, 16

Charles Jordan Tabb, *The Law of Bankruptcy* (1997) .........................................14, 16, 17

## PRELIMINARY STATEMENT

Slazengers Limited; Dunlop Slazenger International Limited; Dunlop Sports Group Americas, Inc.; and Dunlop Slazenger Manufacturing LLC (collectively, "Slazenger"), creditors of SGP Acquisition LLC ("SGP"), appealed on July 21, 2005 from an order (the "Order") entered by the bankruptcy court on July 15, 2005 approving a settlement agreement between SGP, its insiders Kimolos II, L.P. ("Kimolos") and Zapis Capital ("Zapis") (collectively, referred to as the "Insiders"), and other parties in interest. The bankruptcy court's order must be vacated and the matter remanded because neither SGP nor the Insiders disclosed the material facts behind their proposed settlement; the settlement was unfair, confirming the Insiders' self-dealing and breach of fiduciary duty; and because the bankruptcy court precluded Slazenger from taking discovery in order to develop a complete record for judicial review.

## BASIS OF APPELLATE JURISDICTION

The court has appellate jurisdiction under 28 U.S.C. 158(a) (district court has jurisdiction to hear appeals "from final judgments, orders and decrees").  Slazenger filed a timely notice of appeal on July 21, 2005.  Orders approving compromises and financing are final.  *See In re New World Pasta Co.*, 322 B.R. 560, 564 (M.D. Pa. 2005); *Medomak Canning Co., Inc*, 123 B.R. 671, 672 (D. Me. 1991) (citing *In re Merle's Inc.*, 481 F.2d 1016, 1018 (9th Cir. 1973)).

## STATEMENT OF ISSUES PRESENTED

This appeal presents the following issues:

1.     Did the bankruptcy court err in holding that Slazenger, a creditor, lacked standing to object to the proposed settlement between SGP and the Insiders?

2.     Did the bankruptcy court abuse its discretion in expediting and approving SGP's settlement with the Insiders when:

    (a)     neither the Insiders nor SGP, as debtor in possession,[1] disclosed the material facts relating to the proposed settlement;

    (b)     SGP's only reason for seeking an expedited approval hearing was its assertion that it did "not anticipate any objections to the proposed" settlement;

    (c)     the lower court deprived Slazenger of the right to conduct pre-trial discovery from the Insiders in order to develop a complete record for judicial review; and

    (d)     the lower court disregarded the Insiders' admitted self-dealing and breach of fiduciary duty in the proposed settlement.

3.     Whether the bankruptcy court erred in approving the Insiders' proposed financing when:

    (a)     SGP's notice of the July 14, 2005 court hearing failed to mention any proposed financing;

---

[1]   A Chapter 11 debtor in possession has "all the rights ... and powers, and shall perform all the ... duties ... of a trustee ...."  11 U.S.C. § 1107(a).

      (b)      SGP's motion for approval for the proposed settlement dated July 1, 2005, expressly stated that the "parties are presently documenting the detailed terms of this supplemental [Insider] financing arrangement [and SGP] will file a separate motion for approval of the debt-in-possession arrangement outlined in the [attached] Supplemental Funding and Settlement Agreement"; and

      (c)      SGP failed to make the substantive factual showing for superpriority and secured financing required by the Bankruptcy Code.

## STANDARD FOR APPELLATE REVIEW

The Court reviews "legal determinations" de novo. *In re United Healthcare System, Inc.*, 396 F.3d 247, 249 (3d Cir. 2005). An appellate court reviews a bankruptcy court's approval of a compromise under an "abuse of discretion" standard. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 391 (3d Cir. 1996). "An abuse of discretion exists where the. . .court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *In re Marvel Entm't*, 140 F.3d 463, 470 (3d Cir. 1998) (internal quotation omitted).

## STATEMENT OF THE CASE

Slazenger appeals from a July 15, 2005 bankruptcy court Order (A 256-279)[2] authorizing SGP to enter into a settlement agreement with the Insiders (the "Insider

---

[2]    All "A" citations refer to the accompanying Appendix to Slazenger's brief. Numbers refer to the page(s) of the Appendix.

Settlement Agreement"). The same order also authorized SGP to enter into a financing
arrangement with its Insiders (the "Insider Financing").

Slazenger filed a timely objection to the proposed Insider Settlement
Agreement, showing that SGP had not disclosed the material facts regarding the proposed
settlement, and that, in any event, the settlement was unfair. (A 188-193.) Nor had SGP
disclosed the key facts of the Insider Financing, expressly stating that it would file
additional motion papers detailing the terms of the Insider Financing on a later date. (A
167, n.1.) Prior to the July 14 hearing on the Insider Settlement Agreement, Slazenger
had timely served notices of deposition on two SGP officers (A 194-197), one of whom
(SGP's chief executive officer) admittedly spent 20% of his time working for Zapis, an
Insider (A 34, at 34:5-18).

Late in the day before the July 14 hearing, SGP, but not the Insiders,
responded to the Slazenger objection. SGP failed to deny any of the material facts of the
Insider self-dealing alleged by Slazenger, arguing instead that Slazenger lacked standing
to be heard on the proposed settlement with the Insiders. (A 198-201.) The Insiders
never responded. Late in the same day, July 13, SGP also filed a proposed order not only
approving the proposed Insider Settlement Agreement, but also approving a financing
arrangement with its Insiders (the "Proposed Order"). (A 202-228.)

Again, SGP, but not the Insiders, appeared at the July 14 hearing in
support of the compromise motion. Counsel for the SGP creditors' committee (the
"Committee") supported the motion with colloquy, not evidence. (A 245-248, at 17:21 -
20:14.) SGP argued that Slazenger lacked standing to be heard. (A 236, at 8:1-5.) The
Committee's counsel then argued that the Insiders had negotiated the proposed settlement

4

and financing with him, never denying, however, that the Insiders had self-dealt in the proposed settlement. (A 246, at 18:2-4.) ("... [t]he debtors [i.e., SGP and the Insiders] and the banks [i.e., Provident (defined below)] took the position that the allocation to the preference and fraudulent transfer action should be roughly $225,000 ....").

The bankruptcy court granted SGP's motion, holding that Slazenger lacked standing to be heard and characterizing Slazenger as a "stranger" to the case. (A 250, at 22:20-22.) Stating that it gave "great deference" to the creditors' committee, the court questioned Slazenger's motive for challenging the proposed settlement ("to burden the estate with additional legal expenses and ... to wear them out"). (A 254-255, at 26:3-6, 26:22 – 27: 2.) This appeal followed.

## BACKGROUND FACTS

1.    Pre-Bankruptcy Financing; Insider Guaranty.  SGP and one of the settling parties, the Provident Bank ("Provident"), had entered into an "Amended and Restated Credit Facility and Security Agreement," dated as of November 26, 2002 (the "Credit Agreement"). Essentially, Provident provided SGP with a $6 million revolving credit facility plus a $3 million over-advance facility. When SGP filed its Chapter 11 petition on November 30, 2004, it owed Provident approximately $4.9 million on the revolving credit facility and approximately $2.4 million on the over-advance facility. (A 116-117, at 22:19 - 23:2, 23:7-17.) To secure its obligations, SGP granted Provident a continuing security interest in virtually all of its assets. Most important here, Kimolos, one of the two Insiders, had also guaranteed SGP's approximately $2.4 million over-advance obligation. (Id.)

5

2.    <u>Commencement Of Reorganization Case; Contract Suit</u>.  SGP commenced this reorganization case on November 30, 2004, citing a contract dispute arising out of SGP's license agreement (the "<u>License</u>") with Slazengers Limited and Dunlop Slazenger International Limited.  Shifting all responsibility for its business failure (<u>e.g.</u>, losses, mismanagement) to Slazenger, SGP then sued Slazenger and others in the bankruptcy court on December 8, 2004,[3] alleging breach of contract and tort claims (the "<u>Contract Suit</u>").

Slazenger and the other defendants denied the material allegations of the SGP complaint and counterclaimed on January 7, 2005.  Since then, however, SGP failed to prosecute its complaint in the more than seven months that the suit has been pending.

3.    <u>Post-Bankruptcy Financing; Insider Guaranty</u>.  Provident agreed to provide SGP with post-bankruptcy financing, allowing SGP to use Provident's cash collateral pursuant to a court-approved agreement.  Provident further agreed to extend to SGP a $600,000 post-bankruptcy credit facility to provide additional borrowings whenever cash collateral would be insufficient to fund SGP's operations.  Again, Kimolos, one of SGP's insiders, guaranteed the $600,000 post-bankruptcy facility, in addition to its guaranty of approximately $2.4 million of SGP's pre-bankruptcy facility (collectively, the "<u>Kimolos Guaranty</u>").  (A 118-119, at 93:10 - 94:5.)

---

[3]    SGP commenced its suit one day after Slazenger had moved for the transfer of the SGP case from Delaware to South Carolina, with the support of twelve other unsecured creditors who in total, represented about 72% of SGP's unsecured debt. Indeed, two Slazenger entities held approximately 42% of SGP's total unsecured indebtedness.  The bankruptcy court denied Slazenger's venue transfer motion on January 7, 2005, reasoning that the case belonged in Delaware because SGP had retained Delaware bankruptcy co-counsel and that notice under the Slazenger/SGP license had to be given to SGP's Insiders in Cleveland, Ohio.

4.    <u>The SGP Fraudulent Transfer And Preference Suits</u>.  Within months of its bankruptcy filing, SGP also sued two Slazenger entities for the recovery of approximately $1.7 million under §§ 547(b) and 548 of the Bankruptcy Code, alleging preferential transfers and a fraudulent transfer.  The two Slazenger entities answered the claims, denying that there was any liability on their part, disputing the facts alleged, and moving for an order dismissing the fraudulent transfer suit as a matter of law.

5.    <u>Other Bankruptcy-Related Litigation</u>.  Slazenger moved on February 28, 2005 for an order modifying the statutory automatic stay of litigation (11 U.S.C. § 362(a)(1)) so as to terminate all its agreements with SGP.  SGP, the Committee and Provident opposed that motion.  Similarly, Slazenger moved at that time for an order terminating SGP's exclusive right to file a reorganization plan, and sought the opportunity to file a competing plan.  Again, SGP, the Committee and Provident opposed that motion.

6.    <u>Slazenger Conversion Motion</u>.  Slazenger moved on May 27, 2005 for an order converting the SGP reorganization case to a liquidation under chapter 7 of the Bankruptcy Code.  It cited SGP's huge losses; admitted insolvency; failure to propose a reorganization plan; concealment of disastrous post-bankruptcy operating results; conflict of interest, breach of fiduciary duty and self-dealing by SGP's Insiders.  (A 50-114.)  Again, SGP and its allies opposed the relief requested.

7.    <u>The SGP/Slazenger Group Settlement</u>.  SGP and Slazenger negotiated a partial compromise of their disputes.  In exchange for (a) SGP's rejecting and terminating its agreements with Slazenger and (b) SGP's dismissal of the preference

and fraudulent transfer suits, Slazenger agreed to pay SGP the sum of $575,000 and to

"withdraw and not assert" in SGP's bankruptcy case its claims for unpaid royalties,

unpaid goods and contract damages. (A 136, ¶ 1.) The parties expressly agreed,

however, that SGP's "[c]ontract [s]uit ... the counter-claims [of two Slazenger entities],

and all defenses and offsets assertable by all parties in the Contract Suit [would] survive

and not be affected by" their settlement agreement. (A 137, ¶ 3.) The bankruptcy court

approved the SGP/Slazenger settlement agreement on June 27, 2005, in an order that is

final and no longer subject to appellate review. (A 157-158.) The parties have, in fact,

closed and implemented their settlement agreement.

       8.   <u>Insider Settlement</u>. SGP moved on July 1, 2005 for an "order

approving a settlement agreement between [it] and other key parties in interest ...." (A

161.) In its notice of this motion, SGP reiterated its opaque description of the relief

sought, but made no mention of its intention to seek approval of any Insider financing on

July 14, 2005, when the proposed compromise would be heard. (A 159.) To the

contrary, SGP expressly stated that the "parties are presently documenting the detailed

terms of this supplemental [Insider] financing arrangement," and when "those documents

have been prepared, [SGP] will file a separate motion for approval of the [Insider]

financing arrangement ...." (A 167, n.1.)

       In the motion, SGP described its business relationship with Slazenger,

reiterating SGP's assertion that the corporate parent of Slazenger had intended to

terminate improperly its licensing and manufacturing relationships with SGP. (A 162-

163, ¶¶ 5-8.) SGP then described its limited settlement agreement with Slazenger, but

then only partially described its proposed settlement with "Major Parties In Interest" that

would "resolve [an undetailed] dispute over the allocation of the [Slazenger] Settlement

Proceeds." (A 166, ¶ 14.) A copy of the proposed Insider Settlement Agreement is

attached to the SGP motion. (A 172-182.) Nowhere in the SGP motion and the proposed

Insider Settlement Agreement is there any mention of the insider relationship between

Kimolos and Zapis, on one hand, and SGP, on the other. Nor is there any mention of the

Kimolos Guaranty of the Provident loan to SGP; how the Insider guaranty obligation

would be reduced as a direct result of the proposed Insider Settlement Agreement; and

how Kimolos would, as a result of the proposed settlement, be able to convert its

nonpriority unsecured reimbursement claim arising from its Guaranty into a priority

secured claim at the expense of other creditors.

        9.    The Bankruptcy Court's Expedited Approval Process. Based on

SGP's motion, the bankruptcy court entered an order authorizing SGP to limit notice of

the hearing on approval of the Insider Settlement Agreement. (A 187.) SGP gave as its

sole reason for limiting notice and expediting approval of the Insider settlement the

following:

> "The proposed Settlement and related Supplemental
> Funding Agreement [was] described generally to the Court
> and other interested parties at the last omnibus hearing, and
> [SGP] does not anticipate any objections to the proposed
> Settlement Agreement at the July 14 hearing."

(A 184, ¶ 4.)

        Aside from failing to describe the insider relationship between Kimolos,

Zapis and SGP, SGP's compromise motion failed to disclose any of the details of the

"dispute over the allocation of the [Slazenger] settlement proceeds." (A 166, ¶ 14.) SGP

never described what the dispute was; who asserted what or why; and what the parties'

contentions were. SGP then went on to describe how the Slazenger settlement proceeds would be allocated. More than half of these proceeds would "be paid to [Provident] and applied to [SGP's] obligations to [Provident] ...." (A 166, ¶ 14(2).) Viewed most generously, therefore, SGP appeared to be referring to a routine undisclosed inter-creditor dispute, but only explaining how it would be resolved.

        10.    The Slazenger Objection To The Insider Settlement. Slazenger objected on July 11, 2005, noting SGP's failure to identify the Insiders and their relationship with SGP. (A 190-192, ¶¶ 7-12.) Aside from failing to disclose key facts, all of the material terms and other key details of the contemplated Insider Financing, Slazenger argued that the proposed settlement confirmed the bad faith self-dealing of SGP's Insiders. (Id.) It asked for full disclosure of all the material facts and an opportunity to develop the record in order to show the court the true significance of the proposed settlement. (A 192, ¶ 13.) Slazenger also timely served deposition notices on SGP prior to the July 14 hearing on the Insider Settlement. (A 194-197.) Specifically, Slazenger showed that SGP's Insiders had

> wrongfully forced the estate's professionals (e.g., the
> Benesch firm) to agree to an artificial allocation of the
> $575,000 Slazenger Settlement Proceeds: $290,000
> attributable to resolution of the [SGP/Slazenger Group]
> [l]icense dispute; and $285,000 to resolution of SGP's
> $1.7 million preference claims against [two] members of
> the Slazenger Group. This allocation was made, despite
> SGP's estimated valuation, in a document provided to
> Provident, of its preference claim as $669,000.

(A 191, ¶ 8.)

        Slazenger went on to explain, as best it could, the significance of the Insiders' self-serving allocation of the settlement proceeds:

10

> One of the insiders -- Kimolos -- guaranteed about
> $3 million of SGP's secured obligation to Provident.  To the
> extent that obligation is reduced with SGP's assets, SGP's
> Insiders benefit.  A debtor's payment on a guaranteed
> obligation benefits the guarantor by reducing its exposure.
> (citation omitted).

(A 191, ¶ 9.)

Moreover, Slazenger noted its continued insistence to SGP "that [its] cash payment to SGP [had been] attributable solely to the SGP preference claims, and not to any other SGP claim," reiterating its prior refusal "to agree to any allocation of the [SGP/Slazenger] Settlement Proceeds [in the parties' settlement agreement], and [that] SGP [had] acquiesced."  (A 191, ¶ 10.)

Finally, Slazenger showed that had "SGP been able to allocate the Slazenger Settlement proceeds properly to the SGP preference claims, those proceeds would [have been] unencumbered by Provident's lien and available for the satisfaction of allowed administrative expenses such as professional fees," but with no benefit to SGP's Insiders.  (A 191, ¶ 11.)  More significant was Slazenger's showing of the undisclosed benefits to SGP's Insiders from the proposed settlement, stressing the consequences to the Insiders had there been no settlement:

> (a) there would be no payment [by SGP] on the Insiders'
> guaranteed obligation to Provident [and thus reduction of
> the Insiders' liability to Provident]; and (b) the Insiders'
> reimbursement claim against SGP would not be entitled to
> any priority in payment.

(A 191-192, ¶ 11.)

Slazenger stressed, too, that SGP and its Insiders had "offered no explanation of or a rationale for their self-serving, cynical allocation of the [Slazenger]

settlement proceeds." (A 192, ¶ 12.) It cited well-established authority subjecting an insider's dealings with a debtor to rigorous scrutiny. (Id.)

Slazenger finally asked for the Insiders' appearance and an accounting by them for the proposed allocation of the Slazenger settlement proceeds. It reiterated its request for expedited pre-trial discovery. Slazenger stressed, moreover, that mere insider financing of the litigation against Slazenger would ordinarily not be objectionable, but that this kind of financing was objectionable because the Insiders had rigged the process for their own benefit: they concealed material facts; failed to appear; and failed to account for their conduct. (A 192, ¶ 13.)

11. SGP's Reply. SGP responded on July 13, 2005. It merely argued that Slazenger lacked standing to be heard; other parties in the case supported the proposed settlement agreement; the proposed Insider Financing and other terms of the Insider Settlement Agreement would not affect any defense or counterclaim that Slazenger could assert; and that Slazenger is merely a third party, attempting to interfere with "an administrative settlement." (A 198-201.) Significantly, the Insiders and SGP never disputed the material facts shown by Slazenger. Indeed, the Insiders never even appeared at the court hearing.

12. The July 14, 2005 Court Hearing. The lower court accepted SGP's lack-of-standing argument, granted the motion, and described Slazenger as a "stranger" to the case. (A 250, at 22:20-22.) As a result, it conducted no evidentiary hearing, apparently relying on the lack of any recognizable opposition to the settlement motion. Because the court also authorized the Insider Financing, Slazenger asked for a stay pending appeal, which the court denied. (A 252, at 24:2-6; A 254, at 26:20.)

## ARGUMENT

## I.

## SLAZENGER, A CREDITOR, HAD STANDING TO OBJECT TO THE PROPOSED SETTLEMENT BETWEEN SGP AND THE INSIDERS

### A.    Slazenger Is a Creditor

Slazenger is a creditor of SGP's estate, and had the absolute right to be heard.  Bankruptcy Code ("Code") § 1109(b) provides that a "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under" chapter 11.  *See* 11 U.S.C. § 1109(b) (emphasis added).  "[A]ll of the parties listed in § 1109(b) have the absolute right to ... 'be heard on any issue in a case under' chapter 11." *In re Scott Cable Communications, Inc.*, 2002 Bankr. LEXIS 183, at *8 (Bankr. D. Del. 2002) (emphasis added) (Exhibit A) (quoting *In re Marin Motor Oil, Inc.*, 689 F.2d 445, 453-54 (3d Cir. 1982)).

Code § 101(10) defines the term "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. 101(10)(A) (emphasis added).

In turn, a "claim" is defined as a

(A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B)    right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

13

11 U.S.C. § 101(5). Congress defined a claim "in the broadest possible terms ...." *In re Remington Rand Corp.*, 836 F.2d 825, 826 (3d Cir. 1988); *see also In re Zerodec Mega Corp.*, 59 B.R. 272, 274 (Bankr. E.D. Pa. 1986) ("The legislative history of the Code reveals that a claim is given the broadest possible definition .... The statute contemplates that all legal obligations of the debtor, no matter how remote or contingent," are recognizable.) (emphasis added); 2 *Collier on Bankruptcy* ¶ 101.05, at 101-26 (15th rev. ed. 2004) ("By fashioning a single definition of 'claim' in the Code, Congress intended to adopt the broadest available definition of that term."); Charles Jordan Tabb, *The Law of Bankruptcy* § 7.1, at 469 (1997) (The broad definition of "claim . . .permits the broadest possible relief in the bankruptcy court") (hereinafter, "Tabb").

Slazenger holds at least $12 million of both pre-bankruptcy and post-bankruptcy claims against SGP. SGP has expressly acknowledged these claims. (A 125-126, ¶ 10(a), (d); A 136-137, ¶¶ 1, 3.) ("[Slazenger] will withdraw and not assert [in the pending bankruptcy case] its claims for $434,476.62 in pre-bankruptcy royalties due under the License Agreement . . . its administrative priority claim of at least $712,499 (as of May 31, 2005) in post-petition royalties due under the License Agreement ... and ... its unsecured claim arising under the Supply Agreement, which totals approximately $2.4 million, in the Bankruptcy Case"; "the counter-claims of [Slazenger] asserting unpaid royalties and damages survive and are not affected by this agreement ....") (emphasis added). Under the terms of the SGP/Slazenger settlement, those claims are assertable in SGP's Contract Suit as counterclaims, defenses and offsets. (A 126, ¶ 10(d); A 137, ¶ 3.) Slazenger has in fact counterclaimed for breach of contract, seeking monetary damages. (A-137, ¶ 3.)

14

At the hearing to approve the Insider Settlement Agreement, the lower court and SGP's counsel focused on the limitations of Slazenger's right to recover on its counterclaims and offsets against any possible recovery by SGP. (A 237-238, at 9:6-10:11; A 253 at 25:15-21.) Any limitation on Slazenger's recovery as a creditor, however, is irrelevant because of the Code's plain language definition of a creditor. Slazenger still has a "right to payment" on its counterclaims that consititute a dollar-for-dollar offset against SGP's claims against Slazenger. The SGP/Slazenger settlement only partially caps that right (i.e., Slazenger's termination/rejection damages are limited to 5 years). Accordingly, Slazenger has "claims" against SGP, and is a creditor.

Not only are Slazenger's counterclaims against SGP "claims" under the Code, but such claims are given secured status under Code § 506(a), which provides, in relevant part, as follows:

> An allowed claim of a creditor ... that is subject to setoff under section 553 of this title, is a secured claim ... to the extent of the amount subject to setoff ... and is an unsecured claim to the extent that ... the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a). Setoff under Code § 553, in effect, "elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor." *In re University Med. Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992) (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)); *see also United States v. Norton*, 717 F.2d 767, 770 (3d Cir. 1983), *overruled on other grounds by Citizens Bank v. Strumpf*, 516 U.S. 16 (1995); 4 *Collier on Bankruptcy* ¶ 506.03, at 506-16 (15th rev. ed. 2005) ("[S]ection 506(a) provides that the existence of a right of setoff establishes the existence of a secured claim for purposes of the section if the setoff right is valid under section 553

15

of the Code."); Tabb, *supra*, § 3.7, at 165 (a "creditor is deemed to have a secured claim in the bankruptcy case in the amount subject to setoff.").

The right of setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Strumpf*, 516 U.S. at 18 (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)). The equitable right of setoff has long been recognized in bankruptcy. *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir. 1990). "Code § 553 gives a creditor the 'right to offset a mutual debt owing by such creditor to the debtor,' provided that both debts arose before commencement of the bankruptcy action and are in fact mutual." *University Med. Ctr.*, 973 F.2d at 1079; *In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990). "Virtually any type of obligation may qualify as a "claim" or a "debt" for purposes of section 553." 4 *Collier on Bankruptcy* ¶ 506.03, at 506-16 to 506-17 (emphasis added).

The SGP/Slazenger settlement here expressly preserves Slazenger's right to set off its counterclaims against any amounts ultimately recoverable by SGP. (A 137, ¶ 3.) As the lower court itself noted, most of SGP's claims against Slazenger are based on pre-bankruptcy conduct. (A 240 at 12:10-14.) and Slazenger's counterclaims against SGP are partially based on pre-bankruptcy contractual breaches. Accordingly, mutual debts and claims exist between SGP and Slazenger. Slazenger's claims are secured under § 506(a) "to the extent of the amount subject to setoff," and unsecured "to the extent . . . .the amount so subject to setoff is less than the amount of such allowed claim." *See* 11 U.S.C. § 506(a). Accordingly, Slazenger is, at the very least, a secured creditor under § 506(a).

16

Slazenger's counterclaims include valid pre-bankruptcy claims based on breach of contract. *Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d at 59 ("Although [a] claim had not been reduced to judgment on the filing date, it is nonetheless a valid claim."); Tabb, *supra*, § 7.1, at 469 ("[A] creditor with a 'right to payment' has a bankruptcy claim even if that right to payment is unliquidated, or contingent, or unmatured, or disputed. For example, [a] tort victim. . .would have a claim under the Code, even if [its] claim was not fixed or liquidated at the time the bankruptcy case was filed."). Slazenger is thus a creditor of SGP, and had an absolute right to be heard on <u>any</u> matter in SGP's chapter 11 case, including the motion to approve the Insider Settlement Agreement. Accordingly, the lower court erred, as a matter of law, when it found that Slazenger had no standing to be heard.

**B.**    **Slazenger Is a Party in SGP's Chapter 11 Case**

Slazenger is still an interested party, in any event, with a right to be heard under Code § 1109(b), for it has a sufficient financial stake in SGP's chapter 11 case. Section 1109(b) "makes clear" that any "'party in interest' may appear and be heard in a chapter 11 case." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985). The Code does not define "party in interest," but it is "clear ... that the term ... is not limited by the small list of examples in § 1109(b)." *Id.* A court must determine on a case by case basis whether a prospective party in interest has a "sufficient stake" in the case so as to require representation. *Id.* (*held*, unknown future asbestos claimants are parties in interest); *see also In re PWS Holding Corp.*, 228 F.3d 224, 248-49 (3d Cir. 2000) ("Title 11 U.S.C. ¶ 1109(b) ... confers broad standing at the trial level.").

An instructive case on this issue is *Unofficial Comm. of Zero Coupon Noteholders v. The Grand Union Co.*, 179 B.R. 56 (D. Del. 1995). In *Grand Union*, the

17

Delaware District Court held, when reversing the same bankruptcy judge here, that zero coupon noteholders who were not the debtor's creditors, but creditors of the debtor's parent, were still parties in interest with a right to be heard. *Id.* at 59. In determining whether an entity is a "party in interest," the entity "need not show [it is] a creditor or equity holder of the debtor, or that [it has] some direct claim to [debtor's] assets. Rather, [it] need only show a sufficient stake to require representation." *Id.* Accordingly, parties who were not creditors or equity holders were still parties in interest because of their "practical stake" in the outcome of the debtor's case. *Id.*

Slazenger is admittedly the defendant and counterclaim plaintiff in SGP's Contract Suit, which is "one of [SGP's] primary remaining assets." (A 170, ¶ 18.) In the Contract Suit, Slazenger has asserted at least $12 million in claims (e.g. goods sold and delivered; unpaid pre-bankruptcy and post-bankruptcy royalties; damages from rejection of the License and other agreements with Slazenger)[4] against SGP, which will likely wipe out any potential recovery that SGP allegedly may have against Slazenger. Slazenger, therefore, has an enormous financial and sufficient stake in SGP's chapter 11 case, which includes the liquidation of its assets and litigation against Slazenger.

### C.    Slazenger's Motivation Is Irrelevant

Slazenger had an absolute the right to be heard on whether SGP had disclosed all the material facts when seeking court approval of the Insider Settlement

---

[4]    SGP described these claims to the bankruptcy court as follows: "claim for $434,476.62 in pre-bankruptcy royalties allegedly due under the [License]. . .administrative priority claim of at least $712,499 (as of May 31, 2005) in post-petition royalties allegedly due under the [License] ... unsecured claim allegedly arising under the Supply Agreement, which totals approximately $2.4 million ...."; "claim exceeding five years' damages or right to offset for that amount in the Contract Suit based on or arising from the rejection of the Agreements." (A 125-126, ¶ 10(a), (d).)

18

Agreement. At the hearing on July 14, 2005, however, the bankruptcy judge and SGP's counsel speculated about Slazenger's motives in seeking discovery and objecting to the settlement. (A 253-254, at 25:22-26:19.)[5] Slazenger's motive, however, is irrelevant to the standing issue. *In re Sully*, 152 F. 619, 621 (2d Cir. 1907). ("The element of motive cannot prejudice the assertion of a clear legal right or statutory privilege."); *In re Comstock*, 154 F. 747, 748-49 (D.R.I. 1907) (*held*, creditor who allegedly bought claim for purpose of forcing settlement or discontinuance of a suit instituted by trustee, through threats of opposition to confirmation, had standing to object to confirmation; creditor objected within his legal rights).

## II.

### THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN EXPEDITING AND APPROVING SGP'S SETTLEMENT WITH THE INSIDERS

The bankruptcy court abused its discretion by improperly approving the Insider Settlement Agreement over Slazenger's objection, with no factual support in the record, after denying Slazenger's timely request for discovery. *In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002) (*held*, court failed to apply proper criteria with findings; on remand, court must determine "fairness, reasonableness and adequacy" of proposed settlement), citing *In re Martin*, 91 F.3d 389 (3d Cir. 1996); *In re Glickman*, 204 B.R. 450, 455 (E.D. Pa. 1997) (bankruptcy court failed to review terms of settlement under appropriate standard). The record here was incomplete. SGP failed to explain the artificial allocation of the settlement proceeds.

---

[5] Slazenger, as a creditor, wants to see its preference settlement proceeds used for the estate's benefit, not artificially allocated to reduce the Insiders' exposure to Provident.

### A.    Neither the Insiders Nor SGP Disclosed the
###         Material Facts Relating to the Proposed Settlement

Slazenger objected to the Insider Settlement Agreement because, among

other grounds, with <u>no</u> meaningful disclosure, the Insiders wrongfully forced the estate's

professionals to agree to an improper allocation of the $575,000 SGP/Slazenger

settlement proceeds: $290,000 attributable to resolution of the License dispute; and

$285,000 to resolution of SGP's $1.7 million preference claims against Dunlop Slazenger

Manufacturing LLC and Dunlop Sports Group Americas, Inc. (A 191, ¶ 8.) SGP had

previously valued its preference claims, however, as being worth $669,000. (Id.)

The undisputed prejudice to the SGP estate was real. By self-servingly

allocating the SGP/ Slazenger settlement proceeds to the License dispute, one of the

Insiders - - Kimolos - - was able to reduce its exposure under the $3 million Kimolos

Guaranty of SGP's secured obligation to Provident.[6] (A 191,¶ 9.) Prior to the Slazenger

Settlement, Slazenger consistently insisted that any cash payment to SGP was attributable

solely to the SGP preference claims. (A 191, ¶ 10.) Neither SGP nor its Insiders

disclosed these material facts or their significance (the real benefit wrongly extracted by

the Insiders) to the lower court, nor did they offer any rationale for their cynical

allocation of the SGP/Slazenger settlement proceeds. A bankruptcy court "must be

apprised of all relevant information that will enable it to determine what course of action

will be in the best interest of the estate." *In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996);

---

[6]    By allocating $290,000 of the SGP/Slazenger settlement proceeds to the License
dispute, those funds became collateral of Provident, but the remaining $285,000 of
proceeds attributable to the preference claims were unencumbered. To the extent
Provident collected any of the SGP/Slazenger settlement proceeds, that amount
collected would reduce the guaranty exposure of Kimolos, facts that SGP did not
disclose to the lower court.

*Protective Committee v. Anderson,* 390 U.S. 414, 424-25, 441 (1968) ("There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy [court] has apprised [itself] of all facts necessary for an intelligent and objective opinion ... and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise .... [T]he record is devoid of facts [for] a reasoned judgment that the claims should be settled ...."; *remanded for further hearings).*

Courts have, moreover, regularly subjected an insider's dealings with a debtor to rigorous scrutiny. *See, e.g., Pepper v. Litton,* 308 U.S. 295, 306 (1939); *In re Fabricators, Inc.,* 926 F.2d 1458, 1465 (5th Cir. 1991); *In re Hartford Sands, Inc.,* 372 F.3d 637 (4th Cir. 2004); *In re Lifschultz Fast Freight,* 132 F.3d 339, 354 (7th Cir. 1997); *In re Herby's Foods, Inc.,* 2 F.3d 128 (5th Cir. 1993); *In re Papercraft Corp.,* 211 B.R. 813, 823 (W.D. Pa. 1997), *aff'd and remanded for further findings,* 160 F.3d 982 (3d Cir. 1998). Moreover, an insider has the burden of proving "the good faith of the transaction [and] to show its inherent fairness [to the debtor]." *In re Mobile Steel Co.,* 563 F.2d 692, 701 (5th Cir. 1977) (quoting *Pepper,* 308 U.S. at 306); *In re Mid-American Waste Sys., Inc.,* 284 B.R. 53, 69 (Bankr. D. Del. 2002) (citing *Citicorp Venture Capital, Ltd. v. Comm. of Creditors,* 160 F.3d 982 (3d Cir. 1998)). Despite Slazenger's timely objection to the Insider Settlement Agreement and its timely request for discovery in order to develop a complete record, the bankruptcy court failed even to scrutinize the settlement between SGP and its Insiders or subject it to the exacting intrinsic fairness standard. Moreover, the Insiders made no showing that the settlement was made in good faith, and, indeed, never appeared. The lower court, therefore, abused its discretion in approving the

21

Insider Settlement Agreement. *See, e.g., In re AWECO, Inc.*, 725 F.2d 293, 299 (5th Cir. 1984) ("An approval of a compromise, absent a sufficient factual foundation, inherently constitutes an abuse of discretion.").

### B.    The Settlement Motion Should Not Have Been Approved on an Expedited Basis

SGP moved for an order approving the Insider Settlement Agreement on July 1, 2005, and to limit notice under Rule 9006-1(e) of the Local Rules for the United States Bankruptcy Court for the District of Delaware so that approval of the motion to approve the settlement would be heard just 13 days later. (A 184, ¶ 4.) Local Bankruptcy Rule 9006-1(e) provides:

> "No motion will be scheduled on less notice than required by these Rules or the Fed. R. Bankr. P. except by Order of the Court, on written motion ... specifying the <u>exigencies</u> justifying shortened notice ...."

Del. Bankr. LR 9006-1(e) (emphasis added). Federal Rule of Bankruptcy Procedure 2002 requires that at least 20 days' notice be given of the hearing on approval of all compromises and controversies. Fed. R. Bankr. P. 2002(a)(3). SGP's only reason for seeking approval of the Insider Settlement Agreement on shortened notice, was its belief that nobody would object (it "[did] not anticipate any objections."). (A 184, ¶ 4.) An anticipated lack of objections can hardly be an "exigenc[y] justifying shortened notice."

Slazenger promptly objected to SGP's motion on July 11, 2005. Once Slazenger objected and requested expedited discovery in a timely manner, the lower court should have adjourned the hearing to permit discovery.

SGP self-servingly argued, without explanation, at the July 14, 2005 hearing that the Insider Settlement Agreement had to be approved on an expedited basis because the agreement itself required expedited approval by July 31, 2005. (A 248, at 20:

22

15-20.) In fact, an unexplained condition precedent to the Insider Settlement Agreement's effectiveness was the requirement that "[t]he Bankruptcy Court shall have entered an order approving the Provident Amendment, the Supplemental Financing and other terms and conditions of this Agreement on or prior to July 31, 2005," 17 days after the July 14, 2005 expedited hearing to approve the Insider Settlement Agreement. (A 176, § 12(b).) Accordingly, the Insider Settlement Agreement could have been adjourned briefly and still have been heard on at least 20 days' notice, as required by Federal Rule of Bankruptcy Procedure 2002(a)(3), without jeopardizing the effectiveness of the agreement.

Slazenger had requested and was prepared to conduct streamlined discovery on an expedited basis. (A 245, at 17:13-20.) SGP's motive for forcing a quick hearing, especially once Slazenger objected, is clear: it wanted to deprive Slazenger of the opportunity to conduct discovery regarding the fairness of the proposed settlement. The bankruptcy court thus erred in approving the Insider Settlement Agreement on an expedited basis, without providing Slazenger a chance to take discovery.

### C.    The Bankruptcy Court Wrongly Deprived Slazenger of the Right To Conduct Pre-Trial Discovery, Contrary to Controlling Third Circuit Law

The bankruptcy court wrongly denied Slazenger the opportunity to conduct expedited discovery regarding the fairness of the Insider Settlement Agreement. When a settlement requires court approval, after notice to parties in interest, a party objecting to the settlement is entitled to discovery to enable it to participate effectively at the settlement hearing. *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975). In a proceeding to determine whether a settlement is fair, a party should be allowed to conduct discovery of settlement negotiations. *See, e.g., In re Joint E. and S. Dist.*

23

*Asbestos Litig.*, 129 B.R. 710, 775 (E.D.N.Y. 1991), *rev'd on other grounds*, 982 F.2d

721 (2d Cir. 1992). Here, when SGP was entering into an insider settlement, and when

allegations of self-dealing by the Insiders were undisputed, Slazenger had a right to

conduct discovery.

   In *Girsch*, a party objected to a class action settlement based upon, among

other grounds, the "sparseness of the record." *Girsch*, 521 F.2d at 156. The objector also

sought a continuance of the settlement approval hearing to enable her to conduct

discovery and properly prepare for the settlement hearing. *Id.* The district court denied

the objector's motion, dismissed her objections, and approved the settlement. *Id.* The

Third Circuit Court, however, reversed, finding that the district court had improperly

approved the settlement "based upon the inadequate record before it." *Id.* at 157.

According to the Third Circuit, the objector "was not afforded an adequate opportunity to

test by discovery the strengths and weaknesses of the proposed settlement," and none of

the interrogatories that she had served had actually been answered. *Id.* As an objector,

the objecting party was an "adversary" entitled "to at least a reasonable opportunity to

discovery." *Id.* The district court had wrongly denied the objector the "opportunity to

develop a record." *Id.*

   Slazenger objected to approval of the Insider Settlement Agreement here

on the grounds that: (i) the Insiders had acted in bad faith, breached their fiduciary duty

and engaged in self-dealing by wrongfully allocating the SGP/Slazenger settlement

proceeds, without disclosing material facts to the bankruptcy court; (ii) SGP had failed to

disclose all of the material terms of the proposed financing; (iii) SGP had failed to

describe any attempt to obtain alternative financing; and (iv) SGP failed to explain why

Provident, its current lender, would not finance the Contract Suit, or why the contemplated financing by the Insiders was preferable. (A 190-192, ¶¶ 6-13.) Specifically, the Insider's self-serving allocation of the SGP/Slazenger settlement proceeds allowed an Insider - - Kimolos - - to reduce its exposure under the $3 million Kimolos Guaranty. (A 191, ¶ 9.)

Slazenger had timely objected and requested discovery concerning the proposed Insider Settlement Agreement. (A 192, ¶ 13.) In fact, Slazenger had served notices of deposition on Richard Bongorno, SGP's Chief Executive Officer (also an employee of an SGP Insider), and Steven Sues, SGP's Chief Restructuring Manager, with respect to the settlement motion. (A 194-197.) Slazenger was entitled to this discovery under the Third Circuit's *Girsch* holding to develop the record regarding the strengths and weaknesses of the proposed settlement. The lower court abused its discretion when it denied Slazenger such an opportunity, and when it summarily approved the Insider Settlement Agreement in the face of Slazenger's objection.

### D.    The Bankruptcy Court Disregarded the Insider's Admitted Self-Dealing and Breach of Fiduciary Duty in the Proposed Settlement

An insider proposing a transaction with a debtor, as noted, has the burden of proving "the good faith of the transaction [and] to show its inherent fairness [to the debtor]." *In re Mobile Steel Co.,* 563 F.2d 692, 701 (5th Cir. 1977) (quoting *Pepper v. Litton*, 308 U.S. 295, 306 (1939)). Here, the Insiders did the exact opposite. When responding to Slazenger's objection, SGP only attacked Slazenger's standing to be heard, completely ignoring Slazenger's showings of bad faith, self-dealing and breach of fiduciary duty. (A 198-201.) Moreover, the Insiders, who were parties to the proposed settlement agreement, failed even to respond to Slazenger's objection. Only one

conclusion is warranted: Slazenger's assertions of Insider bad faith are true. Neither SGP

nor the Insiders ever denied them. The lower court, therefore, abused its discretion in

approving the Insider Settlement Agreement and excluding Slazenger.

## III.

### THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW IN APPROVING THE INSIDERS' PROPOSED FINANCING

#### A.    SGP Failed To Provide Any Notice That It Was Seeking Approval of the Insider Financing

SGP and the Insiders sandbagged Slazenger and all other creditors by

leading them to believe that no financing was sought to be approved at this time and then

belatedly inserting new financing terms in the Proposed Order less than a day before the

July 14 hearing. SGP's motion to approve the Insider Settlement Agreement explicitly

stated as follows:

> The parties are presently documenting the detailed terms of
> this supplemental financing arrangement. Once these
> documents have been prepared, [SGP] will file a separate
> motion for approval of the debtor in possession financing
> arrangement outlined in the [Settlement Agreement].

(A 167, n.1) (emphasis added.) Moreover, none of the notices relating to the motion to

approve the Insider Settlement Agreement made any mention of a hearing on a financing

motion. (A 159-160.) Instead of filing a separate motion to approve the Insider

Financing, as it had promised, SGP filed the Proposed Order late on the day before the

July 14 hearing. The following terms appeared for the first time in the Proposed Order:

- The Budget was attached as Exhibit 2 and disclosed for the first time. (A 226-228.)

- The Insider Financing "shall terminate, unless extended in writing ... upon the earliest of (i) May 31, 2006, (ii) final resolution of the [Contract Suit] ... and (iii) upon the occurrence of an Event of Default ...." (A 205, ¶ 3(b).)

26

- "The obligations owing to [Kimolos] ... shall have the status of <u>superpriority</u> claims with priority over all other claims, costs and expenses of the kind specified in, or ordered pursuant to [Code] §§ 105, 502(a), 503(b), 506(c), 507(a), 726 and 1114 of the Bankruptcy Code, and [Kimolos] shall be granted ... a <u>lien and security interest</u> in that portion of the [Contract Suit proceeds] payable to [Kimolos] ...."  (A 208-209, ¶ 3(i).) (emphasis added).

- "[Kimolos] shall have all of the rights and remedies of a <u>secured</u> party ...." (A 212, ¶ 3(o).) (emphasis added).

- Events of default were disclosed for the first time.  (A 210-211, ¶ 3(l).)

- "[SGP] shall pay (i) all reasonable out-of-pocket expenses of [Kimolos] incurred in connection with the [Insider] Financing, [Insider] Settlement Agreement or [the] Order, including fees and disbursements of counsel for [Kimolos] incurred in connection with any waiver or consent ... or any amendment ... or any Event of Default ... limited to the cumulative amount set forth in the Budget, and (ii) if an Event of Default occurs, all out-of-pocket expenses incurred by [Kimolos] ...."  (A 212, ¶ 3(q).)

SGP was required, by the Bankruptcy Rules to provide notice and a hearing regarding any such financing.  *See* 11 U.S.C. § 364(c) ("If the [debtor in possession] is unable to obtain unsecured credit ... the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt ...."). For proposed debtor in possession financing, as was the case here, Federal Rule of Bankruptcy Procedure 4001(c) requires at least 15 days' notice and disclosure of the financing terms ("[t]he court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion").  The notice period may not be reduced by the court.  Fed. R. Bankr. P. 9006(c)(2) ("The court may not reduce the time for taking action pursuant to Rules ... 4001(c)(2) ....").  Moreover, all of the terms of the financing must be disclosed with the motion.  Fed. R. Bankr. P. 4001(c)(1) ("A motion for authority to obtain credit ... shall be accompanied by a copy of the agreement.").

SGP's failure to provide <u>any</u> notice that it was seeking approval of the Insider Financing could only have been deliberate.  It pushed the Insiders' financing

27

through the lower court without permitting the inquiry of creditors such as Slazenger. The lower court erred when it approved the Insider Financing without adequate notice, in the face of SGP's prior express representation that it would seek approval of the Insider Financing through a separate motion. And the lower court erred when it approved the financing without any record.

> **B.    The Lower Court Erred in Approving The Insider Financing When SGP Failed To Make Substantive Factual Showings Required for Superpriority and Secured Financing**

Section 364 of the Bankruptcy Code provides that "the court, after notice and hearing, may authorize the obtaining of credit or the incurring of debt" as an administrative expense "with priority over any or all administrative expenses" or "secured by a lien on property of the estate that is not otherwise subject to a lien," if the debtor is "unable to obtain unsecured credit under § 503(b)(1)" of the Bankruptcy Code. 11 U.S.C. § 364(c). Pursuant to this provision, the threshold issue is whether less intrusive credit is available to the debtor. *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) ("A court. . . .may not approve any credit transaction under [364(c)] unless the debtor demonstrates that it has reasonably attempted, but failed, to obtain unsecured credit under sections 364(a) or (b).").

The only arguable "showing" came from the Committee, but it only dealt with the selection of litigation counsel, <u>not</u> financing. The Committee counsel represented that it "went out and looked for law firms to take on a contingency basis the law suit against [Slazenger], [but] [t]here was no firm willing to do so" (A 246, at 18:15-17), but made no evidentiary showing. Not one witness testified about SGP's efforts to obtain other financing or that the Insiders' terms were the best available. The lower court

merely relied on self-serving, incomplete and unresponsive statements from the Committee's counsel.

SGP utterly failed to show that less intrusive financing from entities other than law firms was unavailable. Under the Insider Financing, Kimolos will receive annual interest at the rate of prime plus 3%, plus a fee that includes (i) the first $65,000 of proceeds of the Contract Suit; (ii) 75% of the next proceeds until its obligations under the Kimolos Guaranty are paid in full; and (iii) 50% of the remaining proceeds. (A 175, § 4.) Accordingly, under the Insider Financing, Kimolos will not only be paid in full plus interest, but will receive a priority recovery until its reimbursement claims under the Kimolos Guaranty have been fully satisfied. SGP made no showing that it was unable to obtain credit from a non-insider guarantor on more favorable terms or that it had even tried to do so.

The self-dealing and breach of fiduciary duty by the Insiders here are transparent. If all of the SGP/Slazenger settlement proceeds had been properly allocated to SGP's preference claims without Insider interference, Kimolos, an Insider, would have a greater guaranty liability to Provident. Had Kimolos paid Provident on its guaranty, it would have a nonpriority unsecured reimbursement claim against SGP. Instead, by means of the Insider Settlement Agreement and Insider Financing here, the liability of Kimolos to Provident is reduced and all of the other Kimolos reimbursement claims prime the claims of all other creditors. At the expense of the SGP estate, without full disclosure, the Insiders have turned their loss into a profitable transaction.

In addition to showing that it could not obtain unsecured credit allowable under Code § 503(b)(1), a debtor-in-possession must show, to obtain court approval, that:

29

(i) the credit transaction is necessary to preserve the assets of the estate; and (ii) the terms of the transaction are "fair, reasonable, and adequate," given the circumstances of the debtor-borrower and the proposed lender. *In re Aqua Assoc.*, 123 BR. 192, 196 (Bankr. E.D. Pa. 1991). Again, SGP made no showing and proffered no evidence to support its contention that the proposed loan terms were fair or reasonable. Accordingly, the bankruptcy court abused its discretion in approving the Insider Financing without notice, and without the substantive factual showing required by Bankruptcy Code § 364(c).

## CONCLUSION

The Court must vacate the order of the lower court, and remand this matter, directing the bankruptcy court to: (i) allow Slazenger reasonable time to conduct discovery concerning the Insider Settlement Agreement and the Insider Financing; and (ii) consider the appropriate factual findings regarding the proposed Insider Settlement Agreement and Insider Financing.

Dated: Wilmington, Delaware
      August 8, 2005

Zuckerman Spaeder LLP

By: _____
    Thomas G. Macauley (ID No. 3411)
919 Market Street, Suite 990
Wilmington, DE 19801
(302) 427-0400
  -and-
Schulte Roth & Zabel LLP
Michael L. Cook (MLC-7887)
Sophie S. Kim
919 Third Avenue
New York, New York 10022
(212) 756-2000
  -and-
Haynsworth Sinkler Boyd, P.A.
Andrew J. White, Jr.
Jesse C. Belcher
75 Beattie Place
Two Liberty Square
Greenville, South Carolina 29601
(864) 240-3200

Counsel for Slazengers Limited, Dunlop Slazenger International Limited, Dunlop Slazenger Manufacturing LLC and Dunlop Sports Group Americas, Inc.

31