# EXHIBIT A

LEXSEE 2002 BANKR. LEXIS 183

Re: United States of America vs. State Street Bank and Trust Co., Adv. Proc. No. A-01-04605 (In re Scott Cable Communications, Inc.)

Adv. Proc. No. A-01-04605

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

2002 Bankr. LEXIS 183; 47 Collier Bankr. Cas. 2d (MB) 1482; 39 Bankr. Ct. Dec. 83; 89 A.F.T.R.2d (RIA) 1645

March 4, 2002, Decided

**SUBSEQUENT HISTORY:** Summary judgment denied by *United States v. State St. Bank & Trust Co.*, 303 B.R. 35, 2003 Bankr. LEXIS 1661 (Bankr. D. Del., 2003)

**PRIOR HISTORY:** *United States v. State Street Bank and Trust Co. (In re Scott Cable Communs., Inc.)*, 263 B.R. 6, 2001 Bankr. LEXIS 619 (Bankr. D. Conn., 2001)

**DISPOSITION:** [*1] Debtor's motion to intervene granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** Francis A. Monaco, Jr., Walsh, Monzack and Monaco, P.A., Wilmington, DE, for Scott Cable Communications, Inc.

Daniel H. Golden, David M. Zensky, Mitchell P. Hurley, Blossom Kan, Akin, Gump, Strauss, Hauer & Feld, LLP, New York, NY, for Scott Cable Communications, Inc.

Colm Connolly, United States Attorney, for United States of America.

Ellen Slights, Assistant U.S. Attorney, Bridgeport, CT, for United States of America.

Alan Shapiro, U.S. Department of Justice, Washington, D.C., for United States of America.

**JUDGES:** JUDGE PETER J. WALSH.

**OPINIONBY:** PETER J. WALSH

**OPINION:** Dear Counsel:

This is with respect to Debtor's motion (Doc. # 68) to intervene in the above-referenced adversary proceeding between the United States and State Street Bank and Trust Company ("State Street Bank"). I will grant the motion for the reasons discussed below.

Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 1, 1998 ("Petition Date") in the United States Bankruptcy Court for the District of Connecticut. On November 19, 1998, the United States commenced an adversary proceeding against State Street [*2] Bank as trustee for Debtor's Junior Subordinated Secured PIK Notes ("PIK Notes"). The United States seeks to (i) recharacterize the PIK Notes as equity, (ii) invalidate the liens securing the PIK Notes, and/or (iii) subordinate the claims of the PIK Note holders ("Note Holders") to all administrative claims of Debtor's estate ("Estate"). n1

> n1 The United States holds an administrative tax claim against Debtor which has self-reported 1999 federal income tax liability in excess of $46.5 million.

Debtor first moved to intervene in the adversary proceeding on December 14, 1998. On March 9, 1999, the United States Bankruptcy Court for the District of Connecticut granted Debtor leave to intervene for the purposes of Debtor's and State Street Bank's then-pending motions for dismissal and/or judgment on the pleadings. Subsequently, on April 26, 1999, the Connecticut Bankruptcy Court entered an order ("Order") granting summary judgment in favor of Debtor and State Street Bank and dismissing the adversary proceeding on [*3] the grounds that the United States' claims were barred by the doctrine of *res judicata*. The United States appealed and on March 12, 2001, the United States District Court for the District of Connecticut reversed the Bankruptcy Court's Order and remanded the matter for further proceedings. Debtor again moved to intervene. However, on June 7, 1999, before the Connecticut Bankruptcy Court ruled on Debtor's motion, the adversary proceeding was

Page 2

2002 Bankr. LEXIS 183, *3; 47 Collier Bankr. Cas. 2d (MB) 1482;
39 Bankr. Ct. Dec. 83; 89 A.F.T.R.2d (RIA) 1645

transferred to this Court. Debtor filed its current motion (Doc. # 68) to intervene on January 17, 2002.

Debtor's right to intervene in the instant adversary proceeding is governed by *Rule 24(a) of the Federal Rules of Civil Procedure*. n2 Rule 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately [*4] represented by existing parties.

*Fed. R. Civ. P. 24(a)*. Debtor argues that is entitled to intervene pursuant to Rule 24(a)(1) because *11 U.S.C. § 1109(b)* n3 confers upon Debtor an unconditional right to do so. Debtor also argues that it is entitled to intervene pursuant to Rule 24(a)(2) because Debtor's situation satisfies each of the four elements required by the Third Circuit to establish an applicant's right to intervene under that rule. n4 I agree. Although the United States sets forth several arguments as to why Debtor does not have the right to intervene, these arguments are unpersuasive.

> n2 This rule is applicable in the instant adversary proceeding pursuant to Bankruptcy Rule 7024. *Fed. R. Bankr. P. 7024*.
>
> n3 *11 U.S.C. 101* et seq. is hereinafter referred to as "§ ".
>
> n4 These elements are:
> First, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation.
>
> *Kleissler v. U.S. Forest Serv., 157 F.3d 964, 969 (3d Cir. 1998)*; see also *Dev. Fin. Corp. v. Alpha Hous. and Health Care, Inc., 54 F.3d 156, 161-62 (3d Cir. 1995)*.

[*5]

Section 1109(b) provides:

> A party in interest, *including the debtor*, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, *may raise and may appear and be heard on any issue in a case under this chapter.*

*11 U.S.C. § 1109(b)* (emphasis added). This language clearly provides Debtor, as a party in interest, with an unconditional statutory right to intervene in the instant adversary proceeding. The United States contends that Debtor is not a proper "party in interest" under § 1109(b). However, the United States' argument clearly contravenes the plain language of § 1109(b) and the Third Circuit's interpretation of the statute as set forth in *Matter of Marin Motor Oil, Inc., 689 F.2d 445 (3d Cir. 1982)*.

In Marin, the Third Circuit held that a creditor's committee has an unconditional right to intervene in an adversary proceeding initiated by a trustee in a chapter 11 case. *Id. at 456-57*. At issue in Marin was not whether § 1109(b) provides a creditor's committee with the absolute right to intervene in a chapter [*6] 11 "case", but rather, whether the term "case" is limited to the general administration of a chapter 11 case or includes an entity's right to intervene in an adversary proceeding. *Id. at 450*. In finding that § 1109(b) encompasses adversary proceedings as well as "cases", the Third Circuit stated that "it would be a strained construction to read this 'unqualified' right as being limited to participation in the general administrative aspects of cases." *Id. at 451*. The Court also stated that "section 1109(b) of course gives the right to appear and be heard to parties other than creditors' committees." *Id. at 456*. This conclusion was based, in part on the rationale that § 1109(b) derives from the former § 206 of chapter X of the Bankruptcy Act of 1898 which provided that "the debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter." In referring to certain comments made by Senator DeConcini and Congressman Edwards to the effect that "rules of bankruptcy procedure or court decisions will determine who is a party in interest [*7] for the particular purposes of the provision in question", the Third Circuit stated:

> We think it plain that in the context of section 1109(b), the remarks merely mean that the exact contours of the general phrase "party in interest" will be clarified by rules and court

Page 3

2002 Bankr. LEXIS 183, *7; 47 Collier Bankr. Cas. 2d (MB) 1482;
39 Bankr. Ct. Dec. 83; 89 A.F.T.R.2d (RIA) 1645

decisions, not that the courts will have discretion to deny intervention to the parties in interest-such as creditors' committees-that are specifically listed in section 1109(b). (The word "including" in section 1109(b) is not a term of limitation. 11 U.S.C. § 102(3).)

689 F.2d at 453-54. From this language, it is clear that the Third Circuit recognizes that all of the parties listed in § 1109(b) have the absolute right to intervene "and be heard on any issue in a case under" chapter 11. 11 U.S.C. § 1109(b); see Marin, 689 F.2d at 453-54; see also In re Penn-Dixie Indus., Inc. 9 B.R. 936, 939 (S.D.N.Y. 1981) (holding that § 1109(b) gave the bankruptcy court no discretion to prevent a debtor from objecting to the composition of a committee of equity security holders). As such, I find that Debtor, as a party [*8] in interest "specifically listed in § 1109(b)", has the absolute right to intervene in the instant adversary proceeding. Id. n5

> n5 The United States points out that other courts have rejected the reasoning of Marin and interpret § 1109(b) differently. See, e.g., In re 995 Fifth Ave Assoc., L.P., 157 B.R. 942, 950 (S.D.N.Y. 1993); In re Caldor, 2000 U.S. Dist. LEXIS 5865, 2000 WL 546465 (S.D.N.Y.). However, none of the cases cited by the United States in support of that proposition have been decided by a court in the Third Circuit. The authority established by Third Circuit's interpretation of § 1109(b) in Marin and the cases following it remain binding precedent that this Court must follow. Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1233 (3d Cir. 1994) (discussing contrary authority and stating, "nevertheless, Marin remains binding precedent, and whether or not it is the better view, this Court's internal operating procedures bar us from overruling it.").

The [*9] United States disagrees with this interpretation of Marin and argues that an expansive interpretation of § 1109(b) exceeds the bounds of Article III. It contends that the proper determination of whether § 1109(b) provides a debtor with the absolute right to intervene should turn on whether the debtor has a meaningful interest that could be affected by the outcome of the case and therefore, constitutes a "party in interest". The United States argues that Debtor is not entitled to intervene as a "party in interest" because it has no meaningful financial or other interest to protect in the adversary proceeding. I disagree.

Although Debtor may not have a significant financial interest in the outcome of the adversary proceeding, it does have an interest and fiduciary duty, as debtor-in-possession, to ensure that the Estate's assets are distributed in accordance with the proper legal and equitable priorities of the parties in interest. It also has an interest in the adversary proceeding because the outcome of the proceeding has the potential to disrupt Debtor's current capital structure as established by the confirmation order entered in connection with Debtor's prior reorganization [*10] case.

Even if the Debtor did not have the right to intervene under Rule 24(a)(1) as a "party in interest" under § 1109(b), which it does, I find that Debtor also has the right to intervene under Rule 24(a)(2). As discussed above, the Third Circuit requires proof of four elements for an applicant to establish a right to intervene under Rule 24(a)(2). E.g., Kleissler, 157 F.3d 964 at 969; Dev. Fin. Corp., 54 F.3d at 161-62. First, the applicant must establish that it's motion for leave to intervene was timely. Second, the entity seeking to intervene must show that it has a sufficient interest in the litigation. Third, the entity must demonstrate that there is a threat that the interest will be impaired or affected by the disposition of the proceeding in which it seeks to intervene. Finally, the prospective intervenor must also show that the existing parties to the litigation inadequately represent its interest. Debtor has satisfied each of these four elements.

There is no dispute that the Debtor's motion to intervene was timely. Rather, the parties' dispute focuses on whether Debtor has a sufficient interest in the adversary proceeding to warrant intervention. [*11] The United States first argues that Debtor has no right to intervene because it lacks a substantial pecuniary interest in the proceeding. n6 This argument is unpersuasive. As discussed above, Debtor has an interest in protecting its capital structure which has been threatened by the government's attempt to recharacterize the PIK Notes as equity. In addition, Debtor's fiduciary duty to preserve the Estate for the benefit of its creditors provides it with an additional interest to intervene because the United States seeks to strip certain of Debtor's secured creditors of their liens and/or subordinate their claims to those of the United States. These interests are sufficient to warrant intervention.

> n6 The United States argues that Debtor has an insufficient interest in the proceeding because the case is operating as a de facto chapter 7 liquidation case. This argument is unpersuasive. Although the government has filed a motion in the Connecticut Bankruptcy Court to convert the case to a chapter 7, that court has deferred ruling on the government's motion pending the outcome of the instant adversary proceeding. Therefore, Debtor's case remains in chapter 11 and the argument made by the United

2002 Bankr. LEXIS 183, *11; 47 Collier Bankr. Cas. 2d (MB) 1482;
39 Bankr. Ct. Dec. 83; 89 A.F.T.R.2d (RIA) 1645

States that "the adversary proceeding will not even advance Debtor's ability to propose a liquidating plan of reorganization" is irrelevant.

[*12]

Although the United States disputes that the Debtor has an interest in protecting the PIK Note Holders because they are secured creditors, I disagree. As a debtor-in-possession in a bankruptcy case proceeding under Chapter 11, Debtor has a duty to act on behalf of the Estate for the benefit of *all* creditors. *In re Cybergenics Corp. 226 F.3d 237, 243 (3d Cir. 2000);* In the *Matter of Ribs-R-Us, Inc. 828 F.2d 199, 203 (3d Cir. 1987).* This duty includes opposing claims and contentions by certain creditors which seek to undermine the priority position of other secured or unsecured creditors. The United States also argues that allowing Debtor to intervene in favor of the PIK Note Holders would create a conflict between Debtor's management's ("Management's") personal financial interests and Debtor's duty to all creditors because Management shares a pecuniary interest with certain PIK Note Holders n7. As discussed above, a debtor-in-possession has a fiduciary duty to act on behalf of all creditors. The fact that Management may benefit from Debtor's participation in the adversary proceeding does not alter that duty. In the instant proceeding, Debtor's [*13] duty arises, in part, out of the fact that the plan confirmed in the previous bankruptcy represents a compromise negotiated by many creditors, including the PIK Note Holders, in respect to the treatment of their claims in Debtor's predecessor's bankruptcy. In the prior bankruptcy, the PIK Note Holders specifically bargained for the subordinated secured status of their notes. The benefit of that bargain is now being challenged by the United States. As such, Debtor clearly has a right to intervene on the Note Holders behalf and attempt to ensure that they receive the benefit of their bargain. Given that Debtor's predecessor was a participant in the negotiations surrounding the treatment of the prior claims held by the Junior PIK Note Holders, Debtor clearly has information relating to the secured status of those claims which would be pertinent to the Court's determination of whether the Notes should be recharacterized as equity, or whether the PIK Note Holders liens should be invalidated and/or subordinated. Refusing to allow Debtor to intervene would prohibit the Debtor from presenting such relevant information to the court and prevent Debtor from fulfilling its obligation to the PIK [*14] Note Holders. In addition, the United States' attempt to recharacterize, invalidate and/or subordinate the PIK Note Holders liens in the adversary proceeding implicates Debtor's conduct in the negotiation of the treatment of the PIK Note Holders claims in the prior bankruptcy. As Debtor argues in its Memorandum of Law in support of its motion to intervene, the United States' allegations imply "that the earlier bankruptcy was marred by inequitable conduct." (Debtor's Mem. (Doc. # 69) at 7.) As such, Debtor can only be assured that its interests will be adequately protected if it is permitted to intervene and defend its conduct on its own behalf. n8

> n7 A management agreement dated December 18, 1996 provides that Management will receive "21.5% of each payment of principal, interest, dividends or distributions" to the Series A Note Holders. (U.S. Mem. (Doc. # 70) at 4, n.2.)
>
> n8 Indeed, in its memorandum of law in support of its objection to one of Debtor's prior motions to intervene, the United States conceded that State Street Bank could not adequately protect Debtor's interests. (Debtor Mem. (Doc. # 69) at 8.)

[*15]

For the these reasons, I find that Debtor has a right to intervene in the instant adversary proceeding under both *Rules 24(a)(1) and 24(a)(2) of the Federal Rules of Civil Procedure.* n9 Therefore, Debtor's motion (Doc. # 68) to intervene is granted.

> n9 Because I find that Debtor is entitled to intervene as of right, there is no need to address the parties' arguments as to whether the Court should permit Debtor to intervene under *Federal Rule of Civil Procedure Rule 24(b).*

SO ORDERED.

Very truly yours,

Peter J. Walsh