# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF _____**

In re _S&P Acquisition, LLC_                    Case No. _04 - 13382 ( PJW )_
                                                Reporting Period: _12/1/04 - 12/31/04_

**MONTHLY OPERATING REPORT**
File with Court and submit copy to United States Trustee within 20 days after end of month

Submit copy of report to any official committee appointed in the case.

| REQUIRED DOCUMENTS | Form No. | Document Attached | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 | ✓ | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CONT) | ✓ | |
| Copies of bank statements | | ✓ | |
| Cash disbursements journals | | ✓ | |
| Statement of Operations | MOR-2 | ✓ | |
| Balance Sheet | MOR-3 | ✓ | |
| Status of Postpetition Taxes | MOR-4 | | |
| Copies of IRS Form 6123 or payment receipt | | | |
| Copies of tax returns filed during reporting period | | N/A | |
| Summary of Unpaid Postpetition Debts | MOR-4 | ✓ | |
| Listing of aged accounts payable | | ✓ | |
| Accounts Receivable Reconciliation and Aging | MOR-5 | ✓ | |
| Debtor Questionnaire | MOR-5 | ✓ | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents
are true and correct to the best of my knowledge and belief.

_Richard P. Bongorno, CEO_                       _2-14-2005_
Signature of Debtor                              Date


_____                _____
Signature of Joint Debtor                        Date

_Richard P. Bongorno_                            _2-14-2005_
Signature of Authorized Individual*              Date

_Richard P. Bongorno_                            _C.E.O._
Printed Name of Authorized Individual            Title of Authorized Individual


*Authorized Individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

FORM MOR
(9/99)

TOTAL P.03

In re: SGP Acquisition, LLC
Debtor

Case No. 04-13382 (PJW)
Reporting Period: 12/1/04 - 12/31/04

## STATEMENT OF OPERATIONS
(Income Statement)

The Statement of Operations is to be prepared on an accrual basis. The accrual basis of accounting recognizes revenue when it is realized and expenses when they are incurred, regardless of when cash is actually received or paid.

| REVENUES | Month | Cumulative Filing to Date |
|---|---|---|
| Gross Revenues | $ 106,338 | $ 106,338 |
| Less: Returns and Allowances | | |
| Net Revenue | $ 106,338 | $ 106,338 |
| COST OF GOODS SOLD | | |
| Beginning Inventory | 4,860,232 | 4,860,232 |
| Add: Purchases | 9,000 | 9,000 |
| Add: Cost of Labor | | |
| Add: Other Costs (attach schedule) | | |
| Less: Ending Inventory | 4,795,836 | 4,795,836 |
| Cost of Goods Sold | 61,396 | 61,396 |
| Gross Profit | 44,942 | 44,942 |
| OPERATING EXPENSES | | |
| Advertising | | |
| Auto and Truck Expense | – | – |
| Bad Debts | 510 | 510 |
| Contributions | | |
| Employee Benefits Programs | – | – |
| Insider Compensation* | | |
| Insurance | 8,000 | 8,000 |
| Management Fees/Bonuses | 798 | 798 |
| Office Expense | 3,620 | 3,620 |
| Pension & Profit-Sharing Plans | | |
| Repairs and Maintenance | – | – |
| Rent and Lease Expense | 5,852 | 5,852 |
| Salaries/Commissions/Fees | 140,983 | 140,983 |
| Supplies | 3,392 | 3,392 |
| Taxes - Payroll | 9,698 | 9,698 |
| Taxes - Real Estate | – | – |
| Taxes - Other | – | – |
| Travel and Entertainment | 5,088 | 5,088 |
| Utilities | | |
| Other (attach schedule) | 197,764 | 197,764 |
| Total Operating Expenses Before Depreciation | 375,755 | 375,755 |
| Depreciation/Depletion/Amortization | 8,798 | 8,798 |
| Net Profit (Loss) Before Other Income & Expenses | (339,611) | (339,611) |
| OTHER INCOME AND EXPENSES | | |
| Other Income (attach schedule) | – | – |
| Interest Expense | 30,000 | 30,000 |
| Other Expense (attach schedule) | | |
| Net Profit (Loss) Before Reorganization Items | (369,611) | (369,611) |
| REORGANIZATION ITEMS | | |
| Professional Fees | 140,000 | 140,000 |
| U. S. Trustee Quarterly Fees | 3,750 | 3,750 |
| Interest Earned on Accumulated Cash from Chapter 11 (see continuation sheet) | – | – |
| Gain (Loss) from Sale of Equipment | | |
| Other Reorganization Expenses (attach schedule) | | |
| Total Reorganization Expenses | 143,750 | 143,750 |
| Income Taxes | | |
| Net Profit (Loss) | $ (513,361) | $ (513,361) |

*"Insider" is defined in 11 U.S.C. Section 101(31).

FORM MOR-2

**EXHIBIT D**

MAR-17-2005  11:35      ZAPIS CAPITAL GROUP                                P.02

United States Bankruptcy Court

In re SGP Acquisition, LLC                          Case No.              04-13382 (PJW)
                                                    Reporting Period:     1/1/05 - 1/31/05

**Monthly Operating Report**
File with Court and submit copy to United States Trustee within 20 days after end of month

Submit copy of report to any official committee appointed in the case.

| | | | |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 | X | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CONT) | X | |
| Copies of bank statements | | X | |
| Cash disbursements journals | | X | |
| Statement of Operations | MOR-2 | X | |
| Balance Sheet | MOR-3 | X | |
| Status of Postpetition Taxes | MOR-4 | X | |
| Copies of IRS Form 6123 or payment receipts | | N/A | |
| Copies of tax returns filed during reporting period | | N/A | |
| Summary of Unpaid Postpetition Debts | MOR-4 | X | |
| Listing of aged accounts payable | | N/A | |
| Accounts Receivable Reconciliation and Aging | MOR-5 | X | |
| Debtor Questionnaire | MOR-5 | X | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents
are true and correct to the best of my knowledge and belief.

_____                    _____
Signature of Debtor                                 Date

_____                    _____
Signature of Joint Debtor                           Date
                                                    3-17-2005

_____                    _____
Signature of Authorized Individual *                Title
                                                    C.E.O.

RICHARD P. BONGORNO
_____                    _____
Printed Name of Authorized Individual               Title of Authorized Individual

* Authorized Individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

                                                    FORM MOR

In re: SGP Acquisition, LLC
Debtor

Case No. 04-13382 (PJW)
Reporting Period: 1/1/05 - 1/31/05

## Statement of Operations
### (Income Statement)

| | | |
|---|---:|---:|
| REVENUES | | |
| Gross Revenue | $ 445,491 | $ 551,829 |
| Less: Returns and Allowances | - | - |
| Net Revenue | $ 445,491 | $ 551,829 |
| COST OF GOODS SOLD | | |
| Beginning Inventory | 4,795,696 | 4,666,232 |
| Add: Purchases | 434,249 $ | 416,249 |
| Add: Cost of Labor | - $ | 9,000 |
| Add: Other Costs (attach schedule) | - $ | - |
| Less: Ending Inventory | 4,731,806 | 4,731,806 |
| Cost of Goods Sold | 498,239 | 559,675 |
| Gross Profit | (52,788) | (7,846) |
| OPERATING EXPENSES | | |
| Advertising | 36,593 | 36,593 |
| Auto and Truck Expense | - | 0 |
| Bad Debts | 4,455 | 4,965 |
| Contributions | - | 0 |
| Employee Benefits Programs | - | 0 |
| Insider Compensation * | - | 0 |
| Insurance | 8,000 | 16,000 |
| Management Fees/Bonuses | 3,342 | 4,140 |
| Office Expense | 3,641 | 7,311 |
| Pension & Profit-Sharing Plans | - | 0 |
| Repairs and Maintenance | - | 0 |
| Rent and Lease Expense | 6,148 | 12,000 |
| Salaries/Commissions/Fees | 179,977 | 320,860 |
| Supplies | 2,932 | 6,324 |
| Taxes - Payroll | 14,079 | 23,777 |
| Taxes - Real Estate | - | 0 |
| Taxes - Other | - | 0 |
| Travel and Entertainment | 13,852 | 18,940 |
| Utilities | 406 | 406 |
| Other (attach schedule) | 136,619 | 334,383 |
| Total Operating Expenses Before Depreciation | 410,044 | 785,799 |
| Depreciation/Depletion/Amortization | 8,708 | 17,506 |
| Net Profit (Loss) Before Other Income & Expenses | (471,540) | (811,151) |
| OTHER INCOME AND EXPENSES | | |
| Other Income (attach schedule) | - | - |
| Interest Expense | 17,231 | 47,231 |
| Other Expense (attach schedule) | - | - |
| Net Profit (Loss) Before Reorganization Items | (488,771) | (858,382) |
| REORGANIZATION ITEMS | | |
| Professional Fees | 140,000 | 280,000 |
| U.S. Trustee Quarterly Fees | 3,750 | 7,500 |
| Interest Earned on Accumulated Cash from Chapter 11 (see continuation sheet) | - | - |
| Gain/(Loss) from Sale of Equipment | - | - |
| Other Reorganization Expenses (attach schedule) | - | - |
| Total Reorganization Expenses | 143,750 | 287,500 |
| Income Taxes | - | - |
| Net Profit (Loss) | $ (632,521) $ | (1,145,882) |

$(1,145,882)
$    -

FORM MOR-2

A   87

# EXHIBIT E

United States Bankruptcy Court

In re SGP Acquisition, LLC

Case No.                04-13362 (PJW)
Reporting Period:       2/1/05 - 2/28/05

**Monthly Operating Report**
File with Court and submit copy to United States Trustee within 20 days after end of month

Submit copy of report to any official committee appointed in the case.

| REQUIRED DOCUMENTS | Form No. | Document Attached | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 | X | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CONT) | X | |
| Copies of bank statements | | X | |
| Cash disbursements journals | | X | |
| Statement of Operations | MOR-2 | X | |
| Balance Sheet | MOR-3 | X | |
| Status of Postpetition Taxes | MOR-4 | X | |
| Copies of IRS Form 6123 or payment receipts | | N/A | |
| Copies of tax returns filed during reporting period | | N/A | |
| Summary of Unpaid Postpetition Debts | MOR-4 | X | |
| Listing of aged accounts payable | | N/A | |
| Accounts Receivable Reconciliation and Aging | MOR-5 | X | |
| Debtor Questionnaire | MOR-5 | X | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents
are true and correct to the best of my knowledge and belief.

Signature of Debtor                                      Date

Signature of Joint Debtor    *RICHARD P. BONGORNO, CEO*      Date  *4/20/2005*

Signature of Authorized Individual*    *RICHARD P. BONGORNO*   Date  *CEO*

Printed Name of Authorized Individual                    Title of Authorized Individual

* Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

FORM MOR

In re: SGP Acquisition, LLC
Debtor

Case No. 04-13382 (PJW)
Reporting Period: 2/1/05 - 2/28/05

**Statement of Operations
(Income Statement)**

| | Month | Cumulative Filing to Date |
|---|---|---|
| **REVENUES** | | |
| Gross Revenues | $ 1,033,916 | $ 1,585,748 |
| Less: Returns and Allowances | - | - |
| Net Revenue | $ 1,033,916 | $ 1,585,748 |
| **COST OF GOODS SOLD** | | |
| Beginning Inventory | 4,731,806 | 4,866,232 |
| Add: Purchases | 1,019,966 | 1,561,215 |
| Add: Cost of Labor | | 9,000 |
| Add: Other Costs (attach schedule) | | - |
| Less: Ending Inventory | 4,903,398 | 4,903,398 |
| Cost of Goods Sold | 848,374 | 1,533,049 |
| Gross Profit | 185,542 | 52,699 |
| **OPERATING EXPENSES** | | |
| Advertising | 53,625 | 136,271 |
| Auto and Truck Expense | | 0 |
| Bad Debts | 134,102 | 139,067 |
| Contributions | | 0 |
| Employee Benefits Programs | - | 0 |
| Insider Compensation * | - | 0 |
| Insurance | 8,493 | 24,493 |
| Management Fees/Bonuses | 7,754 | 11,894 |
| Office Expense | | 7,311 |
| Pension & Profit-Sharing Plans | | 0 |
| Repairs and Maintenance | | 0 |
| Rent and Lease Expense | 7,345 | 19,345 |
| Salaries/Commissions/Fees | 154,753 | 475,713 |
| Supplies | 1,774 | 8,088 |
| Taxes - Payroll | 10,961 | 34,738 |
| Taxes - Real Estate | - | 0 |
| Taxes - Other | - | 0 |
| Travel and Entertainment | 22,192 | 41,132 |
| Utilities | 7,641 | 8,047 |
| Other (attach schedule) | 18,402 | 317,784 |
| Total Operating Expenses Before Depreciation | 427,043 | 1,223,693 |
| Depreciation/Depletion/Amortization | 9,166 | 26,964 |
| Net Profit (Loss) Before Other Income & Expenses | (250,659) | (1,197,958) |
| **OTHER INCOME AND EXPENSES** | | |
| Other Income (attach schedule) | | 0 |
| Interest Expense | 43,506 | 90,737 |
| Other Expense (attach schedule) | | |
| Net Profit (Loss) Before Reorganization Items | (294,165) | (1,288,695) |
| **REORGANIZATION ITEMS** | | |
| Professional Fees | 519,304 | 659,304 |
| U.S. Trustee Quarterly Fees | (3,500) | 4,000 |
| Interest Earned on Accumulated Cash from Chapter 11 (see continuation sheet) | | 0 |
| Gain/(Loss) from Sale of Equipment | | 0 |
| Other Reorganization Expenses (attach schedule) | | |
| Total Reorganization Expenses | 515,804 | 663,304 |
| Income Taxes | - | - |
| Net Profit (Loss) | $ (809,969) | $ (1,951,899) |

FORM MOR-2

A   90

# EXHIBIT F

United States Bankruptcy Court

In re SOP Acquisition, LLC

Case No. 04-13382 [MJW]
Reporting Period: 3/1/05 - 3/31/05

**Monthly Operating Report**

File with Court and submit copy to United States Trustee within 30 days after end of month

Submit copy of report to any official committee appointed in the case.

| REQUIRED DOCUMENTS | Form No. | Document Attached | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 | X | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CONT) | X | |
| Copies of bank statements | | X | |
| Cash disbursements journals | | X | |
| Statement of Operations | MOR-2 | X | |
| Balance Sheet | MOR-3 | X | Need ending inventory |
| Status of Postpetition Taxes | MOR-4 | X | |
| Copies of IRS Form 6123 or payment receipts | | N/A | |
| Copies of tax returns filed during reporting period | | N/A | |
| Summary of Unpaid Postpetition Debts | MOR-4 | X | |
| Listing of aged accounts payable | | N/A | |
| Accounts Receivable Reconciliation and Aging | MOR-5 | X | |
| Debtor Questionnaire | MOR-6 | X | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents are true and correct to the best of my knowledge and belief.

_____
Signature of Debtor

_____
Date

_____
Signature of Joint Debtor

_____
Date
5-23-2005

_____
Signature of Authorized Individual
RICHARD P. BONGORNO

_____
Date

Title of Authorized Individual
CEO

Printed Name of Authorized Individual

* Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor is a partnership; a manager or member if debtor is a limited liability company.

FORM MOR

In re: SGP Acquisition, LLC
Debtor

Case No. 04-13382 (PJW)
Reporting Period: 3/1/05 - 3/31/05

**Statement of Operations**
**(Income Statement)**

| | Month | Cumulative Filing to Date |
|---|---|---|
| **REVENUES** | | |
| Gross Revenues | $ 1,599,542 | $ 3,185,290 |
| Less: Returns and Allowances | - | - |
| Net Revenue | $ 1,599,542 | $ 3,185,290 |
| **COST OF GOODS SOLD** | | |
| Beginning Inventory | 4,903,398 | 4,666,232 |
| Add: Purchases | 182,008 | $ 1,743,223 |
| Add: Cost of Labor | | $ 9,000 |
| Add: Other Costs (attach schedule) | | $ - |
| Less: Ending Inventory | 4,186,214 | 4,186,214 |
| Cost of Goods Sold | 899,192 | 2,432,241 |
| Gross Profit | 700,349 | 753,049 |
| **OPERATING EXPENSES** | | |
| Advertising | 81,908 | 218,179 |
| Auto and Truck Expense | - | 0 |
| Bad Debts | 66,948 | 196,015 |
| Contributions | - | 0 |
| Employee Benefits Programs | - | 0 |
| Insider Compensation * | - | 0 |
| Insurance | 8,000 | 32,493 |
| Management Fees/Bonuses | 11,996 | 23,890 |
| Office Expense | 5,727 | 13,038 |
| Pension & Profit-Sharing Plans | - | 0 |
| Repairs and Maintenance | - | 0 |
| Rent and Lease Expense | 6,473 | 25,818 |
| Salaries/Commissions/Fees | 307,186 | 782,899 |
| Supplies | 2,745 | 10,843 |
| Taxes - Payroll | 10,800 | 45,538 |
| Taxes - Real Estate | - | 0 |
| Taxes - Other | - | 0 |
| Travel and Entertainment | 15,416 | 56,548 |
| Utilities | 182 | 8,209 |
| Other (attach schedule) | 211,650 | 529,434 |
| Total Operating Expenses Before Depreciation | 719,011 | 1,942,904 |
| Depreciation/Depletion/Amortization | 15,757 | 42,421 |
| Net Profit (Loss) Before Other Income & Expenses | (34,419) | (1,232,276) |
| **OTHER INCOME AND EXPENSES** | | |
| Other Income (attach schedule) | | 0 |
| Interest Expense | 45,000 | 135,737 |
| Other Expense (attach schedule) | | - |
| Net Profit (Loss) Before Reorganization Items | (79,419) | (1,368,013) |
| **REORGANIZATION ITEMS** | | |
| Professional Fees | 459,000 | 1,059,000 |
| U.S. Trustee Quarterly Fees | - | 14,000 |
| Interest Earned on Accumulated Cash from Chapter 11 (see continuation sheet) | | 0 |
| Gain/(Loss) from Sale of Equipment | | 0 |
| Other Reorganization Expenses (attach schedule) | | - |
| Total Reorganization Expenses | 459,000 | 1,073,000 |
| Income Taxes | - | - |
| Net Profit (Loss) | $ (538,419) | $ (2,441,013) |

FORM MOR-2

**EXHIBIT G**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          ) Chapter 11
                                )
SGP ACQUISITION, L.L.C.         ) Case No. 04-11393 (PJW)
                                )
         Debtor.                ) Wilmington, Delaware
                                ) April 14, 2005
                                )

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor:                     FREDERICK B. ROSNER, ESQUIRE
                                Jaspan Schlesinger Hoffman, LLP
                                913 North Market Street
                                12th Floor
                                Wilmington, Delaware  19801

                                H. JEFFREY SCHWARTZ, ESQUIRE
                                Benesch, Friedlander, Coplan,
                                & Aronoff, LLP
                                2300 BP Tower
                                200 Public Square
                                Cleveland, Ohio   44114

For The Provident Bank:         TODD SCHILTZ, ESQUIRE
                                Wolf, Block, Schorr & Solis-Cohen
                                Wilmington Trust Center
                                1100 North Market Street
                                Suite 1001
                                Wilmington, Delaware  19801

Audio Operator:                 SHERRY SCARUZZI

Transcribed by:                 DIANA DOMAN TRANSCRIBING
                                P. O. Box 129
                                Gibbsboro, New Jersey  08026
                                Off: (856) 435-7172
                                Fax: (856) 435-7124
                                Email:  dianadoman@comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.



Schwartz - Argument                                5

1    There would be certain proceeds to the estate. And,
2    those proceeds would be used to fund a plan of reorganization
3    and a distribution to general unsecured creditors. So, what we
4    have -- while there has been considerable litigation in this
5    case, what we have, as we always try to do, is to work out a
6    transaction that meets all parties' needs and would result in a
7    fully consensual Chapter 11 case.
8         So, I thought it was important to apprize the Court
9    that, on April 7th, we did reach that, at least on a term sheet
10   basis. And, now the publicly held corporation -- the strategic
11   partner is negotiating directly with Dunlop the terms of the
12   modified license agreement, the particulars. We are neg --
13   drafting a -- an asset purchase agreement. We're drafting a
14   settlement agreement with respect to the litigation brought by
15   the debtor against Dunlop.
16        And, so hopefully we will reduce that to definitive
17   documentation and file that with the Court in due course. And,
18   then file a disclosure statement and a plan to have the
19   proceeds of the transaction, should it work out, distributed.
20        THE COURT: Okay. I assumed there was a settlement
21   afoot.
22        MR. SCHWARTZ: We try, Your Honor.
23        THE COURT: Okay.
24        MR. SCHWARTZ: So, on that basis, -- and, quite
25   frankly, there aren't the funds in the estate to pay the

Schwartz / Schiltz - Argument                    6

1    interim comp -- fee applications in full anyway. So, it would

2    be silly to proceed on objections to interim fee apps. There's

3    some funding available for interim compensation, but certainly

4    the -- not even enough to -- were the objections lodged --

5    limited objections to be allowed or granted, there still isn't

6    enough funding. So, until this transaction occurs, it's sort

7    of premature to get into that sort of objection.

8              THE COURT:  Okay.

9              MR. SCHWARTZ:  And, the objector, of course, would be

10   paid in full.  It's the bank -- in any transaction of this

11   nature, they're paid in full.

12             THE COURT:  Okay.

13             MR. SCHWARTZ:  Thank you, Your Honor.

14             THE COURT:  Okay.

15             MR. SCHILTZ:  Your Honor, Todd Schiltz here on behalf

16   of The Provident Bank.  While counsel's recitation of the

17   understanding is a little bit different than mind, I'm happy to

18   move forward in the manner that he has proposed.  As I

19   understand it, the interim order will be granted in full and

20   our objection reserved to a later date, obviously with the

21   interim events hopefully, frankly, mooting the objection.

22             THE COURT:  Okay.  Do you have an order?

23             MR. ROSNER:  I do have a form of order.  May I

24   approach?

25             THE COURT:  Okay.  (Pause - order signed).  Okay.  Is

# EXHIBIT H

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              ) Case No. 04-13382
                                    ) Chapter 11
SGP ACQUISITIONS, LLC.,             )
                                    ) Courtroom No. 2
                                    ) 824 Market Street
                        Debtor.     ) Wilmington, Delaware 19801
                                    )
                                    )
                                    ) January 7, 2005
                                    ) 4:33 P.M.

TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:          Jaspan Schlesinger Hoffman
                         By:  FREDERICK B. ROSNER, ESQ.
                         1201 North Orange Street, Suite 1001
                         Wilmington, Delaware 19801

                         Benesch, Friedlander, Coplan & Aronoff
                         By:  MARK PHILLIPS, ESQ.
                              JEFFREY SCHWARTZ, ESQ.
                         2300 BP Tower, 200 Public Square
                         Cleveland, Ohio 44114-2378

The U.S. Trustee:        Office of the U.S. Trustee
                         By:  DAVID BUCHBINDER, ESQ.
                         844 King Street
                         Wilmington, Delaware 19899

ECR Operator:            Anissa Cothran

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

# TRANSCRIPTS PLUS
### 435 Riverview Circle, New Hope, Pennsylvania 18938
e-mail courttranscripts@aol.com

**215-862-1115     (FAX) 215-862-6639**

Bongorno - Direct                        27

1  presentation, Mr. Bongorno to testify specifically as to the

2  facts related to the venue motion.

3        Mr. Bongorno?

4        CLERK:  Please state your name for the record,

5  spelling your last name.

6        MR. BONGORNO:  My name is Richard Bongorno.

7        CLERK:  Spell your last name.

8        MR. BONGORNO:  B-O-N-G-O-R-N-O.

9              RICHARD BONGORNO, SWORN

10             DIRECT EXAMINATION

11 BY MR. PHILLIPS:

12 Q    Mr. Bongorno, what is your position with the debtor?

13 A    I'm currently the CEO of the company.

14 Q    And for how long have you held that position?

15 A    Since December 6th of 2004.

16 Q    Have you held other positions with the debtor prior to

17 that time?

18 A    Previous to that, I was the treasurer, and that was since

19 December of 2003.

20 Q    And you said December 6th of 2004 you became CEO.  What

21 occasioned you becoming CEO?

22 A    Our prior CEO resigned, effective December 3rd, I believe,

23 was the date of 2004.

24 Q    And who was that prior CEO?

25 A    Chris Deltorio (phonetic).

Bongorno - Direct                                    28

1  Q    Where did Mr. Deltorio reside?

2  A    In North Carolina.

3  Q    And do you know where Mr. Deltorio is employed today?

4  A    I understand he's consulting with one of the Dunlop

5  entities.

6  Q    Would you describe the scope of your responsibilities as

7  CEO of the debtor briefly?

8  A    Yes.  Responsible for all the day-to-day activities.

9  Currently -- since December 6th, significant a part of those

10 day-to-day activities have been relating to the bankruptcy

11 proceedings and the financial and legal aspects of that, as

12 well as the banking situation there.  But in addition and more

13 recently, spending more time focusing on that which needs to

14 get done as far as making the company profitable, focusing on

15 obtaining inventory at reasonable prices and building up the

16 sales effort.

17 Q    What is your understanding of the debtor's key assets?

18 A    We have essentially three key assets.  One is the -- I'll

19 call it one item, it's the combination of the license agreement

20 and supply agreement with Dunlop.  We have significant

21 inventories, and we have significant accounts receivables.

22 Q    And where -- do the license agreements and the supply

23 agreement have any location?

24 A    They -- really, they're intangible, so they really have no

25 location.

Bongorno - Direct                    29

1  Q    And you mentioned accounts receivable.  Where are those
2  collected?
3  A    Those are collected in -- through a lockbox in Ohio.
4  Q    And the inventory of the company that you mentioned?
5  A    That is in Lyons, Georgia.
6  Q    For how long has the debtor been operating?
7  A    Since November, 2002.
8  Q    And during that time, has the ownership of the debtor been
9  consistent in terms of the members of the LLC?
10  A    Yes, two members since the beginning.
11  Q    And who are those members?
12  A    One member is SGP Resilience Investors out of Cleveland,
13  Ohio.  The other is Zapis Acquisition Partners, also
14  headquartered in Cleveland.
15  Q    Does the debtor have a Board of Directors, a Board of
16  Members?
17  A    We have a Board of Managers, pursuant to our operating
18  agreement.
19  Q    And who is on that Board of Managers?
20  A    There are five members, three selected by the Zapis
21  Investor Group and two by the Resilience Investor Group, all --
22  those members are -- from the Zapis selection are myself, James
23  Wymer and Lee Zapis.  And from the Resilience Group, it is
24  Bassam Mansour and Steven Rosen.
25  Q    And where are those individuals located --

Bongorno - Direct                                30

1  A    All --

2  Q    -- if you know?

3  A    All in Cleveland, Ohio.

4  Q    Now, if you're the person responsible for the

5  reorganization of the debtor's business, where are you located?

6  A    Cleveland, Ohio, with an office in West Lake, which is a

7  suburb of Cleveland.

8  Q    Are there any other officers or employees of the debtor

9  that are involved in that reorganization effort?

10 A    We have one other officer, name of Brad Seibert, who is

11 our Vice President of Sales.  He's also located in Cleveland

12 working out of the West Lake Office.

13 Q    Besides the officers that you've mentioned, how many other

14 employees does the debtor pay at this time?

15 A    Thirteen other employees.

16 Q    And where are those employees located, if you know?

17 A    We have -- our sales force is geographically disbursed.

18 There's six other sales -- six salespeople that are employees

19 around the country, and we do have seven employees --

20 administrative people in Greenville.

21 Q    Now, the six employees that are the sales force, are any

22 of them located in South Carolina?

23 A    No.

24 Q    And the seven employees that you mentioned that work in

25 Greenville, do you anticipate that any of those employees would

Bongorno - Cross                          34

1  time, Your Honor.

2          THE COURT:  Okay.  Cross examination.

3                  CROSS EXAMINATION

4  BY MR. COOK:

5  Q    Mr. Bongorno, do you work for any other affiliated entity

6  besides an affiliate of the debtor?

7  A    I work for an affiliate of an investor of the debtor.

8  Q    And which entity is that?

9  A    The entity I work for is Zapis Capital Group.

10  Q    Zapis Capital.  And what is -- how is Zapis Capital

11  affiliated with the debtor?

12  A    The ownership of Zapis Capital is the same ownership as

13  Zapis -- similar ownership as Zapis Acquisition Partners.

14  Q    What do you do for this affiliate in your other position?

15  A    I'm the Chief Financial Officer.

16  Q    Chief Financial Officer.  And how much time do you spend

17  on that job?

18  A    Less than 20 percent of my time currently.

19  Q    How long have you been doing that?

20  A    Just since -- uh, all of my service to Zapis Capital Group

21  commenced in October of 2003.

22  Q    You started working for Zapis in 2003?

23  A    Correct.

24  Q    And you just started working for the debtor -- as I

25  understand your testimony, on December 3rd --

1  A    No.

2  Q    -- 2004?

3  A    I began working for the debtor in December of 2003 as its

4  treasurer.

5  Q    Okay.  And I believe you testified that the intellectual

6  property has no location, that was your testimony, correct?

7  Wasn't it?

8  A    That's correct.

9  Q    And you testified also that the inventory is in Georgia,

10 isn't it?

11 A    That's correct.

12 Q    And you mentioned somebody named Seibert, Brad Seibert.

13 He's based in Ohio, I believe, you testified on direct, didn't

14 you?

15 A    That's correct.

16 Q    He's related to Mr. Zapis, isn't he?

17 A    That's correct.

18 Q    In fact, he's his son-in-law, isn't he?

19 A    Son-in-law of the -- of Xenophon Zapis.

20 Q    And you're familiar with the -- this motion for -- to

21 implement a key executive to the program, you were in court

22 today when that was brought up, weren't you?

23 A    Yes.

24 Q    Okay.  And the two people who are the primary

25 beneficiaries of the up-front cash payment are Messrs. Sloan

**EXHIBIT I**

Doc ID --> 200220701362

| DATE:<br>07/26/2002 | DOCUMENT ID<br>200220701362 | DESCRIPTION<br>REGISTRATION OF FOREIGN LIMITED<br>PARTNERSHIP (LPF) | FILING<br>125.00 | EXPED<br>100.00 | PENALTY<br>.00 | CERT<br>.00 | COPY<br>.00 |
|---|---|---|---|---|---|---|---|

Receipt
This is not a bill. Please do not remit payment.

CALFEE HALTER, ESQ.
1650 FIFTH THIRD CENTER
21 E. STATE STREET
COLUMBUS, OH 43215

## STATE OF OHIO

Ohio Secretary of State, J. Kenneth Blackwell

1337863

This is to certify that the Secretary of State of Ohio has custody of the business records for

KIMOLOS II L.P.

and, that said business records show the filing and recording of:

Document(s)                                    Document No(s):
REGISTRATION OF FOREIGN LIMITED PARTNERSHIP     200220701362



United States of America :
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 26th day of July, A.D.
2002.

Ohio Secretary of State

Page 1

A    107

Doc ID --> 200220701362

Prescribed by J. Kenneth Blackwell
Ohio Secretary of State
Central Ohio: (614) 466-3910
Toll Free: 1-877-SOS-FILE (1-877-767-3453)

Expedite this Form: (select one)

THE UNDERSIGNED DESIRING TO FILE A:

(CHECK ONLY ONE (1) BOX)

(1) Certificate of Limited Partnership
☐ Domestic (141-CLP)
☑ Foreign (104-LPF)        Delaware    7/15/02
                           (Home State)  (State of Organization)
                                                ORC 1782
(2) Application for Registration of a
Registered Partnership Having Limited Liability
☐ Domestic    ☐ Foreign
(155-RLL)      (155-RLF)
                        ORC 1775.61 (A)

Complete the general information in this section for the box checked above.

The Name of the
Partnership Shall Be       Kimolos II L.P.

☐ Check here if additional provisions are attached

Complete the information in this section if Domestic or Foreign is checked in box (1).

The Address of the
principal place of
business of the partnership shall be    22900 Center Ridge Rd.    #216
                                        (Street)

                                        Rocky River    Ohio    44116
                                        (City)          (State)  (Zip Code)

The Name and Business or Residence Address of each
GENERAL PARTNER is    (Name)                        (Address)

Kimo Isle, Ltd.,        22900 Center Ridge Rd., #216, Rocky River, OH 44116

(If insufficient space to cover this item, please attach additional sheet)

531                        Page 1 of 5              Last Revised: May 2002

Page 2

A    108

Doc ID --> 200220701362

Complete the information in this section if box (1) or (2) is checked.

The above stated hereby appoints the following as its Statutory Agent

The Name & Address of a                    Donna Thomas
Statutory Agent for Service of Process       (Name)

(in Ohio is                              22900 Center Ridge Rd., #216
                                         (Street)          NOTE: P.O. Box Addresses are NOT acceptable

                                         Rocky River        Ohio      44116
                                         (City)            (State)   (Zip Code)

The entity above irrevocably consents to service of process on the agent listed above as long as the authority of the
agent continues, and to service of process upon the OHIO SECRETARY OF STATE if:

   A. the agent cannot be found or
   B. the above listed fails to designate another agent when required to do so, or
   C. the above stated registration to do business in Ohio expires or is cancelled.

                              ACCEPTANCE OF APPOINTMENT

              (Agent does not have to sign Acceptance of Appointment if Foreign is checked in box 2.)

The Undersigned,          Donna Thomas                              , named herein to the

Statutory agent for,       Kimples II L.P.                   , hereby acknowledge and
accepts the appointment of statutory agent for said entity.

                            Signature:
                                                 (Statutory Agent)

Complete the information in this section if Foreign is checked in box (1).

The Address of the        No requirements to maintain office in state of formation.
Foreign Partnership       (Street)
in the State or Country
of Formation
                          (City)                   (State or Country)        (Zip Code)

(If the foreign limited partnership is not required to maintain an office in its state of formation, please indicate this fact in
this space)

The address of the office where a list of the names and business or residence addresses of the limited partnership and
their capital contributions is to be maintained until the registration of the foreign limited partnership is cancelled or
withdrawn is

                          22900 Center Ridge Road, #216
                          (Street)

                          Rocky River     Ohio                       44116
                          (City)          (State or Country)         (Zip Code)

A   109

Doc ID --> 200220701362

Complete the information in this section if box (2) is checked.

Please complete the following appropriate section (either item A or B)

(A) The Address of the Partnership's
    Principal Office in Ohio is                    (Street)      NOTE: P.O. Box Addresses are NOT acceptable.

                                                   (City)        Ohio
                                                                 (State)         (Zip Code)

         If the partnership does not have a principal office in Ohio, then item B must be completed.

(B) The Address of the Partnership's
    Office is                                      (Street)      NOTE: P.O. Box Addresses are NOT acceptable.

                                                   (City)        (State)         (Zip Code)

The business which the partnership engages in is _____

The effective date shall be _____ (Date)

(If a date is specified, the date must be a date on or after the date of filing; the effective date of the application cannot be earlier than the date of filing. If no date is specified, the date of filing will be the effective date of the application.)

Follow these signature instructions in this section if box (1) or item in box (1) is checked.

(Domestic) Certificate must be signed by all general partners.
(Foreign) This application is to be signed by a general partner of the limited partnership.

Follow these signature instructions in this section if box (2) or item in box (2) is checked.

The registration application must be executed by a majority in interest of the partners or by one or more partners authorized by the partnership to execute the registration application.

| REQUIRED | Kimo Tele, Ltd. |
|---|---|
| Must be authenticated (signed) by an authorized representative (See Instructions) | _signature_    Authorized Representative    Date |
| | Xenophon L. Zavis, Manager    Print Name |
| | _signature_ Xenophon L. Zavis    Authorized Representative    Date |
| | Print Name |
| | Authorized Representative    Date |
| | Print Name |

531                          Page 3 of 6                    Last Revised: May 2002

A    110

Doc ID --> 200122702570



| DATE: 09/18/2001 | DOCUMENT ID 200122702570 | DESCRIPTION ARTICLES OF ORGANIZATION/DOM LLC (LCA) | FILING 125.00 | EXPED .00 | PENALTY .00 | CERT .00 | COPY .00 |

**Receipt**
This is not a bill. Please do not remit payment.

THANO G PASALIS
55 PUBLIC SQUARE
SUITE 1575
CLEVELAND, OH 44113-1971



STATE OHIO

Kenneth Blackwell

1247185

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

a filing and recording of:

Document No(s):
200122702570

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 10th day of August, A.D.
2001.

*J. Kenneth Blackwell*
Ohio Secretary of State

Doc ID --> 200122702570

## ARTICLES OF ORGANIZATION
## OF KIMO ISLE, LTD.

Kimo Isle, Ltd. adopts the following Articles of Organization for a limited liability company under Ohio law:

### ARTICLE 1

The name of the limited liability company, referred to in these Articles as the "Company," is KIMO ISLE, LTD.

### ARTICLE 2

The period of duration of the Company is perpetual.

### ARTICLE 3

Copies of the operating agreement and by-laws of the Company may be obtained from the Managing Member via a written request mailed to:

22900 Center Ridge Road
Rocky River, Ohio 44116

### ARTICLE 4

The purpose for which the Company is organized is to transact any and all lawful business for which limited liability companies may be organized under Ohio law.

*IN WITNESS WHEREOF*, the undersigned have executed these Articles of Organization on behalf of the Company on this ___8th___ day of ___August___, 2001.

KIMO ISLE, LTD.

By: _____

Page 2

A    112

**Doc ID --->**    200122702570

## ORIGINAL APPOINTMENT OF AGENT
## KIMO ISLE, LTD.

The undersigned, being the sole member of Kimo Isle, Ltd., hereby appoints Donna Thomas to be the agent upon whom any process, notice or demand, required or permitted by statute to be served upon the limited liability company, may be served. The complete address of the agent is:

22900 Center Ridge Road
Rocky River, Ohio 44116

KIMO ISLE, LTD.

_____
Kenneth L. Zapor, Member

## ACCEPTANCE OF APPOINTMENT

The undersigned, named herein as the statutory agent for Kimo Isle, Ltd., hereby acknowledges and accepts the appointment of agent for said limited liability company.

_____
Donna Thomas

Page 3

A    113

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) | Case No. 04-13382 (PJW) |
| SGP ACQUISITION, LLC, | ) |  |
|  | ) |  |
| Debtor. | ) | Re: D.I. _____ |

## ORDER UNDER 11 U.S.C. § 1112(b) CONVERTING CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7

Upon consideration of the motion for an order under 11 U.S.C. § 1112(b) converting the above-captioned chapter 11 case to a case under chapter 7 (the "Motion"); and any responses to the Motion having been considered; and the Court having jurisdiction to hear the Motion; and adequate notice of the Motion having been given; and after any hearing on the Motion and argument from the parties; and after due deliberation; and finding cause for granting the relief requested by the Motion; for the reasons set forth in the record, it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that this chapter 11 case is converted to a case under chapter 7 of the United States Bankruptcy Code, effective on entry of this Order by the Court; and it is further

ORDERED that the Office of the United States Trustee shall appoint an interim chapter 7 Trustee; and it is further

ORDERED that the Order (Administrative) Authorizing and Establishing Procedures for Interim Payment of Compensation and Reimbursement of Expenses of Professionals (D.I. 155) is hereby vacated.

Dated: June _____, 2005
       Wilmington, Delaware

_____
The Honorable Peter J. Walsh
United States Bankruptcy Judge

A   114

1

1      IN THE UNITED STATES BANKRUPTCY COURT

2         FOR THE DISTRICT OF DELAWARE

3

4   IN RE:

5     SGP ACQUISITION, LLC,     CASE NO. 04-13382 (PJW)

6        Debtor.

7              -   -   -   -

8      Deposition of RICHARD P. BONGORNO, taken as

9   if upon cross-examination before Dawn M. Fade, a

10  Registered Merit Reporter and Notary Public

11  within and for the State of Ohio, at the offices

12  of Benesch, Friedlander, Coplan & Aronoff, 2300

13  BP Tower, 200 Public Square, Cleveland, Ohio, at

14  12:05 p.m. on Friday, June 17, 2005, pursuant to

15  notice and/or stipulations of counsel, on behalf

16  of Dunlop Slazenger International Limited, Dunlop

17  Slazenger Limited, LLC, Dunlop Sports Group

18  Americas, Inc., and Slazenger Limited in this

19  cause.

20              -   -   -   -

21              MEHLER & HAGESTROM
                Court Reporters

22

23     CLEVELAND              AKRON
    1750 Midland Building   1015 Key Building
    Cleveland, Ohio 44115   Akron, Ohio 44308

24     216.621.4984           330.535.7300
       FAX 621.0050           FAX 535.0050

25     800.822.0650           800.562.7100

22

1   A.   That's correct.

2   Q.   Dated May 23rd, 2005, right?

3   A.   That's correct.

4   Q.   We're going to spend a fair amount of time with

5        this document today, I'm just going to ask you,

6        you can take my pen, if you can number the pages

7        so I can tell you to look at page 15 or 13, I

8        think it will be a little easier.

9   A.   I have 28 pages.

10  Q.   All right.  I think the question that caused me

11       to give you the operating report was trying to

12       figure out the balance of the Provident

13       prepetition loan to SGP.  I guess this would be

14       as of March 31st, 2005.  I'll just ask you to

15       tell me what page you're looking at when you find

16       it.

17  A.   Page 25 is the balance sheet.

18  Q.   And do you see an entry on there that, of how

19       much the prebankruptcy -- withdraw -- the current

20       balance of the Provident Bank loan is,

21       prepetition bank loan?

22  A.   Yes.

23  Q.   What's that number?

24  A.   $7,365,149.

25  Q.   All right.  That was the value on the petition

23

1       date, right?

2    A.  That's what this indicates, correct.

3    Q.  And what's the current balance?

4    A.  $6,431,433.

5    Q.  Roughly $6.4 million?

6    A.  That's correct.

7    Q.  You said Kimolos had guaranteed a portion of

8        that, do you know how much Kimolos has

9        guaranteed?

10   A.  The entire Kimolos II guarantee was for 3

11       million.  At the time of the petition it was

12       approximately 2.4 million and the, an amount was

13       frozen at the time of the agreements with the

14       bank postpetition.

15   Q.  So maximum exposure for Kimolos is 2.4 million

16       under the guarantee?

17   A.  Under the prepetition loan, correct.

18   Q.  What's the balance of the Provident Bank DIP

19       loan?

20   A.  I'm not certain from looking at this, but it does

21       indicate that the total secured debt was 22,056.

22   Q.  Does that number seem right to you, that the

23       total DIP loan would be about $22,000?

24   A.  The number fluctuates very regularly so I

25       wouldn't know for sure what it would have been on

93

1       continuation of the 600,000 postpetition DIP

2       facility.

3   Q.  The postpetition DIP facility of $600,000 was a

4       revolver, is that correct?

5   A.  No, not to my knowledge.

6   Q.  It's a term loan?

7   A.  It's a term loan, part of the collateral base

8       guaranteed by Kimolos II.

9   Q.  I'm sorry, could you repeat your answer?

10  A.  The $600,000 postpetition financing that was

11      negotiated in January of 2005, the initial

12      postpetition financing was not part, was not

13      included in the calculation of financing under

14      the collateral base, was in addition to that,

15      what we would call an over-advance, and was

16      guaranteed by Kimolos II.

17  Q.  Okay.  So let's talk about the Kimolos guarantee.

18      Earlier you testified that their guarantee was

19      capped at 2.4 million for the prepetition loan,

20      is that correct?

21  A.  That's correct.

22  Q.  Is it also true that Kimolos has guaranteed the

23      entire amount of the new money advanced by

24      Provident Bank during the postpetition period?

25  A.  They guaranteed the 600,000 postpetition

94

1    facility.

2  Q.  So the total exposure for Kimolos, if the 600,000

3      is fully drawn under the postpetition facility,

4      would be 3 million, is that correct?

5  A.  That's my understanding.

6  Q.  When you looked at the operating report for March

7      2005 you told me that of the $600,000

8      postpetition facility only $22,000 was drawn, is

9      that correct?

10 A.  That's correct.

11 Q.  So the company has been financing its operations

12     in bankruptcy through the use of cash collateral

13     as opposed to new money being borrowed from

14     Provident Bank?

15 A.  There has been confusion as to the terminology

16     used here.  We've continued to be permitted to

17     borrow under the prepetition facility based on

18     the collateral base under that prepetition

19     facility, so if there were funds available based

20     on the calculated collateral we could borrow

21     under the postpetition facility, then when that

22     was fully utilized we would tap into -- I'm

23     sorry.  We would first borrow under the

24     prepetition facility up to the collateral base

25     and then we would tap into the postpetition

A   119

**INTENTIONALLY LEFT BLANK**

1

2                    C E R T I F I C A T E

3

4

5       The State of Ohio, )  SS:
        County of Cuyahoga.)

6           I, Dawn M. Fade, a Notary Public within and
        for the State of Ohio, authorized to administer
7       oaths and to take and certify depositions, do
        hereby certify that the above-named witness was
8       by me, before the giving of their deposition,
        first duly sworn to testify the truth, the whole
9       truth, and nothing but the truth; that the
        deposition as above-set forth was reduced to
10      writing by me by means of stenotypy, and was
        later transcribed into typewriting under my
11      direction; that this is a true record of the
        testimony given by the witness; that said
12      deposition was taken at the aforementioned time,
        date and place, pursuant to notice or stipulation
13      of counsel; and that I am not a relative or
        employee or attorney of any of the parties, or a
14      relative or employee of such attorney, or
        financially interested in this action; that I am
15      not, nor is the court reporting firm with which I
        am affiliated, under a contract as defined in
16      Civil Rule 28(D).

17          IN WITNESS WHEREOF, I have hereunto set my
        hand and seal of office, at Cleveland, Ohio, this
18      20th day of June          A.D. 20 05  .

19

20

21      Dawn M. Fade, Notary Public, State of Ohio
        1750 Midland Building, Cleveland, Ohio  44115
22      My commission expires October 27, 2007

23

24

25

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| SGP ACQUISITION, LLC, | ) | Case No. 04-13382 (PJW) |
|  | ) |  |
| Debtor. | ) | Hearing Date: June 27, 2005 at 1:30 p.m. |
|  | ) | Response Deadline: To Be Determined |

**MOTION OF SGP ACQUISITION, LLC FOR ORDER UNDER
FED. R. BANKR. P. 9019 APPROVING SETTLEMENT
AGREEMENT WITH THE DUNLOP SLAZENGER ENTITIES**

SGP Acquisition, LLC ("SGP"), debtor and debtor in possession herein, moves for an

order under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

approving an agreement, dated June 21, 2005 (the "Settlement Agreement", a copy of which is

annexed hereto as Exhibit 1), among:  (a) SGP, and (b) Dunlop Slazenger International Limited

("DSIL"), Dunlop Slazenger Manufacturing LLC ("DSM"), Slazengers Limited ("SL") and

Dunlop Sports Group Americas, Inc. ("DSGA") (DSIL, DSM, SL and DSGA, collectively, the

"Dunlop Slazenger Entities"), resolving certain disputes regarding:  (i) a License Agreement,

dated November 8, 2002 (as amended on December 1, 2003) (the "License Agreement"); (ii) a

Supply Agreement, dated November 8, 2002 (as amended on December 1, 2003) (the "Supply

Agreement"); and (iii) a Technology Sharing Agreement, dated November 8, 2002 (the

"Technology Agreement") (collectively, the "Agreements").   The Settlement Agreement

provides substantial economic benefits to SGP, including the receipt of $575,000, plus the

withdrawal and non-assertion of claims in this case totaling at least $3,546,975, in exchange for

SGP's dismissal of certain litigation and SGP's rejection of the Agreements.  In addition, the

#13913.1

A    122

Dunlop Slazenger Entities has agreed to purchase certain golf ball packaging from SGP for $60,000. In support of its motion, SGP represents as follows:

## BACKGROUND

1.      SGP commenced this case (the "Bankruptcy Case") under chapter 11 of the Bankruptcy Code on November 30, 2004 (the SGP commenced "Petition Date"). SGP continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code (the "Code").

2.      On December 15, 2004, the United States Trustee appointed a creditors' committee (the "Committee") in this case. No trustee or examiner has been appointed.

3.      Currently, all members of the SGP board of managers are affiliated with Zapis Acquisition Partners, LLC, one of the two members of SGP and an entity owned, directly or indirectly, by members of the Zapis family. Another entity affiliated with the Zapis family, Kimolos II L.P., has guaranteed a substantial portion of SGP's debt to its secured and "DIP" lender, The Provident Bank.

## I.    THE DISPUTES

4.      On November 8, 2002, the Dunlop Slazenger Entities and SGP executed the Agreements. The License Agreement granted SGP the right to use the "Slazenger" trademark and related marks (the "Trademark") for the manufacture, promotion, marketing, sale and distribution of licensed products in a designated territory. Disputes subsequently arose between the parties to the Agreements regarding the performance of their respective obligations.

5.      SGP Claims. After the Petition Date, SGP commenced three adversary proceedings by filing the following complaints (collectively, the "SGP Claims"): (i) against the Dunlop Slazenger Entities, The Antigua Group, Inc. ("AGI") and Sports World International Limited ("SWI") (Dunlop Slazenger Entities, AGI and SWI, collectively, the "Defendants")

#13913.1                                    2

alleging, among other things, breach of the License Agreement and Supply Agreement, tortious interference with contractual and business relations, conspiracy, and misappropriation of trade dress (the "Contract Suit"); (ii) against DSM for avoidance of preferential transfers under section 547(b) of the Bankruptcy Code (the "Preference Suit"); and (iii) against DSGA for avoidance of preferential transfers and a fraudulent transfer under section 548 and 544 of the Bankruptcy Code against DSGA (the "Fraudulent Transfer Suit"). The Defendants filed answers responding to the SGP Claims, denying that there is any liability on their part and disputing facts alleged therein. Further, DSM and SL asserted counterclaims in the Contract Suit, asserting, among other things, that the License Agreement and Supply Agreement had terminated prior to commencement of SGP's bankruptcy case. SGP timely filed its Reply to the counterclaims, denying that either DSM or SL was entitled to the relief requested.

6.    Stay Motion. The Dunlop Slazenger Entities moved on February 28, 2005 for relief from the automatic stay ("Stay Motion") to terminate the Agreements, asserting that: (i) the License Agreement is not assumable or assignable as a matter of law; (ii) certain alleged non-curable defaults bar SGP's assumption and assignment of the License Agreement; (iii) Slazenger's interest in the Trademark is being irreparably harmed and SGP cannot protect that interest; and (iv) termination of the License Agreement would results in the termination of the other Agreements. SGP, the Committee and Provident Bank timely filed oppositions to the Stay Motion, to which the Dunlop Slazenger Entities replied.

7.    Exclusivity Termination Motion. The Dunlop Slazenger Entities moved on February 28, 2005 to terminate SGP's exclusive period to file a reorganization plan ("Exclusivity Termination Motion"). SGP, the Committee and Provident Bank timely filed oppositions to the Exclusivity Termination Motion, to which the Dunlop Slazenger Entities subsequently replied.

8.    Conversion Motion.  The Dunlop Slazenger Entities moved on May 27, 2005,

for an order converting the Bankruptcy Case to a case under chapter 7 of the Code (the

"Conversion Motion").  SGP timely filed its opposition to the Conversion Motion on June 16,

2005.

## II.    THE SETTLEMENT AGREEMENT

9.    After extensive arm's length negotiations, SGP and the Dunlop Slazenger

Entities (the "Parties") have reached a compromise, which resolves many of the Parties' disputes.

After consulting such experts and counsel as SGP deemed appropriate, it has concluded that the

best interests of SGP's estate, creditors and other parties in interest would best be served by a

settlement with the Dunlop Slazenger Entities.

10.    The salient terms of the Settlement Agreement are as follows:

(a)    Settlement Consideration:  In full and complete settlement and discharge
of the Fraudulent Transfer and Preference Suits, and in consideration for
SGP's rejection of the Agreements under Bankruptcy Code § 365(a), the
Dunlop Slazenger Entities will, subject to the entry of orders by this Court
(i) authorizing SGP's rejecting and terminating the Agreements, (ii)
approving the Settlement Agreement, and (iii) approving and authorizing
the dismissal of the Preference and Fraudulent Transfer Suits with
prejudice, pay to SGP the sum of $575,000, consisting of $475,000 cash
plus $100,000 in escrow consistent with Exhibit D of the Settlement
Agreement, and contribute the following additional consideration: (i) SL
will withdraw and not assert its claim for $434,476.62 in pre-bankruptcy
royalties allegedly due under the License Agreement in the Bankruptcy
Case; (ii) SL will withdraw and not assert its administrative priority claim
of at least $712,499 (as of May 31, 2005) in post-petition royalties
allegedly due under the License Agreement in the Bankruptcy Case; and
(iii) DSM will withdraw and not assert its unsecured claim allegedly
arising under the Supply Agreement, which totals approximately $2.4
million, in the Bankruptcy Case.  The Dunlop Slazenger Entities will also
pay SGP $60,000 for certain golf ball packaging.

(b)    Rejection of Agreements.  The Agreements will be deemed rejected,
terminated and of no further force or effect under Code § 365(a) and under
applicable nonbankruptcy law on the "Effective Date" (as defined in the
Settlement Agreement).  Members of the Dunlop Slazenger Entities who
are counter-parties to the Agreements will also withdraw and not assert

4

their damage claims in the Bankruptcy Case under § 502(g) of the Code arising by virtue of rejection of the Agreements.

(c)   Dismissal of Preference and Fraudulent Transfer Suits.  Upon occurrence of the Effective Date, SGP's Preference and Fraudulent Transfer Suits will be dismissed with prejudice.

(d)   Survival of Contract Suit Claims, Counterclaims, Defenses and Offsets. The Contract Suit, the counterclaims of DSM and SL, and all defenses and offsets assertable by all parties in the Contract Suit will survive and not be affected by the Settlement Agreement.  Specifically, the counterclaims of SL and DSM asserting unpaid royalties and damages survive and are not affected by the Settlement Agreement, unless otherwise provided therein with respect to the assertion of certain claims in the Bankruptcy Case. Notwithstanding the foregoing, no member of the Dunlop Slazenger Entities will assert any claim exceeding five years' damages or right to offset for that amount in the Contract Suit based on or arising from the rejection of the Agreements.

(e)   Withdrawal of Motions.  Upon the occurrence of the Effective Date, the Stay Motion, Exclusivity Termination Motion and Conversion Motion will be withdrawn with prejudice.

## A.  JURISDICTION AND VENUE

11.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicate for relief is Bankruptcy Rule 9019.

## RELIEF REQUESTED

12.   SGP seeks entry of an order under Bankruptcy Rule 9019 approving the Settlement Agreement.

## BASIS FOR RELIEF

13.   Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  To minimize litigation and expedite the administration of a bankruptcy estate,

compromises are favored in bankruptcy. *Martin v. Ayers (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

14.    The Third Circuit recognizes four criteria the Court should consider in evaluating a proposed settlement: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it, and (iv) the paramount interest of the creditors. *Id.; In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998). The decision to approve a settlement or compromise lies within the discretion of the bankruptcy court and is warranted when the settlement is found to be reasonable and fair in light of the particular circumstances of the case. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1995). Courts have "broad authority [under Bankruptcy Rule 9019] to approve compromises and settlements." *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 758 (Bankr. S.D.N.Y. 1992).

15.    In evaluating whether a settlement is fair and reasonable, a bankruptcy court need not be convinced that the settlement is the best possible compromise or that the parties have maximized their recovery; rather the court need only canvass the issues to determine whether the settlement falls below the lowest point in the range of reasonableness. *In re Integrated Health Svcs., Inc.*, No. 00-389 (MFW), 2001 WL 1820426 at *2 (Bankr. Del. Jan. 3, 2001). In making this determination, the court:

> need not conduct its own investigation concerning the reasonableness of the settlement and may credit and consider the opinion of the Trustee and counsel that the settlement is fair and equitable. [citations omitted]. Similarly, the court need not conduct a "mini-trial" to determine the merits of the underlying litigation. Rather, the court's responsibility is 'to canvas the issues

6

A    127

and see whether the settlement fall[s] below the lowest point in the range of reasonableness.'

*In re Purofied Down Products Corp.*, 150 B.R. 519 (S.D.N.Y. 1993).

16.     SGP submits that the Settlement Agreement is fair and reasonable and in the best interests of its estate and creditors. The Settlement Agreement is the product of protracted arm's length negotiations among the Parties to resolve significant disputes regarding the Agreements. Throughout the Bankruptcy Case, SGP has been mired in litigation with the Dunlop Slazenger Entities concerning the Agreements, including whether such Agreements were terminated prior to SGP's bankruptcy filing and whether SGP can assume or assign the Agreements under section 365 of the Code. The Settlement Agreement will: (i) contribute $575,00 to SGP's estate; (ii) eliminate at least $3,546,975 in pre-petition unsecured claims and post-petition administrative claims in this case asserted by the Dunlop Slazenger Entities, (iii) resolve the Preference Suit, the Fraudulent Transfer Suit, the Conversion Motion, the Stay Motion, and the Exclusivity Termination Motion without the need for further expensive and time-consuming litigation, and (iv) obligate the Dunlop Slazenger Entities to pay $60,000 to SGP for certain golf ball packaging. These benefits would be achieved without relinquishment of SGP's causes of action in the Contract Suit.

17.     The Settlement Consideration provides SGP with fair and reasonable compensation in exchange for the dismissal of the Preference and Fraudulent Transfer Suits and the rejection of the Agreements, including $575,000 in cash. The Settlement Agreement does not, however, make any allocation of this consideration, e.g., what portion is being paid in exchange for dismissal of the Preference and Fraudulent Transfer Suits as opposed to being paid in return for rejection of the Agreements. Such allocation will determine the application and distribution of the settlement proceeds. Accordingly, SGP and other parties-in-interest will seek

7

a determination by the Court with respect to this issue.

18.     In addition to paying this cash consideration, the Dunlop Slazenger Entities will also withdraw and will not assert pre- and post-bankruptcy claims of approximately $3.5 million, nearly $800,000 of which the Dunlop Slazenger Entities contend is entitled to administrative priority status.  This would extinguish two of the three largest unsecured claims scheduled in the case as well as the single largest administrative priority claim asserted by nonprofessionals.  The value of the claims relinquished, when combined with that arising from the agreement of the Dunlop Slazenger Entities not to assert rejection damages under section 502(g) of the Code, is estimated to exceed $5 million.

19.     Finally, the proposed settlement would, for all practical purposes, extinguish the role of the Dunlop Slazenger Entities as SGP's principal antagonist in the Bankruptcy Case.  As reflected in its motion to extend its exclusivity periods, dated May 27, 2005 [D.I. 311], SGP has formulated an orderly liquidation plan.  Continued litigation of the Dunlop Slazenger Entities' Stay Motion, Exclusivity Termination Motion and Conversion Motion would further drain SGP's limited resources.  The Settlement Agreement permits SGP to avoid time-consuming and expensive litigation, while realizing a significant sum of cash and other substantial economic benefits for its estate.

20.     The Court should thus approve the Settlement Agreement as fair, reasonable and beneficial to SGP's estate, its creditors and all parties-in-interest.

## BRIEFING

21.     This motion presents no novel issues of law requiring briefing.  Any applicable authorities are cited herein.  Therefore, pursuant to Rule 7.1.2(a) of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the

8

"Local District Court Rules"), incorporated by reference into Rule 1001-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, SGP respectfully requests that the Court dispense with any briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

NOTICE

22.     No trustee or examiner has been appointed in this case. Notice of this Motion has been given to (i) the Committee, (ii) the Office of the United States Trustee for this District, (iii) counsel for Provident Bank, (iv) counsel for the Dunlop Slazenger Entities, and (iv) all parties who filed a notice of appearance and request for pleadings in this case. Because of the nature of the relief requested, SGP submits that no further notice need be given.

9

**WHEREFORE**, SGP respectfully requests entry of an order approving the Settlement Agreement, and granting SGP such other and further relief as this Court deems just and proper.

Dated:  Wilmington, Delaware          **JASPAN SCHLESINGER HOFFMAN LLP**
      June 22, 2005

By:  /s/  Frederick B. Rosner
     Frederick B. Rosner (No. 3995)
     913 North Market Street, 12th Floor
     Wilmington, DE  19801
     Telephone:     (302) 351-8000
     Facsimile:      (302) 351-8010

        - and –

     H. Jeffrey Schwartz (OBR #0014307)
     Mark A. Phillips (OBR #0047347)
     BENESCH, FRIEDLANDER,
     COPLAN & ARONOFF LLP
     2300 BP Tower
     200 Public Square
     Cleveland, OH  44114-2378
     Telephone:     (216) 363-4500
     Facsimile:      (216) 363-4588

     Counsel for SGP Acquisition, LLC,
     Debtor and Debtor in Possession

10

A   131