# EXHIBIT 1

**SGP Acquisition, LLC**
**26202 Detroit Road, Suite 300**
**Westlake, Ohio 44145**

June 21, 2005

Michael L. Cook
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

Via facsimile: 212-593-5955

Dear Michael:

Please be advised that I have executed the attached Settlement Agreement and Escrow
Agreement as CEO of SGP Acquisition, LLC and that I have been previously authorized
to execute these agreements on behalf of SGP Acquisition, LLC by the Board of
Managers of SGP Acquisition, LLC.

Very truly yours

Richard P. Bongorno
Chief Executive Officer

### SETTLEMENT AGREEMENT

Settlement Agreement dated as of June *__*, 2005, among SGP Acquisition, LLC ("SGP"),

as debtor and debtor-in-possession; and Dunlop Slazenger International Limited ("DSIL"),

Dunlop Slazenger Manufacturing LLC ("DSM"), Slazengers Limited ("SL") and Dunlop Sports

Group Americas, Inc. ("DSGA") (DSIL, DSM, SL and DSGA, collectively, the "Slazenger

Group") (collectively with SGP, the "Parties").

#### Recitals:

A.    Bankruptcy Case.  SGP commenced a case ("Bankruptcy Case") under

chapter 11 of the Bankruptcy Code ("Code") on November 30, 2004 in the United States

Bankruptcy Court for the District of Delaware, pending under Case No. 04-13382 ("Bankruptcy

Court").

B.    Operative Agreements.  Prior to the bankruptcy filing, SGP executed three

agreements on November 8, 2002: (i) a License Agreement with SL and DSIL  (dated November

8, 2002, as amended on December 1, 2003) (the "License Agreement"); (ii) a Supply Agreement

with DSM (dated November 8, 2002, as amended on December 1, 2003) (the "Supply

Agreement"); and (iii) a Technology Sharing Agreement with DSGA dated November 8, 2002

(the "Technology Agreement") (collectively, the "Agreements").

C.    SGP Claims.  SGP commenced actions (the "SGP Claims") against

Slazenger Group, The Antigua Group, Inc. and Sports World International Limited (collectively,

the "Defendants") on· December 8, 2004, alleging, among other things, claims for breach of

contract of the License Agreement and Supply Agreement and tortious interference against the

Defendants (the "Contract Suit").  SGP also filed complaints on February 15, 2005 for (i)

avoidance of preferential transfers under Section 547(b) of the Bankruptcy Code against DSM

and DSGA (the "Preference Suits") and (ii) avoidance of a fraudulent transfer under section 548

9842894.11

and 544 of the Bankruptcy Code against DSGA (the "Fraudulent Transfer Suit"). A schedule identifying the three actions is annexed hereto as Exhibit A. The Defendants answered all of the SGP Claims, denying that there is any liability on their part whatsoever; disputing every material fact alleged therein, including every assertion of damage to SGP; and DSM and SL counterclaimed asserting, among other things, that the Agreements had terminated prior to commencement of the SGP Bankruptcy Case.

      D.    Stay Motion. The Slazenger Group moved on February 28, 2005 for relief from the automatic stay ("Stay Motion") to terminate the Agreements on the grounds that (i) the License Agreement is not assumable or assignable as a matter of law because it is not assignable under federal trademark law; (ii) non-curable defaults bar assumption and assignment of the License Agreement; (iii) Slazenger's interest in the trademark is being irreparably harmed and SGP cannot protect that interest; and (iv) termination of the License Agreement (by virtue of points (i), (ii) or (iii) above), results in the termination of the other Agreements because they are all part of a single unified transaction. SGP, the Creditor's Committee (the "Committee") and Provident Bank opposed the Stay Motion on March 15 and 16, 2005. The Slazenger Group replied to the responses of SGP, the Committee and Provident Bank on March 21, 2005.

      E.    Exclusivity Termination Motion. The Slazenger Group moved on February 28, 2005 to terminate SGP's exclusive period to file a reorganization plan ("Exclusivity Termination Motion"). SGP, the Committee and Provident Bank opposed the Exclusivity Termination Motion on April 1 and 4, 2005. The Slazenger Group replied on June 20, 2005, showing that this motion was now moot in view of its Conversion Motion (defined below).

      F.    Conversion Motion. The Slazenger Group moved on May 27, 2005, for an order converting the Bankruptcy Case to a liquidation under Chapter 7 of the Code, citing,

among other things, SGP's losses; SGP's inability to propose a reorganization plan; SGP's inability to assume the Agreements; conflicts of interest on the part of SGP's management; and breaches of fiduciary duty by SGP's officers and directors. SGP opposed the Conversion Motion on June 16, 2005, arguing, among other things that conversion was not in the creditors' best interest.

        G.    Negotiations. As a result of arms-length, good faith negotiations, the Parties, without admitting or conceding any liability, have agreed, subject to Bankruptcy Court approval, to resolve most of their disputes. After consulting such experts and counsel as SGP deemed appropriate, it has concluded that the best interests of SGP's estate, creditors and other parties in interest would best be served by a settlement with the Slazenger Group on the terms hereinafter set forth.

        **NOW, THEREFORE,** in consideration of the foregoing and for other good and valuable consideration, the Parties hereto agree as follows.

        1.    Settlement Consideration. On the Effective Date (as defined in section 6 below), the Slazenger Group will, in addition to the economic concessions described below, which total at least $3,546,975.62, pay to SGP the sum of $575,000, and contribute the following consideration to SGP:

        (a)    SL will withdraw and not assert its claim for $434,476.62 in pre-bankruptcy royalties due under the License Agreement ("Cure Amount") in the Bankruptcy Case.

        (b)    SL will withdraw and not assert its administrative priority claim of at least $712,499 (as of May 31, 2005) in post-petition royalties due under the License Agreement in the Bankruptcy Case.

        (c)    DSM will withdraw and not assert its unsecured claim arising under the Supply Agreement, which totals approximately $2.4 million, in the Bankruptcy Case.

2. <u>Rejection of Agreements</u>.   The Agreements will be deemed rejected, terminated and of no further force or effect under Code § 365(a) and under applicable nonbankruptcy law on the Effective Date (as defined in section 6 below). Members of the Slazenger Group who are counter-parties to the Agreements will withdraw and not assert their damage claims in the Bankruptcy Case under section 502(g) of the Code arising by virtue of rejection of the Agreements.

3. <u>Survival of Contract Suit Claims, Counterclaims, Defenses and Offsets</u>. The Contract Suit, the Slazenger Group counter-claims and all defenses and offsets assertable by all parties in the Contract Suit will survive and not be affected by this agreement. Specifically, and without limiting the foregoing, the counter-claims of SL and DSM asserting unpaid royalties and damages survive and are not affected by this agreement except as otherwise provided in paragraph 1 hereof with respect to the assertion of certain claims in the Bankruptcy Case. Notwithstanding the foregoing, no member of the Slazenger Group will assert any claim exceeding five years' damages or right to offset for that amount in the Contract Suit based on or arising from the rejection of the Agreements pursuant to paragraph 2 hereof.

4. <u>Dismissal of Litigation</u>.   Upon the occurrence of the Effective Date (as defined in section 6 below), the SGP Claims asserted in adversary proceedings nos. 05-50455 and 05-50468 (the Preference and Fraudulent Transfer Suits) will be, and be deemed, dismissed with prejudice. The Parties will file the attached stipulations of dismissal (attached as Exhibits B and C) no later than 7 days of the Effective Date.

5. <u>Withdrawal of Motions</u>.   Upon the occurrence of the Effective Date (as defined in section 6 below), the Stay Motion, Exclusivity Termination Motion and Conversion

Motion will be, and be deemed, withdrawn with prejudice. The Slazenger Group will file notices of withdrawal no later than 7 days of the Effective Date.

6.    Effective Date. The effective date (the "Effective Date") will occur on the first business day after all of the following conditions precedent are satisfied:

(a)    written approval of this settlement agreement by the boards of directors of SL, DSIL, DSM and DSGA;

(b)    written approval of this settlement agreement by SGP's board of managers;

(c)    execution of this settlement agreement (including exhibits) by all Parties hereto;

(d)    the Slazenger Group will have paid to SGP the total sum of $575,000, consisting of $475,000 in cash plus $100,000 in escrow consistent with Exhibit "D" hereto;

(e)    the Bankruptcy Court will have entered orders (the "Orders"), in form and substance reasonably satisfactory to the Parties, (i) authorizing SGP's rejecting and terminating the Agreements; (ii) approving this settlement agreement; and (iii) approving and authorizing the dismissal of the Preference and Fraudulent Transfer Suits with prejudice;

(f)    the Orders are not stayed; and

(g)    the Orders are not subject to appeal unless the Slazenger Group, in its sole discretion, waives this condition.

If the Effective Date does not occur by July 15, 2005, or cannot occur because one of the conditions precedent cannot be satisfied, the terms set forth herein will be null and void and of no binding effect on any of the Parties, unless otherwise agreed by all Parties in writing. Nor shall any party or third person be able rely on or cite any provision of this agreement, excluding this paragraph, for any purposes whatsoever.

7.    Incorporation in Any SGP Plan of Reorganization. SGP agrees that this agreement will be incorporated in any Chapter 11 Plan ("Plan"), including any modification or

9842894.11                              5

amendment thereof, that it may file, propose to file or support in its pending Chapter 11 case. If the Plan is not confirmed by the Bankruptcy Court or the Bankruptcy Case is converted to a liquidation under Chapter 7 of the Code, the rejection and termination of the Agreements will still be effective so long as the Effective Date (as defined in section 6 above) has occurred.

8.   Acknowledgements; Representations; Commitments; Right of First Refusal. SGP acknowledges and represents that it neither owns nor claims any interest in golf balls maintained at DSM's Westminster, South Carolina warehouse or any other warehouse used by DSM in Greenville, South Carolina. SGP further represents that it has not sublicensed or assigned any interest it may have or had in the License Agreement to any third person. SGP further agrees that, notwithstanding the rejection and termination of the License Agreement on the Effective Date, it will continue to sell the golf ball inventory consistent with §§ 2, 10.4 and 14 (except no inventory list is required) of the License Agreement, but DSM consents to the sale of apparel inventory through warehouse sales or other similar good faith clearance activities. With respect to the sale of golf ball inventory under this paragraph, SGP agrees to secure its obligation to sell the golf ball inventory in a manner consistent with §§ 2, 10.4, and 14 of the License Agreement as follows: an escrow of $100,000 payable from the $575,000 payment referred to in paragraph "1" above, subject to the terms of an escrow agreement in the form of Exhibit "D" attached hereto. DSM acknowledges that it has in its possession certain inventory of SGP, specifically packaging for golf balls, and agrees to purchase such packaging from SGP upon the Effective Date for the total price of $60,000 ("Packaging Fee"), upon reasonable proof by SGP that it has title to such packaging.

9.   Amendment.   This agreement may not be amended except by an instrument in writing signed by all Parties hereto.

9842894.11                                    6

10.  Notices. Any notices or other communications hereunder or in connection herewith shall be in writing and shall be deemed to be duly given or delivered in person, by facsimile transmission or by overnight delivery by a recognized national courier service, postage prepaid and addressed as follows:

<div style="margin-left: 3em;">

If to SGP:          SGP Acquisition, LLC
26202 Detroit Road, Suite 300
Westlake, OH 44145
Attention: Mr. Richard Bongorno
Business: 440-871-1300 ext. 104
Fax:  216-937-0298

with a copy to:    H. Jeffrey Schwartz, Esq.
Mark A. Phillips, Esq.
Benesch Friedlander, Coplan & Aronoff LLP
2300 BP Tower
200 Public Square
Cleveland Ohio 44144-2378
Fax (216) 363-4588

If to Dunlop Slazenger International Limited, Dunlop Slazenger Manufacturing LLC, Slazengers Limited, Dunlop Sports Group Americas, Inc., The Antigua Group, Inc. and Sports World International Limited

Sports World International Limited
Chiltern Park
Boscombe Road
Dunstable
Beds LU5 4 LT
United Kingdom
Attention: Mr. Justin Barnes
Business – 011-440870 333 9400
Fax – 011-441582-670-066

with copies to:  Andrew J. White, Jr.
Haynsworth Sinkler Boyd, P.A.
75 Beattie Place
Two Liberty Square
Greenville, South Carolina 29601
Fax: (864) 240-3300

</div>

9842894.11                                            7

Michael L. Cook, Esq.
David M. Hillman, Esq.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Fax: (212) 593-5955

11.   Applicable Law.   This agreement will be governed in all respects, including the validity, interpretation and effect, by the Code and the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

12.   Assignments/Successors.   This agreement and all the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns (including any trustee appointed in the SGP bankruptcy case), subject only to the approval of this agreement by order of the Bankruptcy Court.

13.   Binding Effect.   Upon the Effective Date, this Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns, including any trustee appointed under chapter 11 or chapter 7 of the Bankruptcy Code for SGP.

14.   Counterparts.   This agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

15.   Entire Agreement.   This agreement, including any Exhibits hereto, constitutes the entire agreement between the Parties with respect to the subject matter hereof, and except as otherwise expressly provided herein, is not intended to confer upon any other person any rights or remedies hereunder.

16.   Construction of Settlement Agreement.   This Agreement, and Stipulated Dismissals in the forms attached hereto as Exhibits B and C, have been jointly drafted by the

9842894.11                              8

Parties at arms-length and each Party has had access to and the opportunity to consult with independent legal counsel and to comment fully on the Agreement. Accordingly, in the event of any dispute regarding the interpretation of any provision of this Agreement, such disputed provision shall not be construed against any Party solely by virtue of such Party's having taken part in the drafting of this Agreement and Stipulated Dismissals.

      17.    <u>Survival</u>. The terms and conditions of this Agreement, the Orders, and any action taken pursuant hereto, shall survive entry of any order confirming any chapter 11 plan in the Bankruptcy Cases, the appointment of a trustee for SGP or any conversion of the Bankruptcy Case from a case under chapter 11 to a case under chapter 7 of the Bankruptcy Code.

      18.    <u>Effect on Litigation.</u> Neither this agreement nor any of the terms hereof, or any negotiations or proceedings in connection herewith, shall constitute or be construed as evidence of an admission on the part of either SGP or any of the Defendants of any liability or wrongdoing whatsoever, or of the truth or untruth of any of the claims made by any party in interest, including the SGP Claims, or the merit or any lack of merit of any of the defenses thereto; nor shall this agreement or any of the terms hereof, or any negotiations or proceedings in connection herewith, be offered or received in evidence or used in any proceeding against SGP or any of the Defendants for any purpose whatsoever, except with respect to (a) effectuation and enforcement of this agreement, and (b) proceedings in the Bankruptcy Court to authorize and approve this agreement and the execution and delivery hereof by SGP.

      19.    <u>Authority</u>. Each Party, by execution of this Agreement, represents and warrants that he, she or it is fully authorized to enter into and perform this Agreement without any further or other consent or authorization from any person or entity.

20.    <u>Facsimile Signatures</u>.    This Agreement may be executed by *facsimile* signatures, which shall be binding on the Parties hereto as if it were an original document.

IN WITNESS WHEREOF, each of the parties hereto has caused this agreement to be executed on its behalf by its duly authorized officers or members, as of the day and year first above written.

**SGP Acquisition LLC, as debtor in possession**

By: _RICARDO P. BONGORNO_

    Name: _RICARDO P. BONGORNO_

    Title: _CEO_

**Dunlop Slazenger International Limited**

By: _____

    Name: _____

    Title: _____

**Dunlop Slazenger Manufacturing LLC**

By: _____

    Name: _____

    Title: _____

**Dunlop Sports Group Americas, Inc.**

By: _____

    Name: _____

    Title: _____

**Slazengers Limited**

By: _____

    Name: _____

    Title: _____

IN WITNESS WHEREOF, each of the parties hereto has caused this agreement to be executed on its behalf by its duly authorized officers or members, as of the day and year first above written.

**SGP Acquisition LLC, as debtor in possession**

By: _____

    Name: _____

    Title: _____


**Dunlop Slazenger International Limited**

By: _____

    Name: _JUSTIN BARNES_

    Title: _____


**Dunlop Slazenger Manufacturing LLC**

By: _____

    Name: _Kenneth DDriss_

    Title: _Secretary_


**Dunlop Sports Group Americas, Inc.**

By: _____

    Name: _Kenneth DDriss_

    Title: _Secretary_


**Slazengers Limited**

By: _____

    Name: _JUSTIN BARNES_

    Title: _____

A    145

08/21/2005 14:06 FAX 6846474087          WESTMINSTER EXECUTIVE                    @002

IN WITNESS WHEREOF, each of the parties hereto has caused this agreement to

be executed on its behalf by its duly authorized officers or members, as of the day and year first

above written.

**SGP Acquisition LLC, as debtor in possession**

By: _____

    Name: _____

    Title: _____

**Dunlop Slazenger International Limited**

By: _____

    Name: Kenneth D. Dries

    Title: Secretary

**Dunlop Slazenger Manufacturing LLC**

By: _____

    Name: Kenneth D. Dries

    Title: Secretary

**Dunlop Sports Group Americas, Inc.**

By: _____

    Name: Kenneth D. Dries

    Title: Secretary

**Slazengers Limited**

By: _____

    Name: Kenneth D. Dries

    Title: Secretary

9842894.11                    11

**LIST OF EXHIBITS**

Exhibit A – SGP Claims

Exhibit B – Stipulation and Order of Discontinuance with Prejudice (Adv. No. 05-50455(PJW))

Exhibit C – Stipulation and Order of Discontinuance with Prejudice (Adv. No. 05-50468(PJW))

Exhibit D – Escrow Agreement

A   147

Exhibit A
SGP CLAIMS

| Date Filed | Plaintiff | Defendant | Case No. |
|---|---|---|---|
| 12/8/04 | SGP | Dunlop Slazenger International Limited, Dunlop Slazenger Manufacturing LLC, Slazengers Limited, Dunlop Sports Group Americas, Inc., The Antigua Group, Inc., Sports World International, John Doe Companies and John Doe Individuals | 04-57512 (PJW) |
| 2/15/05 | SGP | Dunlop Slazenger Manufacturing LLC | 05-50455 (PJW) |
| 2/15/05 | SGP | Dunlop Sports Group America, Inc. | 05-50468 (PJW) |

A   148

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| SGP ACQUISITION, LLC, ) | Case No. 04-13382 (PJW) |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | Adv. No. 05-50455 (PJW) |
| SGP ACQUISITION, LLC, ) | |
| ) | |
| Plaintiff. ) | STIPULATION AND ORDER OF |
| v. ) | DISCONTINUANCE WITH PREJUDICE |
| ) | |
| DUNLOP SLAZENGER ) | |
| MANUFACTURING, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

PLEASE TAKE NOTICE that pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure (made applicable by Rule 7041 of the Federal Rules of Bankruptcy Procedure) the above-captioned action is hereby dismissed with prejudice, and without an award of costs or fees to any party.

Dated: Wilmington, Delaware
        June ___, 2005

ZUCKERMAN SPAEDER LLP

By: _____
        Thomas G. Macauley (No. 3411)

919 Market Street
Suite 990
Wilmington, DE 19801
(302) 427-0400

-- and --

SCHULTE ROTH & ZABEL LLP
Michael L. Cook

9842894.11

JASPAN SCHLESINGER HOFFMAN LLP

By: _____
        Frederick B. Rosner (No. 3995)

913 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 351-8000

-- and --

BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
H. Jeffrey Schwartz

14

David M. Hillman
919 Third Avenue
New York, NY 10022
(212) 756-2000

-- and --

**HAYNSWORTH SINKLER BOYD, P.A.**
Andrew J. White, Jr.
Jesse C. Belcher
75 Beattie Place
Two Liberty Square
Greenville, South Carolina 29601
(864) 240-3200

Attorneys for Dunlop Slazenger
Manufacturing LLC

Mark A. Phillips
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
(216) 636-4500

Attorneys for SGP Acquisition LLC

SO ORDERED THIS ___ DAY OF____ 2005

_____
UNITED STATES BANKRUPTCY JUDGE
HONORABLE PETER J. WALSH

9842894.11                          15

**EXHIBIT C**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SGP ACQUISITION, LLC, | ) | Case No. 04-13382 (PJW) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | Adv. No. 05-50468 (PJW) |
| SGP ACQUISITION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | STIPULATION AND ORDER OF |
| v. | ) | DISCONTINUANCE WITH PREJUDICE |
| | ) | |
| DUNLOP SPORTS GROUP | ) | |
| AMERICAS INC., | ) | |
| | ) | |
| Defendant. | ) | |

PLEASE TAKE NOTICE that pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure (made applicable by Rule 7041 of the Federal Rules of Bankruptcy Procedure) the above-captioned action is hereby dismissed with prejudice, and without an award of costs or fees to any party.

Dated: Wilmington, Delaware
        June ____, 2005

ZUCKERMAN SPAEDER LLP

By: _____
      Thomas G. Macauley (No. 3411)

919 Market Street
Suite 990
Wilmington, DE 19801
(302) 427-0400

-- and --

**SCHULTE ROTH & ZABEL LLP**
Michael L. Cook
David M. Hillman

9842894.11

JASPAN SCHLESINGER HOFFMAN LLP

By: _____
      Frederick B. Rosner (No. 3995)

913 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 351-8000

-- and --

**BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP**
H. Jeffrey Schwartz
Mark A. Phillips

16

A  151

919 Third Avenue
New York, NY 10022
(212) 756-2000

— and —

**HAYNSWORTH SINKLER BOYD, P.A.**
Andrew J. White, Jr.
Jesse C. Belcher
75 Beattie Place
Two Liberty Square
Greenville, South Carolina 29601
(864) 240-3200

Attorneys for Dunlop Sports Group
Americas, Inc.

2300 BP Tower
200 Public Square
Cleveland, OH 44114–2378
(216) 636-4500

Attorneys for SGP Acquisition LLC

SO ORDERED THIS ___ DAY OF ____ 2005

_____
UNITED STATES BANKRUPTCY JUDGE
HONORABLE PETER J. WALSH

EXHIBIT D

## ESCROW AGREEMENT

Escrow Agreement dated as of June 21, 2005, among Schulte Roth & Zabel LLP ("SRZ"); SGP Acquisition, LLC ("SGP"), as debtor and debtor-in-possession; and Dunlop Slazenger International Limited ("DSIL"), Dunlop Slazenger Manufacturing LLC ("DSM"), Slazengers Limited ("SL") and Dunlop Sports Group Americas, Inc. ("DSGA") (DSIL, DSM, SL and DSGA, collectively, "the Slazenger Group").

WHEREAS, pursuant to the Settlement Agreement dated June __, 2005 ("Settlement Agreement") among SGP and the Slazenger Group (together, the "Parties") Slazenger Group shall transfer to SRZ the sum of $100,000 (the "Escrow Funds"), which funds shall be held by SRZ in an interest-bearing escrow account.

WHEREAS, SRZ shall release the Escrow Funds and any accrued interest in accordance with section 3 of this Escrow Agreement.

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein, the Parties hereto agree as follows:

1.     Appointment of and Acceptance by Escrow Agent.  The Parties hereby appoint SRZ to serve as escrow agent hereunder.  SRZ hereby accepts such appointment and, upon receipt of the Escrow Funds, agrees to hold and release the Escrow Funds in accordance with this Escrow Agreement.  SRZ does not have any interest in the Escrow Funds deposited hereunder but is serving as escrow holder only and having only possession thereof.

2.     Deposit of Escrow Funds.  The Slazenger Group shall transfer the Escrow Funds to SRZ on the Effective Date (as defined in § 6 of the Settlement Agreement).  The Escrow Funds shall be held in an interest-bearing account.  If the Effective Date does not occur, this Escrow Agreement shall be null and of no binding effect, unless agreed by all the Parties in writing.

3.     Distribution of the Escrow Amount.  SRZ shall distribute the Escrow Funds and all accrued interest upon the earliest of the following:

(a)     to SGP on the business day that is 181 days after the Effective Date (as defined in § 6 of the Settlement Agreement);

(b)     to SGP upon receipt by SRZ of a written notice signed by a representative of SGP and the Slazenger Group stating that SGP's entire golf ball inventory has been indefeasibly sold, such sale of the entire golf ball inventory to be deemed to have occurred when SGP has no more than 100 dozen golf balls in its inventory available for sale; or

(c)     to such other party as directed by an order of the Bankruptcy Court (as defined in ¶ A of the Settlement Agreement).

4.     Duties and Responsibilities of Escrow Agent.  The Parties acknowledge and agree that SRZ (i) shall be obligated only for the performance of such duties as are specifically set

99041853

forth in this Escrow Agreement; (ii) may rely on and shall be protected in acting or refraining from acting upon any written notice, instruction, instrument, statement, request or document furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper person, and shall have no responsibility for determining the accuracy thereof.

5.    Exculpation and Indemnification.   SRZ shall not be liable for and shall be indemnified and held harmless from and against, any and all losses, liabilities, claims, actions, damages and expenses, including attorneys' fees and disbursements, arising out of or in connection with this Escrow Agreement.

6.    Termination.   This Escrow Agreement shall continue in effect until all Escrow Funds are disbursed pursuant to Section 3 hereof.

7.    Notices.   Any notice permitted or required hereunder shall be deemed to have been fully given if delivered personally or if mailed certified or registered mail, postage prepaid, or if sent by facsimile or overnight delivery to the parties at their addresses set forth in section 10 of the Settlement Agreement. Notices to SRZ shall be sent to Michael L. Cook and David M. Hillman at Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, telephone: (212) 756-2000 and facsimile: (212) 756-2599.

8.    Governing Law.   This Escrow Agreement shall be governed by and construed under the laws of the State of New York without regard to principles of conflict of law that would cause the application of the laws of any other state.

9.    Counterparts.   This Escrow Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

9904185.3

A    154

IN WITNESS WHEREOF, SRZ and each of the Parties have caused this Escrow Agreement to be duly executed by an authorized officer all as of the day and year first above written.

Schulte Roth & Zabel LLP

By: Michael L. Cook
Title: Partner

**SGP Acquisition LLC, as debtor in possession**

By: _WILLIAM BONGORNO_

Name: _RICHARD P. BONGORNO_

Title: _CEO_

**Dunlop Slazenger International Limited**

By: _____

Name: _____

Title: _____

**Dunlop Slazenger Manufacturing LLC**

By: _____

Name: _____

Title: _____

**Dunlop Sports Group Americas, Inc.**

By: _____

Name: _____

Title: _____

**Slazengers Limited**

By: _____

Name: _____

Title: _____

99004185.3

IN WITNESS WHEREOF, SRZ and each of the Parties have caused this Escrow Agreement to be duly executed by an authorized officer all as of the day and year first above written.

Schulte Roth & Zabel LLP

By: Michael L. Cook
Title: Partner

**SGP Acquisition LLC, as debtor in possession**

By: _____

    Name: _____

    Title: _____

**Dunlop Slazenger International Limited**

By: _____

    Name: Kenneth D Driss

    Title: Secretary

**Dunlop Slazenger Manufacturing LLC**

By: _____

    Name: Kenneth D Driss

    Title: Secretary

**Dunlop Sports Group Americas, Inc.**

By: _____

    Name: Kenneth D Driss

    Title: Secretary

**Slazengers Limited**

By: _____

    Name: Kenneth D Driss

    Title: Secretary

99041853

A     156

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------x
In re                              :    Chapter 11
                                   :
SGP ACQUISITION, L.L.C.,           :    Case No. 04-13382 (PJW)
                                   :
                 Debtor.           :    Related Docket No. 345
-----------------------------------x
```

**ORDER UNDER FED. R. BANKR. P. 9019 APPROVING SETTLEMENT
AGREEMENT AND REJECTION OF EXECUTORY CONTRACTS**

SGP Acquisition, LLC ("SGP"), debtor-in-possession, having moved on June 22,

2005 (the "Motion"), for an order under Bankruptcy Rule 9019, approving a settlement

agreement, dated June 21, 2005 (the "Settlement Agreement"), among (a) SGP, and (b)

Dunlop Slazenger International Limited ("DSIL"), Dunlop Slazenger Manufacturing

LLC ("DSM"), Slazenger Limited ("SL") and Dunlop Sports Group Americas, Inc.

("DSGA"), (DSIL, DSM, SL and DSGA, collectively, the "Slazenger Group"), which

resolves certain contested matters and two adversary proceedings asserting avoidance

actions (the "Avoidance Actions and provides for the rejection of three executory

contracts between SGP and the Slazenger Group (the "Agreements"); and the Court

having found (a) that the Settlement Agreement's proposed resolution of the disputes

between SGP and the Slazenger Group is within the range of reasonableness, (b) that the

rejection of the Agreements is in an exercise of SGP's sound business judgment, (c) that

the relief requested in the Motion is in the best interests of SGP, its estate, and its

creditors, and (d) that notice of the Motion was sufficient under the circumstances and no

further or other notice need be given; and upon the record herein and the record of this

chapter 11 case; and after due deliberation thereon; and good cause appearing therefor,

13950

**IT IS ORDERED THAT:**

1.    The Motion is granted.

2.    The Settlement Agreement is approved.

3.    The rejection and termination of the Agreements pursuant to the terms of the Settlement Agreement are authorized and approved without further court order, notice or a hearing.

4.    The dismissal with prejudice of the Avoidance Actions pursuant to the terms of the Settlement Agreement is authorized and approved.

5.    SGP is authorized to execute and deliver the Settlement Agreement plus any and all required instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate and implement the Settlement Agreement and to perform any and all obligations contemplated therein.

6.    This Court shall retain jurisdiction with respect to implementation of the Settlement Agreement and this Order.

Dated:  Wilmington, Delaware
        June 27, 2005

_____
United States Bankruptcy Judge

13950                                2

A   158

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------x
```
In re                                      : Case No. 04-13382 (PJW)
                                           :
SGP ACQUISITION, LLC,                      : Chapter 11
                                           :
                          Debtors.         : [Proposed] Hearing Date: July 14, 2005 @ 10:30 a.m.
```
------------------------------------------------X Objection Deadline: July 11, 2005 @ 4:00 p.m.
```

### NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on July 1, 2005, SGP Acquisition, LLC filed its

*Motion for Entry of an Order Approving Settlement Agreement Between the Debtor and*

*Other Key Parties in Interest in this Chapter 11 Case* (the "Motion") with the United

States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington,

Delaware 19801 (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any,

must be made in writing, state with particularity the reasons therefor, and be filed with

the Bankruptcy Court and served upon the undersigned so as to actually be received on or

before **JULY 11, 2005 AT 4:00 P.M. (EST)**.

A HEARING ON THE MOTION WILL BE HELD ON JULY **14, 2005 AT**

**10:30 A.M. (EST) AT THE UNITED STATES BANKRUPTCY COURT,** 824

MARKET STREET, WILMINGTON, DELAWARE 19801.

14038

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE

COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT

FURTHER NOTICE OR HEARING.

Dated: July 1, 2005                    **JASPAN SCHLESINGER HOFFMAN LLP**
Wilmington, Delaware


/s/ Frederick B. Rosner
Frederick B. Rosner (No. 3995)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone:    (302) 351-8000
Facsimile:    (302) 351-8010

- and -

H. Jeffrey Schwartz (OBR #0014307)
Mark A. Phillips (OBR # 0047347)
Michael D. Zaverton (OBR #0038597)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
Telephone:    (216) 363-4500
Facsimile:    (216) 363-4588

Counsel for SGP Acquisition, LLC, Debtor
and Debtor in Possession

14038                            2

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------x
In re                              :  Case No. 04-13382 (PJW)
                                   :
SGP ACQUISITION, LLC,              :  Chapter 11
                                   :
                     Debtors.      :  [Proposed] Hearing Date: July 14, 2005 @ 10:30 a.m.
-----------------------------------------------x  Objection Deadline:  July 11, 2005 @ 4:00 p.m.
```

## MOTION FOR ENTRY OF AN ORDER APPROVING
## SETTLEMENT AGREEMENT BETWEEN THE DEBTOR AND
## OTHER KEY PARTIES IN INTEREST IN THIS CHAPTER 11 CASE

SGP Acquisition, LLC ("Debtor"), debtor and debtor in possession in the above-captioned case, hereby moves (the "Motion") the Court for entry of an order approving a proposed settlement (the "Settlement") as embodied in the Supplemental Funding and Settlement Agreement (the "Settlement Agreement") by and among the Debtor, the Official Committee of Unsecured Creditors in the chapter 11 case of the Debtor (the "Committee"), the Provident Bank (the "Bank"), Kimolos II, L.P. ("Kimolos"), Zapis Capital ("Zapis") and Benesch, Friedlander, Coplan & Aronoff LLP ("Benesch") (the Committee, the Bank, Kimolos, Zapis and Benesch are hereinafter collectively referred to as the "Major Parties in Interest"). In support of the Motion, the Debtor respectfully states as follows:

### I. JURISDICTION

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought herein are sections 105 and 365 of Title 11 (the "Bankruptcy Code") of the United States Code and Rule 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. BACKGROUND

2.       On November 30, 2004 (the "Petition Date"), SGP filed with this Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, SGP is continuing to operate its business and manage its property and assets as a debtor in possession. On December 15, 2004, the Office of the United States Trustee appointed the Committee. The Committee has retained counsel and has been actively involved in the Debtor's chapter 11 case.

### SGP's Business

3.       SGP, a limited liability company formed under the laws of the State of Delaware, is a privately held company that, as of the Petition Date had the exclusive right to sell Slazenger-brand golf products in the United States, Canada, Mexico and the Caribbean Islands (the "Territory") pursuant to a long term license with Slazengers Limited ("Slazengers") and Dunlop Slazenger International Limited ("DSIL"), both companies organized under the laws of England and a supply arrangement with Dunlop Slazenger Manufacturing LLC ("DSM"), a South Carolina limited liability company.

4.       Headquartered in Cleveland, Ohio, SGP has a national sales force and operates a customer service and order fulfillment operation in Greenville, South Carolina. SGP's primary products include premium golf apparel, golf balls, and related accessories.

### The License Agreement

5.       Under the License Agreement, DSIL, as Slazengers' agent, granted SGP an exclusive right to design, manufacture and sell certain "Unrestricted Products" and "Licensed Products" (all primarily golf equipment and apparel) throughout North America. Such license

2

A   162

includes, among other rights, exclusive rights to sell golf products and apparel under the "SLAZENGER" and related trademarks.

### The Supply Agreement and the Technology Agreement

6.    Concurrent with the execution of the License Agreement, SGP and DSM entered into the Supply Agreement, pursuant to which DSM agreed to supply SGP with golf balls in response to quarterly forecasts and periodic purchase orders. At the same time, SGP also entered into the Technology Agreement with Dunlop Slazenger Group Americas, Inc. ("DSGA" and together with Slazengers, DSIL and DSM the "Dunlop Slazenger Entities"), pursuant to which SGP and DSGA set forth the terms under which they would collaborate in the design, development and testing of golf balls.

### Events Leading to the Commencement of the Debtor's Chapter 11 Case

7.    In early 2004, SGP developed and marketed two new lines of golf balls, a product launch that was extraordinarily successful.

8.    In or about February 2004, Sports World International ("SWI") acquired Slazengers, DSIL, DSM and other affiliated companies. Soon after the acquisition, SGP's relationship with the Dunlop Slazenger Entities began to deteriorate. By mid-2004, it became apparent that SWI's prime objective was to terminate SGP's licensing and manufacturing relationships with the Slazenger in favor of marketing and distributing Slazenger-brand products in the Territory through its own channels. The campaign orchestrated by SWI had its intended effect, crippling SGP's business operations and ultimately compelling SGP to seek relief under the Bankruptcy Code in order to, among other things, preserve its interests under the License Agreement and the Supply Agreement.

3

9.     On December 8, 2004, SGP commenced an adversary proceeding, docketed as Adversary Proceeding No. 04-57512, by filing a Verified Complaint against DSM, DSIL, DSGA, Slazengers, Sports World International, and The Antigua Group, Inc., alleging, *inter alia*, breach of the License and Supply Agreements and tortious interference with contractual and business relations and seeking injunctive and declaratory relief with respect to the purported termination of those agreements by Slazengers, DSIL and DSM.  On January 6, 2005, the defendants in the adversary proceeding filed a joint answer to the Complaint containing, *inter alia*, counterclaims asserted by Slazengers and DSM with respect to alleged breaches of the License and Supply Agreements by the Debtor and seeking injunctive and declaratory relief declaring the agreements terminated.  The defendants filed an amended answer and an amended corrected answer the following day.

10.     SGP subsequently commenced two separate adversary proceedings:   *SGP Acquisition LLC v. Dunlop Slazenger Manufacturing, Inc.*, Adversary Proceeding No. 05-50455, and *SGP Acquisition LLC v. Dunlop Sports Group Americas, Inc.*, Adversary Proceeding No. 05-50468, with respect to alleged avoidance actions under section 547 and 548 of the Bankruptcy Code.

11.     On February 28, 2005, the Dunlop Slazenger Entities filed a motion for relief from stay (the "Stay Motion") alleging, among other things, that (i) the License Agreement is not assumable or assignable as a matter of law because it is not assignable under federal trademark law; (ii) non-curable defaults bar assumption and assignment of the License Agreement; (iii) Slazenger's interest in the trademark is being irreparably harmed and SGP cannot protect that interest; and (iv) termination of the License Agreement (on the basis of any of the foregoing)

4

A     164

results in the termination of the Supply Agreement and Technology Agreement because they are all part of a single unified transaction.

12.    The existence of the pending litigation between SGP and the Dunlop Slazenger Entities, specifically the unresolved issue regarding the viability of the License Agreement, impaired the Debtor's ability to market its business or obtain additional infusions of capital. The Debtor's efforts to negotiate a global resolution of the disputes with the Dunlop Slazenger Entities – structured around a going concern sale of the Debtor's business to a leading licensor, designer and marketer of high quality men' and women's apparel, accessories, and fragrances – collapsed when the potential purchaser withdrew from the proposed transaction. In light of the failure of this settlement initiative, the scheduled expiration of authority to use cash collateral and of the debtor in possession financing on May 31, 2005, and the absence of a realistic time frame for resolution of the litigation – including, specifically, a final determination regarding the continued viability of the License Agreement, the Debtor concluded that the value of its estate could best be maximized through an orderly wind-down of the Debtor's business and affairs in chapter 11. Accordingly, the Debtor has commenced the implementation of an orderly wind-down of its business and affairs.

13.    Notwithstanding the collapse of its efforts to obtain a global resolution, the Debtor continued settlement discussions with the Dunlop Slazenger Entities. Ultimately, these discussions resulted in a settlement of certain disputes regarding the License Agreement, the Supply Agreement and the Technology Sharing Agreement. Specifically, the Dunlop Slazenger Entities agreed to pay the Debtor's estate $575,000 (the "Dunlop Settlement Proceeds"), to withdraw and/or not assert claims in the Debtor's case totaling at least $3,546,975, and to withdraw certain pleadings filed in the Debtor's chapter 11 case in exchange for SGP's

agreement to dismiss certain litigation and reject the Agreements. The settlement with the Dunlop Slazenger Entities did not, however, settle or otherwise affect the Debtor's claims for, among other things, breach of the License Agreement and Supply Agreement and tortious interference asserted in Adversary Proceeding No. 04-57512. The settlement with the Dunlop Slazenger Entities was approved by the Court by order entered on June 27, 2005.

14.    Subsequently, the Debtor and the Major Parties in Interest negotiated the Supplemental Funding and Settlement Agreement to, among other things, resolve a dispute over the allocation of the Dunlop Settlement Proceeds. Specifically, the Major Parties in Interest reached an agreement determining which portion of the Dunlop Settlement Proceeds would be paid to the Debtor's estate on account of the preference and fraudulent conveyance actions dismissed in connection with the settlement and what portion of the Dunlop Settlement Proceeds would be paid to the Bank on account of the liquidation of collateral securing the Bank's claims. Additionally, the parties established a framework for the future administration of the Debtor's chapter 11 case. Specifically, the Supplemental Funding and Settlement Agreement, a copy of which is attached hereto as **Exhibit A**, provides, in pertinent part, that:

    a.    Cash Proceeds of Dunlop Settlement. The first $285,000 of cash proceeds of the Dunlop Settlement shall be paid to the Debtor's estate and used to pay administrative expense claim in excess of the professional fee carve-outs. The remaining cash proceeds of the Dunlop Settlement shall be paid to the Bank and applied to the Debtor's obligations to the Bank on the terms set forth in the Final Financing Order, as amended.

    b.    Payment and Deferral of Administrative Claims. The Debtor shall promptly pay any amounts due for all allowed administrative claims for professional fees and expenses from, first, the professional fee carveouts provided in any postpetition financing for the Debtor and, second, from the $285,000 of cash proceeds of the Dunlop Settlement under section 2 of the Supplemental Funding and Settlement Agreement, provided, however, that if there are insufficient funds to pay all such allowed administrative claims in full, Benesch agrees to defer payment of it allowed professional fees and expenses that remain after the exhaustion of such sources and to have such remaining fees and expenses

6

A    166

paid from that portion of the proceeds of the Dunlop Litigation, if any, paid to the Debtor's estate pursuant to section 4 of the Supplemental Funding and Settlement Agreement.

     c.    <u>Kimolos Supplemental Financing</u>.[1]  Kimolos agrees that Kimolos or its designee shall provide the Debtor's estate with $300,000 of supplemental, postpetition financing for the purposes of paying the costs of administration of the Debtor's estate after termination of the Final Financing Order, as amended, and paying the costs of the Dunlop Litigation.  Kimolos, the Debtor and the Committee shall agree on a budget pursuant to which the supplemental financing shall be used by the Debtor's estate and shall have the right, by written agreement, to alter, amend or extend the budget or increase the total principal amount of the Supplemental Financing.  Kimolos or its designee shall be entitled to receive interest at the prime rate published in the Wall Street Journal plus 3 percent per annum and a fee payable from the proceeds of the Dunlop Litigation after the principal and interest on the Kimolos Supplemental Financing is paid in full from such proceeds, as follows:

          (i)    The first $65,000 of the proceeds of the Dunlop Litigation after payment of the Kimolos principal and interest shall be paid to the Debtor's estate, free and clear of liens.

          (ii)    Kimolos or its designee shall receive the greater of 75% or the Kimolos Pro Rata Share of the next proceeds until the obligations of Kimolos under the guarantee of the Debtor's pre-petition and post-petition obligations to the Bank (the "Kimolos Guarantee") are paid in full.  The Debtor's estate shall receive the remainder of such next proceeds, free and clear of liens.  "Kimolos Pro Rata Share" shall mean, as of the date of receipt of the Dunlop Litigation proceeds, the obligations under the Kimolos Guarantee divided by the sum of the obligations under the Kimolos Guarantee plus the aggregate amount of unpaid administrative claims.

          (iii)    Kimolos or its designee shall receive 50% of the remaining proceeds of the Dunlop Litigation.  The Debtor's estate shall receive the other 50% of the remaining proceeds of the Dunlop Litigation, free and clear of liens.

     D.    <u>Settlement of Dunlop Litigation</u>.  Kimolos or its designee, the Debtor and the Committee must agree to any settlement of the Dunlop Litigation that will provide an aggregate recovery to unsecured creditors of less than $1 million.  Kimolos or its designee, in its sole discretion, may cause the Debtor to

---

[1]    The parties are presently documenting the detailed terms of this supplemental financing arrangement. Once those documents have been prepared, the Debtor will file a separate motion for approval of the debtor in possession financing arrangement outlined in the Supplemental Funding and Settlement Agreement.

enter into any settlement that will provide an aggregate recovery to unsecured creditors of $1 million or more.

   E. Zapis/Kimolos Subordination of Administrative Claims. Zapis and Kimolos, on behalf of themselves and their affiliates, hereby subordinates all administrative claims against the Debtor's estate to all allowed claims of other creditors of the Debtor's estate; provided, however, that this subordination shall not be deemed a subordination of any subrogation claims under the Kimolos Guarantee, any claims under the Supplemental Financing or any equity interests of Zapis, Kimolos or their affiliates.

### III. RELIEF REQUESTED AND THE REASONS THEREFORE

  15. By this Motion, the Debtor seeks this Court's approval of the settlement embodied in the Supplemental Funding and Settlement Agreement. The Debtor believes that the settlement is in the best interest of its estate and creditors.

  16. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."[2] Further, compromises and settlements are favored and encouraged in bankruptcy court proceedings.[3]

  17. The decision "whether to approve a compromise under Bankruptcy Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."[4] Under this standard, known as the "best interests" test, a debtor must show that a compromise or settlement is "fair and equitable" to the estate.[5] In making its determination with respect to the approval of a proposed compromise, the court:

---

[2] FED.R.BANKR.P. 9019(a).

[3] *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *In re Blair*, 538 F.2d 849, 851(9th Cir. 1976); *Genesis Health Ventures*, 266 B.R. at 619; *In re Edwards*, 228 B.R. 552, 568 (Bankr. E.D. Penn. 1998); *In re Sherman Homes, Inc.*, 28 B.R. 176, 177 (Bankr. D. Me. 1983).

[4] *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997) (declining to approve settlement found to be *sub rosa* plan).

[5] *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (hereinafter cited as "TMT"); *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr.D.N.J.1997).

> need not conduct its own investigation concerning the
> reasonableness of the settlement and may credit and consider the
> opinion of the Trustee and counsel that the settlement is fair and
> equitable. [citations omitted].    Similarly, the court need not
> conduct a "mini-trial" to determine the merits of the underlying
> litigation. Rather, the court's responsibility is 'to canvas the issues
> and see whether the settlement fall[s] below the lowest point in the
> range of reasonableness.'[6]

Factors to be considered in determining the reasonableness of a proposed compromise and

settlement include:

- • the probability of success in the litigation;

- • the difficulty in collecting after obtaining a judgment in the litigation;

- • the complexity of the litigation involved, and the expense, inconvenience
  and delay necessarily attending it; and

- • the interest of creditors and stockholders and a proper deference to their
  reasonable views of the settlement.[7]

In *Columbia Gas*, the court observed that the "[r]elevant factors to consider in evaluating the

settlement include the probability of success in the claims litigation, complexity of litigation,

expense, inconvenience and delay attending to the litigation, interests of creditors, and the extent

to which the settlement is truly the product of arm's length bargaining and not of fraud and

collusion."[8] In addition, the Court "may also consider the competency and experience of counsel

supporting the settlement."[9] Finally, it is well established that the reasonableness of a proposed

compromise and settlement does not depend on a determination that the settlement reached is the

---

6    *In re Purofied Down Products Corp.*, 150 B.R. 519 (S.D.N.Y. 1993). *See, Nellis v. Shugrue*, 165 B.R. 115,
     122 (S.D.N.Y. 1995) (a bankruptcy court may consider the opinions of the trustee or debtor that the
     settlement is fair and equitable).

7    *TMT*, 390 U.S. at 424 (1968); *see also In re Jasmine*, 258 B.R. 119, 123 (D. N.J. 2000); *Martin*, 91 F.3d at
     393; *In re Columbia Gas Sys., Inc.*, Bankr. Nos. 91-803, 91-804, 1995 WL 404892, at *1 (Bankr. D. Del.
     June 16, 1995).

8    *Columbia Gas Sys*, Bankr. Nos. 91-803, 91-804, 1995 WL 404892, at *1

9    *Shugrue, 165 B.R. at 122.*

9

best that could possibly be obtained, but rather, whether the settlement "fall[s] below the lowest point in the range of reasonableness."[10]

18.    The Debtor believes that the settlement embodied in the Supplemental Funding and Settlement Agreement rises well above the "lowest point in the range of reasonableness." Here, the settlement resolves the dispute between the Debtor's estate and the Bank over allocation of the Dunlop Settlement Proceeds. Additionally, it provides for the payment of estate professionals in this case – the estate's primary, accrued and outstanding administrative expense – and memorializes an agreement to provide additional funding to the Debtor for (a) purposes of paying the costs of administration subsequent to the expiration of the existing postpetition financing being provided by the Bank and (b) paying the costs of liquidating one of the Debtor's primary remaining assets: the estate's remaining claims against the Dunlop Slazenger Entities. The settlement embodied in the Supplemental Funding and Settlement Agreement is the product of arms-length, good faith negotiations between the Debtor and the Major Parties in Interest, all of whom were represented by competent and experienced bankruptcy counsel. Accordingly, the Debtor believes that the settlement embodied in the Supplemental Funding and Settlement Agreement benefits the estate by avoiding litigation over the allocation of the Dunlop Settlement Proceeds and establishing a framework for the future administration of this case.

---

[10]    *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983); *see also In re Penn Central Transportation Co.*, 596 F.2d 1102, 1114 (3rd Cir. 1979) (test is whether terms of proposed compromise fall "within the reasonable range of litigation possibilities") (citations omitted); *In re Pennsylvania Truck Lines, Inc.*, 150 B.R.595, 598 (E.D. Pa. 1992) (citing *W.T. Grant*, 699 F.2d at 608) (same); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 620 (D. Del. 2001) ("if the settlement falls below the lowest point in the range of reasonableness, it should be rejected") (internal quotations omitted).

WHEREFORE, the Debtor respectfully requests that the Court enter an order approving

the settlement embodied in the Supplemental Funding and Settlement Agreement and granting it

such other relief as the Court deems appropriate under the circumstances.

July 1, 2005
Wilmington, Delaware

Respectfully submitted,

/s/ Frederick B. Rosner
Frederick B. Rosner (No. 3995)
JASPAN SCHLESINGER HOFFMAN LLP

913 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone:    (302) 351-8000
Facsimile:    (302) 351-8010

- and -

H. Jeffrey Schwartz (OBR #0014307)
Mark A. Phillips (OBR # 0047347)
Michael D. Zaverton (OBR #0038597)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
Telephone:    (216) 363-4500
Facsimile:    (216) 363-4588

Counsel for SGP Acquisition, LLC, Debtor and
Debtor in Possession

11