# EXHIBIT "A"

# SUPPLEMENTAL FUNDING AND SETTLEMENT AGREEMENT

This SUPPLEMENTAL FUNDING AND SETTLEMENT AGREEMENT (this "Agreement") is entered into as of this 24th day of June, 2005, by and among SGP Acquisition, LLC, debtor and debtor in possession (the "Debtor"), the Official Committee of Unsecured Creditors in the chapter 11 case of the Debtor (the "Committee"), The Provident Bank (the "Bank"), Kimolos II, L.P. ("Kimolos"), Zapis Capital ("Zapis") and Benesch, Friedlander, Coplan & Aronoff LLP ("Benesch").

## RECITALS

WHEREAS, the Debtor filed a complaint against Dunlop Slazenger and its affiliates in December 2004, alleging various breach of contract, tort and other causes of action (the "Dunlop Litigation");

WHEREAS, the Debtor has entered into a settlement of, among other things, the Motion for an Order Under 11 U.S.C. § 1112(b) Converting Chapter 11 Case to a Case Under Chapter 7 filed by Dunlop Slazenger, Motion of Slazenger for Relief from the Automatic Stay filed by Dunlop Slazenger and two preference actions filed by the Debtor against Dunlop Slazenger and its affiliates, but not the Dunlop Litigation (the "Dunlop Settlement");

WHEREAS, the parties hereto have agreed, subject to the terms and conditions hereof, what portion of the Dunlop Settlement proceeds will be paid to the Debtor's estate on account of the preference actions and what portion of the Dunlop Settlement proceeds were on account of the collateral securing the Bank's claims;

WHEREAS, Benesch has agreed to defer its administrative claim in excess of the carve-outs, subject to the terms and conditions hereof;

WHEREAS, Kimolos and Zapis have agreed to subordinate their administrative claims, subject to the terms and conditions hereof;

WHEREAS, the Bank has agreed to release its security interest on the proceeds of the Dunlop Litigation payable to the Debtor's estate hereunder, subject to the terms and conditions hereof;

WHEREAS, Kimolos has agreed that Kimolos or its designee will provide $300,000 of supplemental post-petition financing to the Debtor, subject to the terms and conditions hereof;

NOW, THEREFORE, in consideration of the foregoing, the covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:



CHI\770525.1

SECTION 1. Provident Amendment and Partial Release of Lien.

The parties hereto shall support the approval by the Bankruptcy Court of the proposed amendment (the "Provident Amendment") to the Final Order (a) Authorizing Post-Petition Financing on a Superpriority Basis Under Section 364 of the Bankruptcy Code, (b) Use of Cash Collateral Under Section 363 of the Bankruptcy Code and (c) Granting Adequate Protection Under Sections 361 and 363 of the Bankruptcy Code (the "Provident Financing Order"), and the Bank shall fund the amounts, including the professional fee carve-outs, therein, on the terms and conditions therein. The Bank hereby releases its pre-petition and post-petition liens and security interests, including any liens or security interests granted under the Provident Financing Order, on the portion of the Dunlop Litigation proceeds payable to the Debtor's estate hereunder.

SECTION 2. Cash Proceeds of Dunlop Settlement.

The first $285,000 of cash proceeds of the Dunlop Settlement shall be paid to the Debtor's estate and used to pay administrative claims in excess of the professional fee carve-outs. The remaining cash proceeds of the Dunlop Settlement shall be paid to the Bank and applied to the Debtor's obligations to the Bank on the terms set forth in the Provident Financing Order.

SECTION 3. Payment and Deferral of Administrative Claims.

The Debtor shall promptly pay any amounts due for all allowed administrative claims for professional fees and expenses from, first, the professional fee carveouts provided in any approved post-petition financing for the Debtor and, second, from the $285,000 of cash proceeds of the Dunlop Settlement under section 2 hereof; provided, however, that if there are insufficient funds from such sources to pay all such allowed administrative claims in full, Benesch agrees to defer the payment of its allowed professional fees and expenses that remain after the exhaustion of such sources and to have such remaining fees and expenses paid from that portion of the proceeds of the Dunlop Litigation, if any, paid to the Debtor's estate pursuant to section 4 hereof.

SECTION 4. Kimolos Supplemental Financing.

Kimolos agrees that Kimolos or its designee shall provide the Debtor's estate with $300,000 of supplemental post-petition financing (the "Supplemental Financing") for the purposes of paying the costs of administration of the Debtor's estate after termination of the Provident Financing Order as amended by the Provident Amendment and paying the costs of the Dunlop Litigation. Kimolos or its designee, the Debtor and the Committee shall agree on a budget pursuant to which the supplemental financing shall be used by the Debtor's estate and shall have the right, by written agreement, to alter, amend or extend the budget or increase the total principal amount of the Supplemental Financing. Kimolos or its designee shall be entitled to receive interest at the prime rate published in the Wall Street Journal plus 3 percent per annum and a fee payable from the proceeds of the Dunlop Litigation after the principal and interest on the Kimolos Supplemental Financing is paid in full from such proceeds, as follows:

(a) The first $65,000 of the proceeds of the Dunlop Litigation after payment of the Kimolos principal and interest shall be paid to the Debtor's estate, free and clear of liens.

(b) Kimolos or its designee shall receive the greater of 75% or the Kimolos Pro Rata Share of the next proceeds until the obligations of Kimolos under the Kimolos guarantee of the Debtor's pre-petition and post-petition obligations to the Bank (the "Kimolos Guarantee") are paid in full. The Debtor's estate shall receive the remainder of such next proceeds, free and clear of liens. "Kimolos Pro Rata Share" shall mean, as of the date of receipt of the Dunlop Litigation proceeds, the obligations under the Kimolos Guarantee divided by the sum of the obligations under the Kimolos Guarantee plus the aggregate amount of unpaid administrative claims.

(c) Kimolos or its designee shall receive 50% of the remaining proceeds of the Dunlop Litigation. The Debtor's estate shall receive the other 50% of the remaining proceeds of the Dunlop Litigation, free and clear of liens.

SECTION 5. Settlement of Dunlop Litigation

Kimolos or its designee, the Debtor and the Committee must agree to any settlement of the Dunlop Litigation that will provide an aggregate recovery to unsecured creditors of less than $1 million. Kimolos or its designee, in its sole discretion, may cause the Debtor to enter into any settlement that will provide an aggregate recovery to unsecured creditors of $1 million or more.

SECTION 6. Zapis/Kimolos Subordination of Administrative Claims

Zapis and Kimolos, on behalf of themselves and their affiliates, hereby subordinates all administrative claims against the Debtor's estate to all allowed claims of all other creditors of the Debtor's estate; provided, however, that this subordination shall not be deemed a subordination of any subrogation claims under the Kimolos Guarantee, any claims under the Supplemental Financing or any equity interests of Zapis, Kimolos or their affiliates.

SECTION 7. Governing Law.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS (AS OPPOSED TO CONFLICTS OF LAWS PROVISIONS) OF THE STATE OF DELAWARE.

SECTION 8. Headings.

Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purposes.

SECTION 9. Construction.

This Agreement and all other agreements and documents executed in connection therewith have been prepared through the joint efforts of all of the parties. Neither the provisions of this Agreement or any such other agreements and documents nor any alleged ambiguity shall be interpreted or resolved against any party on the ground that such party's counsel drafted this Agreement or such other agreements and documents, or based on any other rule of strict construction. Each of the parties hereto represents and declares that such party has carefully read this Agreement and all other agreements and documents executed in connection therewith, and that such party knows the contents thereof and signs the same freely and voluntarily. The parties hereby acknowledge that they have been represented by legal counsel of their own choosing in negotiations for and preparation of this Agreement and all other agreements and documents executed in connection therewith and that each of them has read the same and had their contents fully explained by such counsel and is fully aware of their contents and legal effect.

SECTION 10. Counterparts.

This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart. Any party hereto may execute and deliver a counterpart of this Agreement by delivering by facsimile transmission a signature page of this Agreement signed by such party, and any such facsimile signature shall be treated in all respects as having the same effect as an original signature. Any party delivering by facsimile transmission a counterpart executed by it shall promptly thereafter also deliver a manually signed counterpart of this Agreement.

SECTION 11. Further Assurances.

The parties hereto agree to take all further actions and execute all further documents as are reasonably necessary to carry out the transactions contemplated by this Agreement, including seeking and supporting prompt Bankruptcy Court approval hereof.

SECTION 12. Effectiveness.

This Agreement shall become effective at the time that all of the following conditions precedent have been met (the "Effective Date"):

(a) Agreement. This agreement shall have been fully executed.

(b) Bankruptcy Court Approval. The Bankruptcy Court shall have entered an order approving the Provident Amendment, the Supplemental Financing and the other terms and conditions of this Agreement on or prior to July 31, 2005.

SECTION 13. Waiver Of Jury Trial.

EACH OF THE PARTIES HERETO WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY CLAIM, COUNTERCLAIM, ACTION OR OTHER PROCEEDING ARISING UNDER OR RELATING TO THIS AGREEMENT.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date first written above.

**SGP ACQUISITION, LLC**

By: [signature]
Name: RICHARD P. BARBERO
Title: CEO

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE CHAPTER 11 CASE OF SGP ACQUISITION, LLC**

By: [signature]
Name: Josef Athanas
Title: Attorney

**THE PROVIDENT BANK**

By:________________
Name:________________
Title:________________

**KIMOLOS II, L.P.**

By:________________
Name:________________
Title:________________

CH\2708535.1

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date first written above.

**SGP ACQUISITION, LLC**

By:____________________
Name:____________________
Title:____________________

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE CHAPTER 11 CASE OF SGP ACQUISITION, LLC**

By:____________________
Name:____________________
Title:____________________

**THE PROVIDENT BANK**

By: [signature]
Name: Sharon L Rader
Title: Vice President

**KIMOLOS II, L.P.**

By:____________________
Name:____________________
Title:____________________

CHI\770525.1

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date first written above.

**SGP ACQUISITION, LLC**

By:____________________
Name:__________________
Title:___________________

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE CHAPTER 11 CASE OF SGP ACQUISITION, LLC**

By:____________________
Name:__________________
Title:___________________

**THE PROVIDENT BANK**

By:____________________
Name:__________________
Title:___________________

**KIMOLOS II, L.P.**

By: [signature]
Name: Lee Zapis
Title: The Representative

**ZAPIS CAPITAL**

By: [signature]
Name: Lee Zapis
Title: President

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

By:____________________
Name:____________________
Title:____________________

TOTAL P.03

**ZAPIS CAPITAL**

By:____________________
Name:____________________
Title:____________________

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

By: [signature]
Name: MARK A. PHILLIPS
Title: PARTNER

CHI770525.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| SGP ACQUISITION, LLC, | : | Case No. 04-13382 (PJW) |
| Debtor. | : | [Proposed] Hearing Date: July 14, 2005 @ 10:30 a.m. |
| | | Related Docket No. 364 |

**MOTION OF SGP ACQUISITION, LLC TO LIMIT NOTICE FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTOR AND OTHER KEY PARTIES IN INTEREST IN THIS CHAPTER 11 CASE**

SGP Acquisition, LLC ("SGP"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), by its undersigned attorneys, hereby moves this Court, pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Section 102 of Title 11 of the United States Code (the "Bankruptcy Code"), and Del. Bankr. L.R. 9006-1(e) for an order limiting notice so the ***Motion for Entry of an Order Approving Settlement Agreement Between the Debtor and Other Key Parties in Interest in this Chapter 11 Case*** [D.I. 364] (the "Settlement Motion") is heard on July 14, 2005, the next omnibus date, and respectfully represents as follows:

**Relief Requested**

1. The next omnibus hearing date in this case is scheduled for July 14, 2005 at 10:30 a.m. The Debtor seeks to have this Court limit notice so the Settlement Motion is heard on that omnibus date.

2. Local Rule 9006-1(e) provides that the notice period may be shortened by Order of the Court upon written motion specifying the exigencies supporting shortened notice.

3. Bankruptcy Rule 9006(c)(1) provides, in relevant part, that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given

thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced." Bankruptcy Rule 9006(c)(2) states that the Court may not reduce the time for taking certain action under other Bankruptcy Rules, none of which apply here.

4. The Debtor respectfully requests that the Court consider the Settlement Motion on limited notice. The proposed Settlement and related Supplemental Funding Agreement were described generally to the Court and other interested parties at the last omnibus hearing, and the Debtor does not anticipate any objections to the proposed Settlement Agreement at the July 14 hearing.

**Notice**

5. A copy of this Motion to Shorten together with the Settlement Motion has been served (by hand, facsimile and/or e-mail) upon counsel to: (i) the Official Committee of Unsecured Creditors, (ii) the DIP Lender, (iii) the Office of the United States Trustee and (iv) counsel to the Dunlop entities; and by first class mail upon (v) all parties that have requested notice pursuant to Rule 2002.

WHEREFORE, the Debtor respectfully requests that the Court enter the Order in the form attached hereto and grant such other relief as is just and proper.

Dated: July 1, 2005
Wilmington, Delaware

**JASPAN SCHLESINGER HOFFMAN LLP**

By: /s/ Frederick B. Rosner
Frederick B. Rosner (No. 3995)
913 Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 351-8000
Facsimile: (302) 351-8010

- and -

H. Jeffrey Schwartz (OBR #0014307)
Mark A. Phillips (OBR #0047347)
Michael D. Zaverton (OBR #0038597)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
Telephone: (216) 363-4500
Facsimile: (216) 363-4588
jschwartz@bfca.com
mphillips@bfca.com
mzaverton@bfca.com

Counsel for SGP Acquisition, LLC, Debtor and Debtor in Possession

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SGP ACQUISITION, LLC, | : | Case No. 04-13382 (PJW) |
| | : | |
| Debtor. | : | **Related Docket No.** |
| | : | |

**ORDER APPROVING SHORTENED NOTICE WITH RESPECT TO MOTION OF SGP ACQUISITION, LLC TO LIMIT NOTICE FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTOR AND OTHER KEY PARTIES IN INTEREST IN THIS CHAPTER 11 CASE**

Upon the Motion filed by the above-captioned debtor and debtor in possession (the "Debtor") for an order to shorten notice with respect to Debtor's *Motion for Entry of an Order Approving Settlement Agreement Between the Debtor and Other Key Parties in Interest in this Chapter 11 Case* ("Settlement Motion") so that it may be heard on July 14, 2005, the next omnibus hearing date; and the Court being satisfied that the representations contained in the Motion to Shorten Notice constitute cause to shorten notice as set forth therein; it is hereby

ORDERED, that

1. The Motion to Shorten Notice be and hereby is granted.

2. The hearing on the Settlement Motion shall be held on July 14, 2005 at 10:30 a.m.

Dated: July ___, 2005
Wilmington, Delaware

______________________________
UNITED STATES BANKRUPTCY JUDGE

13836

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| SGP ACQUISITION, LLC, | : | Case No. 04-13382 (PJW) |
| Debtor. | : | **Related Docket No.** 365, 364 |

**ORDER APPROVING SHORTENED NOTICE WITH RESPECT TO MOTION OF SGP ACQUISITION, LLC TO LIMIT NOTICE FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTOR AND OTHER KEY PARTIES IN INTEREST IN THIS CHAPTER 11 CASE**

Upon the Motion filed by the above-captioned debtor and debtor in possession (the "Debtor") for an order to shorten notice with respect to Debtor's *Motion for Entry of an Order Approving Settlement Agreement Between the Debtor and Other Key Parties in Interest in this Chapter 11 Case* ("Settlement Motion") so that it may be heard on July 14, 2005, the next omnibus hearing date; and the Court being satisfied that the representations contained in the Motion to Shorten Notice constitute cause to shorten notice as set forth therein; it is hereby

ORDERED, that

1. The Motion to Shorten Notice be and hereby is granted.

2. The hearing on the Settlement Motion shall be held on July 14, 2005 at 10:30 a.m.

Dated: July 5, 2005
Wilmington, Delaware

[signature]
UNITED STATES BANKRUPTCY JUDGE

13836

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>SGP ACQUISITION, LLC,<br><br>Debtor. | Chapter 11<br>Case No. 04-13382 (PJW)<br><br>**Hearing Date: 7/14/05 @ 10:30 a.m.**<br>**Objections Due: 7/11/05 @ 4:00 p.m.**<br><br>**Re: D.I. 364** |

**OBJECTION OF SLAZENGER GROUP**
**TO EXPEDITED APPROVAL OF PROPOSED SETTLEMENT**
**WITH INSIDERS UNDER FED. R. BANKR. P. 9019(a)**

Slazengers Limited ("SL"); Dunlop Slazenger International Limited ("Dunlop International"); Dunlop Sports Group Americas, Inc. ("Dunlop Sports"); and Dunlop Slazenger Manufacturing LLC ("DSM") (collectively, the "Slazenger Group"), creditors of SGP Acquisition LLC ("SGP"), object to the proposed settlement with its insiders, Kimolos II, L.P. ("Kimolos") and Zapis Capital ("Zapis") (collectively, the "Insiders"), described in SGP's motion, dated July 1, 2005, as follows:

Preliminary Statement

1. SGP moved on July 1, 2005, for expedited approval of a purported settlement agreement with the Insiders and others. Aside from failing to disclose the urgency – why the Court must reduce the normal 20-day notice period mandated by Bankruptcy Rule 2002(a)(3) – SGP has failed to disclose fully the material significance of this bad faith proposed settlement, opaquely described as a settlement with "other parties in interest . . . ."

2. The proposal advanced by SGP contemplates financing by SGP's Insiders, but admittedly fails to disclose the material terms and other key details of that financing. Even more important, the proposed settlement confirms the bad faith self-dealing of SGP's Insiders previously described to the Court by the Slazenger Group in its conversion motion, dated May

9917279.4

27, 2005 (the "Conversion Motion"). For the reasons set forth below, the Court should not be stampeded into approving a bad faith settlement without disclosure of all the material facts and without an understanding of the settlement's true significance to the SGP estate and to the integrity of the judicial process.

Background Facts

3. SGP commenced this case on November 30, 2004, citing a contract dispute with the Slazenger Group arising out of SGP's license agreement (the "License") with SL and Dunlop International. After shifting all responsibility for its total business failure (e.g., a consistent record of staggering losses, mismanagement and incompetence) to the Slazenger Group, SGP sued the Slazenger Group and others in this Court, alleging breach of contract and tort claims. The defendants not only denied the material allegations of the SGP complaint, but also counterclaimed in January 2005. Significantly SGP failed to prosecute its complaint in the more than seven (7) months the suit has been pending.

4. SGP and the Slazenger Group settled their bankruptcy related disputes in a settlement (the "Slazenger Settlement") approved by the Court on June 27, 2005. Familiarity with other procedural facts is therefore assumed.

Standing

5. Members of the Slazenger Group hold at least $12 million of claims against SGP. Under the terms of the SGP/Slazenger Group settlement, those claims are assertable in SGP's contract suit. Accordingly, the Slazenger Group has a sufficient stake here and standing to be heard. In re PWS Holding Corp., 228 F.3d 224, 248-49 (3d Cir. 2000) ("Title 11 U.S.C. ¶ 1109(b) . . .confers broad standing at the trial level."); In re Amatex Corp., 755 F.2d

1034, 1042 (3rd Cir. 1985) (future asbestos claimants are parties in interest); Unofficial Comm. Of Zero Coupon Holders v. The Grand Union Co. (In re The Grand Union Co.), 179 B.R. 56, 59 (D. Del. 1995) (In determining whether parties are parties in interest, parties "need not show they are a creditor or equity holder of the debtor, or that they have some direct claim to [debtor's] assets. Rather, they need only show a sufficient stake to require representation"; finding zero coupon noteholders of debtor's parent were parties in interest in debtor's case).

Proposed Insider Financing

6. The Court cannot approve the proposed insider financing for at least the following reasons:

- SGP failed to disclose all of the financing's material terms;
- SGP failed to describe, let alone mention, any attempt to obtain alternative financing;
- SGP failed to explain why Provident Bank ("Provident"), its current lender, will not finance SGP's litigation against the Slazenger Group, or why the contemplated insider financing is preferable.

In re Lion Capital, 49 B.R. 163, 183-84 (Bankr. S.D.N.Y. 1985) (insufficient facts for evaluation of compromise); In re Neshaminiy Office Bldg. Assoc., 62 B.R. 787, 804 (E.D. Pa. 1986) (same).

Confirmation of Insiders' Bad Faith and Breach of Fiduciary Duty

7. The Slazenger Group previously described in its Conversion Motion the breach of fiduciary duty and self-dealing by SGP's insiders (e.g., in the face of staggering operating losses, prolonging unnecessarily the SGP Chapter 11 case in order to reduce the Insiders' guaranty liability to Provident).

8. SGP's Insiders have wrongfully forced the estate's professionals (e.g., the Benesch firm) to agree to an artificial allocation of the $575,000 Slazenger Settlement proceeds: $290,000 attributable to resolution of the License dispute; and $285,000 to resolution of SGP's $1.7 million preference claims against 2 members of the Slazenger Group. This allocation was made, despite SGP's estimated valuation, in a document provided to Provident, of its preference claim as $669,000. See SGP "Restructuring Activity List and Status Report" (Mar. 17, 2005).

9. The SGP Insiders' recent self-serving allocation of the settlement proceeds is transparent. One of the Insiders – Kimolos – guaranteed about $3 million of SGP's secured obligation to Provident. To the extent that obligation is reduced with SGP's assets, SGP's Insiders benefit. A debtor's payment on a guaranteed obligation benefits the guarantor by reducing its exposure. See, e.g., In re Suffola, Inc, 2 F.3d 977 (9th Cir. 1993); In re C-L Cartage Co., 899 F.2d 1490, 1493 (6th Cir. 1990).

10. Prior to the Slazenger Settlement, the Slazenger Group consistently insisted that any cash payment to SGP was attributable solely to the SGP preference claims, and not to any other SGP claim. The Slazenger Group refused, therefore, to agree to any allocation of the Settlement Proceeds, and SGP acquiesced, preferring to wait until the Slazenger Group would presumably not be around to challenge the allocation.

11. Had SGP been able to allocate the Slazenger Settlement proceeds properly to the SGP preference claims, those proceeds would be unencumbered by Provident's lien and available for the satisfaction of allowed administrative expenses such as professional fees. But in that case, the SGP Insiders would realize no benefit: (a) there would be no payment on the Insiders' guaranteed obligation to Provident; and (b) the Insiders' reimbursement claim against

SGP would not be entitled to any priority in payment. Hence, this explains the artificial, unjustified allocation in the proposed settlement before the Court.

12. Neither SGP nor its Insiders disclosed the foregoing facts to the Court when seeking an expedited approval of the proposed settlement. And, of course, they offered no explanation of or rationale for their self-serving, cynical allocation of the settlement proceeds. Other than the SGP Insiders' self-dealing, there is, of course, no valid basis for the proposed allocation. Courts have regularly subjected an insider's dealings with a debtor to rigorous scrutiny. See, e.g., In re Hartford Sands, Inc., 372 F.3d 637 (4th Cir. 2004); In re Lifschultz Fast Freight, 132 F.3d 339, 354 (7th Cir. 1997); In re Herby's Foods, Inc., 2 F.3d 128 (5th Cir. 1993); In re Fabricators, Inc., 926 F.2d 1458, 1465 (5th Cir. 1991). Moreover, the insider has the burden of proving "the good faith of the transaction [and] to show its inherent fairness [to the debtor]." In re Mobile Steel. Co., 565 F.2d 692, 701 (5th Cir. 1977) (quoting Pepper v. Litton, 308 U.S. 295, 306 (1939)); In re Mid-American Waste Sys., 284 B.R. 53, 69 (Bankr. D. Del. 2002) (citing Citicorp Venture Capital, Ltd. v. Comm. of Creditors, 160 F.3d 982 (3d Cir. 1998)).

13. Before even considering the proposed settlement, therefore, SGP's Insiders should be required to appear and account for their allocation of the Slazenger Settlement proceeds, and be subject to complete pre-trial discovery. Had they merely financed the pending contract/tort litigation against the Slazenger Group, this objection would be unnecessary. When they rig the process for their own benefit and try to compromise the estate's professionals, as they have done here, then the Court must intervene. Petitioning Creditors of Melon Produce, Inc. v. Braunstein, 112 F.3d 1232, 1239 (1st Cir. 1997) ("The estate is protected against manipulation because settlements must be approved by the Bankruptcy Court after a consideration of the circumstances of the settlement."). The integrity of the judicial process is at stake.

WHEREFORE, the Court should deny SGP's motion and grant the Slazenger Group such other relief as is just.

Dated: July 11, 2005
Wilmington, Delaware

Zuckerman Spaeder LLP

By: ______________________
Thomas G. Macauley (ID No. 3411)
919 Market Street
Suite 990
Wilmington, DE 19801
(302) 427-0400

-and-

Schulte Roth & Zabel LLP
Michael L. Cook (MLC-7887)
David M. Hillman (DMH-8666)
Sophie S. Kim
919 Third Avenue
New York, New York 10022
(212) 756-2000

-and-

Haynsworth Sinkler Boyd, P.A.
Andrew J. White, Jr.
Jesse C. Belcher
75 Beattie Place
Two Liberty Square
Greenville, South Carolina 29601
(864) 240-3200

Counsel for Slazengers Limited, Dunlop Slazenger International Limited, Dunlop Slazenger Manufacturing LLC and Dunlop Sports Group Americas, Inc.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>SGP ACQUISITION, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 04-13382 (PJW) |

**NOTICE OF DEPOSITION OF RICHARD BONGORNO**

TO: Frederick B. Rosner, Esquire
Jaspan Schlesinger Hoffman
913 N. Market Street, 12th Floor
Wilmington, DE 19801
(*by facsimile*)

Mark A. Phillips, Esquire
Benesch, Friedlander Coplan
and Aronoff LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114
(*by facsimile*)

**PLEASE TAKE NOTICE** that in connection with the contested matter involving the "Motion for Entry of an Order Approving Settlement Agreement Between the Debtor and Other Key Parties In Interest in This Chapter 11 Case," dated July 1, 2005 (the "Motion"), and pursuant to Federal Rules of Bankruptcy Procedure 7026, 7030 and 9014, counsel for Slazengers Limited, Dunlop Slazenger Manufacturing LLC, Dunlop Slazenger International Limited, and Dunlop Sports Group Americas, Inc. (collectively, "Slazenger") will take the deposition upon oral examination of Richard Bongorno, Chief Executive Officer of SGP Acquisition, LLC ("SGP"). The deposition will commence at **10:00 a.m. on July 20, 2005** at the offices of Zuckerman Spaeder LLP, 919 Market Street, Suite 990, Wilmington, Delaware 19801 (or such other date, time and location as mutually agreed upon by the parties) and will continue from day to day until

9918028.1

completed. You are invited to attend and to cross-examine. The deposition will cover the subject matter of the Motion.

Dated: Wilmington, Delaware
July 12, 2005

Zuckerman Spaeder LLP

By: ____________________
Thomas G. Macauley
919 Market Street, Suite 990
Wilmington, DE 19801
(302) 427-0400

- and-

Schulte Roth & Zabel LLP
Michael L. Cook
David M. Hillman
Sophie S. Kim
919 Third Avenue
New York, New York 10011
(212) 756-2000

- and-

Haynsworth Sinkler Boyd, P.A.
Andrew J. White, Jr.
Jesse C. Belcher
75 Beattie Place
Two Liberty Square
Greenville, South Carolina 29601
(864) 240-3200

Counsel for Slazenger Limited,
Dunlop Slazenger International Limited,
Dunlop Slazenger Manufacturing LLC and
Dunlop Sports Group Americas Inc.

9918028.1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| In re<br><br>SGP ACQUISITION, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 04-13382 (PJW) |
|---|---|

**NOTICE OF DEPOSITION OF STEVEN SUES**

TO: Frederick B. Rosner, Esquire
Jaspan Schlesinger Hoffman
913 N. Market Street, 12th Floor
Wilmington, DE 19801
(*by facsimile*)

Mark A. Phillips, Esquire
Benesch, Friedlander Coplan and Aronoff LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114
(*by facsimile*)

**PLEASE TAKE NOTICE** that in connection with the contested matter involving the "Motion for Entry of an Order Approving Settlement Agreement Between the Debtor and Other Key Parties In Interest in This Chapter 11 Case," dated July 1, 2005 (the "Motion"), and pursuant to Federal Rules of Bankruptcy Procedure 7026, 7030 and 9014, counsel for Slazengers Limited, Dunlop Slazenger Manufacturing LLC, Dunlop Slazenger International Limited, and Dunlop Sports Group Americas, Inc. (collectively, "Slazenger") will take the deposition upon oral examination of Steven Sues, Chief Restructuring Manager of SGP Acquisition, LLC ("SGP"). The deposition will commence at **2:00 p.m. on July 20, 2005** at the offices of Zuckerman Spaeder LLP, 919 Market Street, Suite 990, Wilmington, Delaware 19801 (or such other date, time and location as mutually agreed upon by the parties) and will continue from day to day until

completed. You are invited to attend and to cross-examine. The deposition will cover the subject matter of the Motion.

Dated: Wilmington, Delaware
July 12, 2005

Zuckerman Spaeder LLP

By: ______________________
Thomas G. Macauley
919 Market Street, Suite 990
Wilmington, DE 19801
(302) 427-0400

- and-

Schulte Roth & Zabel LLP
Michael L. Cook
David M. Hillman
Sophie S. Kim
919 Third Avenue
New York, New York 10011
(212) 756-2000

- and-

Haynsworth Sinkler Boyd, P.A.
Andrew J. White, Jr.
Jesse C. Belcher
75 Beattie Place
Two Liberty Square
Greenville, South Carolina 29601
(864) 240-3200

Counsel for Slazenger Limited,
Dunlop Slazenger International Limited,
Dunlop Slazenger Manufacturing LLC and
Dunlop Sports Group Americas Inc.

9918034.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Case No. 04-13382 (PJW) |
| | : | |
| SGP ACQUISITION, LLC, | : | Chapter 11 |
| | : | |
| Debtors. | : | |

**RESPONSE OF DEBTOR IN POSSESSION TO THE OBJECTION OF SLAZENGER GROUP TO MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTOR AND OTHER KEY PARTIES IN INTEREST IN THE CHAPTER 11 CASE**

SGP Acquisition, LLC ("Debtor"), debtor and debtor in possession in the above-captioned case, hereby responds to the objection (the "Objection") of the Slazenger Group[1] to the *Motion for Entry of an Order Approving Settlement Agreement Between the Debtor and Other Key Parties in Interest in the Chapter 11 Case* (the "Motion") and, for the reasons stated below, requests that the Objection be overruled.

1. The Slazenger Group, consisting of entities that just three weeks ago renounced all claims that they could have asserted in this Chapter 11 Case, has filed the Objection in an effort to scuttle a critical administrative agreement reached among all of the major constituencies in this Chapter 11 Case. That agreement resolves the allocation of the Dunlop Settlement Proceeds, secures the future administration of the Debtor's Chapter 11 Case and allows for the continued prosecution of an adversary proceeding against members of the Slazenger Group. All parties who actually have a stake in the outcome of those matters entered into the agreement and support the Motion. The Slazenger Group alone objects, despite having no interest in the matters

[1] Capitalized terms used herein have the same meanings as defined in the Motion and the Objection.

resolved by the agreement and, thus, lacking any standing to appear in connection with this matter.

2. The entities comprising the Slazenger Group relinquished all claims in this bankruptcy case pursuant to a settlement approved by this Court on June 27, 2005. As a result, they cannot be heard to object to aspects of an agreement in which they have absolutely no stake. Neither the agreed terms of the supplemental financing arrangement nor the allocation of the Dunlop Settlement Proceeds could possibly effect any defense or counterclaim members of the Slazenger Group have asserted or could assert as defendants in the adversary proceeding, the only connection with this Chapter 11 Case the Slazenger Group is able to claim. They thus lack "a sufficient stake in the proceedings so as to require representation" and, accordingly, have no right to be heard regarding these matters. *Unofficial Comm. of Zero Coupon Holders v. The Grand Union Co. (In re The Grand Union Co.)*, 179 B.R. 56, 59 (D. Del. 1995) (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)).

3. The only parties that truly have an interest in the outcome of those matters have all entered into the agreement. The absence of any opposition to the Motion from those parties exposes the Slazenger Group as a mere intermeddler that has no cognizable interest in the relief requested by the Debtor but seeks to freeload on the supposed impairment of others' rights and interests.

4. The illegitimate nature of such bad faith objections has been recognized in one of the very decisions which the Slazenger Group cites as supporting its claim to standing. In *In re PWS Holding Corporation*, 228 F.3d. 224 (3rd Cir. 2000), the Third Circuit Court of Appeals articulated the very reason that the opposition of a third-party, such as the Slazenger Group,

should not be allowed to impede consensual agreements negotiated between true parties in interest, noting that:

> Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert rights of another party even though that other party is present in the proceedings and is capable of representing himself. Third-party standing is of a special concern in the bankruptcy context where, as here, one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties who apparently favor the plan. In this context, the courts have been understandably skeptical of the litigant's motives and have often denied standing as to any claim that asserts only third-party rights.

228 F.3d at 248 (quoting *Kane v. Johns-Manville Corp*, 843 F.2d 636, 644 (2d. Cir. 1988)). The Slazenger Group is that proverbial "third party," attempting to interfere with an administrative settlement that those parties whose "rights" are allegedly being impaired have found to be in their best interests.

WHEREFORE, the Debtor requests that the Court (i) disregard and overrule the Objection as the Slazenger Group lacks standing to oppose the relief requested in the Motion and (ii) grant the Motion at the scheduled hearing thereon.

July 13, 2005
Wilmington, Delaware

Respectfully submitted,

/s/ Frederick B. Rosner
Frederick B. Rosner (No. 3995)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 351-8000
Facsimile: (302) 351-8010

- and -

H. Jeffrey Schwartz (OBR #0014307)
Mark A. Phillips (OBR # 0047347)
Michael D. Zaverton (OBR #0038597)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
Telephone: (216) 363-4500
Facsimile: (216) 363-4588

Counsel for SGP Acquisition, LLC, Debtor and
Debtor in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SGP ACQUISITION, LLC, | : | Case No. 04-13382 (PJW) |
| | : | |
| Debtor. | : | |

**ORDER UNDER RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTOR AND OTHER KEY PARTIES IN INTEREST IN THIS CHAPTER 11 CASE**

Came on for hearing (the "Hearing") on this date, the motion (the "Motion")[1] of SGP Acquisition, LLC ("Debtor"), debtor and debtor in possession in the above-captioned case, for entry of an order approving the settlement (the "Settlement") between the Debtor and other key parties in interest in this chapter 11 case embodied in that certain Supplemental Funding and Settlement Agreement (the "Settlement Agreement") by and among the Debtor and the Major Parties in Interest, the Court, having reviewed the Motion and having considered the record in this case and statements of counsel for the Debtor and other parties in interest at the Hearing, hereby FINDS as follows:

A. The Court has jurisdiction over this case and this contested matter under 28 U.S.C. § 1334. This as a core proceeding under 28 U.S.C. § 157(b)(2).

B. On November 30, 2004 (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") in this Court, thereby commencing this chapter 11 case.

C. The Debtor has continued in the operation and management of its business and property pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

---

1 Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

D. On December 15, 2004, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). The Committee has retained counsel and has been actively involved in the Debtor's chapter 11 case.

E. Notice of the Motion and an opportunity for a hearing thereon was given to the United States Trustee, the Committee, counsel for the DIP Lender and all parties requesting notice under Bankruptcy Rule 2002, which notice was adequate and appropriate under the circumstances.

F. Any and all objections filed prior to or interposed at the Hearing to the relief requested in the Motion have been resolved or hereby overruled.

G. The proposed settlement among the Debtor and the Major Parties in Interest (i) resolves a dispute over the allocation of the settlement proceeds of the Dunlop Settlement (as defined in the Settlement Agreement), determining which portion of the Dunlop Settlement proceeds will be paid to the Debtor's estate on account of the preference and fraudulent conveyance actions dismissed in connection with the settlement and what portion of the Dunlop Settlement proceeds will be paid to The Provident Bank on account of its collateral, (ii) provides for additional debtor in possession financing in the initial amount of up to $300,000 plus interest and fees ("Supplemental Financing") to be provided to the Debtor by Kimolos or its designee ("Lender") under certain terms and provisions, and (iii) establishes a framework for the future administration of the Debtor's chapter 11 case.

H. The Settlement among the Debtor and the Major Parties in Interest is appropriate and within the range of reasonableness as the Debtor was otherwise unable to obtain financing to pursue the Dunlop Litigation and the financing described herein is hereby approved.

I. The relief requested in the Motion is in the best interests of SGP, its estate and its creditors.

J. After due deliberation thereon and good cause appearing therefore,

IT IS HEREBY ORDERED

1. The Motion is Granted and the Settlement Agreement attached hereto as Exhibit 1 and the Settlement embodied therein is hereby approved in its entirety.

2. The Debtor is hereby authorized and directed to take any and all actions reasonably necessary or appropriate to consummate and implement the Settlement.

3. The Supplemental Financing of a credit facility bearing interest at a fluctuating rate per annum which at all times is equal to "National Average Prime Rate" published in the Wall Street Journal plus three percent (3%), and fees and expenses incurred by Lender associated with the Supplemental Financing up to the amounts set forth in the Budget (as defined below) is approved and subject to the following terms and conditions:

(a) Lender will, upon receipt of the Debtor's written, telegraphic, or telephonic request for a loan (a "Request for a Loan"), make loans to or for the account of Debtor ("Loan" or "Loans") up to but not exceeding an aggregate unpaid principal amount outstanding at any one time on such Loans in an amount not to exceed $300,000 or such larger amount subsequently agreed in writing by the Lender, the Debtor and the Committee, provided that, if the Committee does not so agree , then upon order of the Court, on notice to the Committee (the "Loan Limit"). Debtor may borrow and repay the Loans up to the Loan Limit, but may not reborrow any portion of the Loans that has been repaid. Lender shall debit the Debtor's account maintained by Lender on its books, which will evidence all Loans, the accrued interest thereon, other amounts due Lender with respect to all Loans and all payments thereof by

the Debtor (the "Loan Account") the amount of each Loan made under the Supplemental Financing and Settlement Agreement and all interest, other compensation, or other fees payable on all Loans and shall credit to the Loan Account each payment of (i) principal and interest on account of each Loan and (ii) other amounts payable under the Supplemental Financing and Settlement Agreement by the appropriate entries. Debtor shall repay to Lender on the Termination Date (as defined below) the net balance in Debtor's Loan Account attributable to the Loans. The amount due will be that as set forth by Lender with regard to the Debtor's Loan Account.

(b) The Supplemental Financing shall terminate, unless extended in writing by the Debtor, Lender and the Committee, provided that, if the Committee does not so agree, then upon order of the Court, on notice to the Committee, upon the earliest of (i) May 31, 2006, (ii) the final resolution of the Dunlop Litigation, including the payment of all of the Dunlop Litigation Proceeds, and (iii) upon the occurrence of an Event of Default (as defined in section (l) below) (the "Termination Date").

(c) A Request for a Loan, must be given by Borrower to Lender prior to 12:00 noon Cleveland, Ohio time on the date three days, other than a day of the year on which commercial lenders are not required or authorized to be closed for business in Cleveland, Ohio (a "Business Day") prior to the disbursement of the requested Loan hereunder and such Request for a Loan must specify: (i) the aggregate principal amount of the Loan to be made pursuant to such request; (ii) the date of the Loan (which must be a Business Day), (iii) instructions with respect to how and to where Lender should fund such Loan, and (iv) the purpose and use of the Loan with respect to the Budget. Each written Request for a Loan must be signed by an authorized employee of the Debtor. Each telephonic Request for a Loan must be made by such an

authorized employee, and confirmed in writing thereafter if requested by Lender. Telephonic notice will be presumed to be in good faith and by an authorized employee of Debtor and be conclusive. No Request for a Loan will become effective until actually received by Lender. The aggregate balance of Loans outstanding at any time in excess of the Loan Limit shall be immediately due and payable without the necessity of demand.

(d) The Debtor shall use the proceeds of the Supplemental Financing as follows (i) to fund costs and expenses associated with Debtor's pursuing the Dunlop Litigation in accordance with the Budget attached hereto as Exhibit 2 and incorporated herein by reference and any subsequent Budget agreed to in writing among the Debtor, the Lender and the Committee, provided that, if the Committee does not so agree , as approved by order of the Court, on notice to the Committee (collectively, the "Budget"), and (ii) to fund costs of administration of the Debtor's estate with respect to the Wind-Down Plan after the termination of the Final Financing Order (as defined in the Settlement Agreement) in accordance with the Budget, provided that Debtor may use proceeds of the Loans only up to the cumulative amounts set forth in the Budget and as permitted by this Order or as otherwise agreed to in writing among the Debtor, the Lender and the Committee, provided that, if the Committee does not so agree , as approved by order of the Court, on notice to the Committee. In no event shall the Lender be obligated to make Loans except for the purposes and in the cumulative amounts set forth in the Budget. Notwithstanding anything in this Order or the Settlement Agreement to the contrary, the cumulative amounts set forth in the Budget for the payment of Debtor and Committee professionals shall be paid by the Lender when due, even after expiration of the Budget, termination of the Supplemental Financing and/or the occurrence of an Event of Default.

(e) The Debtor shall make payments to be made under the Settlement Agreement with respect to principal of, interest on, and other amounts relating thereto, not later than 3:00 p.m. (Cleveland, Ohio time) on the day when due hereunder in accordance with instructions provided by Lender at such time.

(f) Debtor's Loan Account will be charged with all Loans made by the Lender to the Debtor and all other obligations of the Debtor under the Settlement Agreement and this Order. The Debtor hereby authorizes the Lender to charge the Loan Account with such obligations. The Loan Account of the Debtor will be credited in accordance with this section with all payments received by Lender directly from the Debtor or for the account of the Debtor. Absent manifest error, each statement sent by Lender to the Debtor with respect to the balance of the Loan Account shall be final, conclusive and binding on the Debtor.

(g) In accordance with the Settlement Agreement, the Lender's expenses under the Supplemental Financing (up to the amounts set forth in the Budget), the Debtor's interest obligations under the Supplemental Financing and the Debtor's principal obligations under the Supplemental Financing shall be repaid from the proceeds of the Dunlop Litigation (as defined in the Settlement Agreement) (the "Dunlop Litigation Proceeds"), if any. After payment in full of the Lender's expenses (up to the amounts set forth in the Budget) and the Debtor's principal and interest obligations under the Supplemental Financing, the Lender shall be entitled to a fee payable from the remaining Dunlop Litigation Proceeds, if any, as follows:

(i) The first $65,000 of the remaining Dunlop Litigation Proceeds shall be paid to the Debtor's estate;

(ii) After the payment of the $65,000 to the Debtor's estate in accordance with subsection (i) above, (A)the greater of (y) 75% of the remaining Dunlop

Litigation Proceeds or (z) the Kimolos Pro Rata Share of the remaining Dunlop Litigation Proceeds shall be payable to Lender and applied to repay the obligations incurred by Kimolos under the Kimolos Guarantee (as defined in the Settlement Agreement) (such obligations incurred by Kimolos being collectively referred to herein as the "Kimolos Guarantee Obligations") ("Kimolos Pro Rata Share" means, as of the date of the Debtor's receipt of the Dunlop Litigation Proceeds, the ratio of (I) the outstanding amount of the Kimolos Guarantee Obligations divided by (II) the sum of (1) the amount of the Kimolos Guarantee Obligations plus (2) the aggregate amount of all unpaid administrative claims of the kind specified in § 503(b) of the Bankruptcy Code, if any, and (B) the lesser of (y) 25% of such remaining Dunlop Litigation Proceeds or (z) the inverse of the Kimolos Pro Rata Share of such remaining Dunlop Litigation Proceeds shall be payable to the Debtor's estate.

(iii) After the repayment of the Kimolos Guarantee Obligations and other amounts payable in accordance with (ii) above, the remaining Dunlop Litigation Proceeds shall be applied to (A) to Lender in an amount of 50% of the remaining amount of the Dunlop Litigation Proceeds, and (B) to the Debtor's estate in the amount of 50% of such remaining amount of the Dunlop Litigation Proceeds.

(h) Whenever any payment hereunder shall be stated to be due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day. Any such extension or reduction of time shall in such case be included in the computation of payment of interest.

(i) The obligations owing to Lender with respect to paragraph (g)(i), (ii) and (iii) (the "Superpriority Claims") shall have the status of superpriority claims with priority over

all other claims, costs and expenses of the kind specified in, or ordered pursuant to §§ 105, 502(a), 503(b), 506(c), 507(a), 726 and 1114 of the Bankruptcy Code, and Lender shall be, and hereby is granted a lien and security interest in that portion of the Dunlop Litigation Proceeds payable to Lender pursuant to paragraph (g) and all other rights and claims of the Debtor with respect to the Dunlop Litigation (other than the rights of the Debtor's estate with respect to the Dunlop Litigation Proceeds payable to the Debtor's estate pursuant to subparagraph (g)(i), (ii) and (iii) and any other rights granted to the Debtor or the Committee pursuant to the Settlement Agreement) pursuant to § 364(d) of the Bankruptcy Code (collectively, the "Dunlop Collateral"). Notwithstanding anything in this Order to the contrary, the Lender's Superpriority Claims shall be subject and subordinate to all other claims against the Debtor's estate with respect to professional fee carveouts under the Final Financing Order, the amounts payable to the Debtor's and Committee's professionals pursuant to the Budget, avoidance actions under chapter 5 of the Bankruptcy Code and the proceeds thereof, the Dunlop Settlement proceeds, and the Dunlop Litigation Proceeds payable to the Debtor's estate pursuant to subparagraphs (g)(i), (ii) and (iii).

(j) Debtor shall not shall incur, create, assume, suffer to exist or permit any other superpriority administrative claim to the Dunlop Collateral which is pari passu with or senior to the claims of Lender.

(k) The liens and security interests granted to Lender herein shall be valid and perfected without the need for the execution or filing of any further document or instrument otherwise required to be executed or filed under non-bankruptcy law. By virtue of the entry of this Order the Debtor is hereby deemed to have granted to Lender a first priory security interest in the Dunlop Collateral. Notwithstanding that no documents need to be executed or filed to create or perfect the liens and security interests granted hereunder, the Debtor shall execute and

deliver to Lender, or otherwise authorize Lender to file, such further documents as Lender may reasonably request to evidence and give notice of the liens and security interests granted hereunder, including UCC-1 Financing Statements, specifically with regard to the Dunlop Collateral. If Lender, in its sole discretion, chooses to file or record such financing statements, security agreement or other instruments, or otherwise confirm perfection of the security interests and liens granted herein, all such financing statements or similar instruments shall be deemed to have been filed or recorded as of the Petition Date, and such filing or recording shall not constitute a violation of the automatic stay.

(I) Lender is not required to fund or to continue funding under the terms of the Supplemental Financing, the Settlement Agreement or this Order if any of the following events occur:

(i) the Debtor fails to pay principal or interest on the Supplemental Financing when due pursuant to this Order;

(ii) the Debtor's chapter 11 case is converted to a chapter 7 case;

(iii) the Debtor's chapter 11 case is dismissed;

(iv) a trustee is appointed pursuant to §§ 1104(a) or (b) of the Bankruptcy Code, an examiner with the expanded powers set forth in §1106(a)(1) is appointed pursuant to §1104(c), or any other similar person with similar powers is appointed by the Court;

(v) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Order without the express prior consent of Lender, which consent shall not be implied from any action, inaction or acquiescence of Lender;

(vi) the Debtor fails to perform or observe any covenant or agreement contained in the Settlement Agreement or this Order, which failure continues for a period of five (5) Business Days following written notice from Lender; or

(vii) Debtor incurs, creates, assumes, suffers to exist or permits any other superpriority administrative claim to the Dunlop Collateral which is pari passu with or senior to the claims of Lender.

The events described in (i) through (vii) of this paragraph, are each an "Event of Default" or collectively, "Events of Default." Should an Event of Default occur and such Event of Default not be specifically waived in writing by Lender, which waiver shall not be implied from any action, inaction or acquiescence by Lender, upon five (5) business day's written notice of such Event of Default delivered by Lender by overnight delivery service or facsimile transmission to the Office of the United States Trustee, the Committee of Unsecured Creditors appointed by the Office of the United States Trustee, and the Debtor, (A) all of the obligations of the Debtor to Lender arising under the Supplemental Financing shall become immediately due and payable, and (B) an Order shall be entered vacating the automatic stay and any other restriction against Lender's enforcement of its liens and security interests or any other rights pursuant to this Order.

(m) In the event that one or more of the Events of Default set forth above is continuing and is not waived by Lender, then, in any such event, and at any time thereafter, Lender may, at its option, terminate its commitment to make any Loan and/or declare the unpaid principal of and all accrued interest on the Supplemental Financing forthwith due and payable, whereupon the same will forthwith become due and payable by the Debtor to Lender without presentment, demand, protest, or other notice of any kind, all of which the Debtor hereby

expressly waives, anything contained herein or in the Supplemental Financing to the contrary notwithstanding.

(n) Upon the Termination Date, Lender shall be entitled to immediate payment of all obligations owing with respect to the Supplemental Financing without further application to or order of the Bankruptcy Court.

(o) Lender shall have all of the rights and remedies of a secured party under the UCC or under other applicable law. Lender shall have all other legal and equitable rights to which Lender may be entitled, all of which rights and remedies shall be cumulative, and none of which shall be exclusive, to the extent permitted by applicable law, in addition to any other rights or remedies contained in the Supplemental Financing, Settlement Agreement or this Order.

(p) The remedies set forth in paragraph (o) are in addition to, not in limitation of, any other right, power, privilege, or remedy, either in law, in equity, or otherwise, to which Lender may be entitled. No failure or delay on the part of Lender in exercising any right, power, or remedy will operate as a waiver thereof nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right hereunder.

(q) Debtor shall pay (i) all reasonable out-of-pocket expenses of Lender incurred in connection with the Supplemental Financing, Settlement Agreement or this Order, including fees and disbursements of counsel for Lender incurred in connection with any waiver or consent hereunder or any amendment hereof or any Event of Default hereunder, limited to the cumulative amount set forth in the Budget, and (ii) if an Event of Default occurs, all out-of-pocket expenses incurred by Lender, including reasonable fees and disbursements of counsel, in connection with such Event of Default and collection and other enforcement proceedings resulting there from, limited to the cumulative amount set forth in the Budget.

(r) None of the provisions or terms of the Supplemental Financing, the Settlement Agreement or this Order shall constitute a waiver by Kimolos of any of its rights against Debtor with respect to the Kimolos Guarantee, including, without limitation, Kimolos's subrogation rights with respect thereto.

4. Debtor is hereby directed to serve this Order on all parties within two Business Days of the entry hereof, on all parties who received notice of the Motion.

5. This Court shall retain jurisdiction with respect to the implementation of the Settlement and this Order.

Dated: Wilmington, Delaware
____________, 2005

UNITED STATES BANKRUPTCY JUDGE

The following parties agree to the terms and provisions of the foregoing Order and agree to be bound thereby.

Dated: ____________, 2005

______________________________
[Name]
SGP ACQUISITION, LLC, as "Debtor"

Dated: ____________, 2005

______________________________
[Name]
KIMOLOS II L.P. "Lender"