IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| SGP ACQUISITION, LLC, | : | Case No. 05-CV-563 (GMS) |
| | : | |
| Debtor. | : | On appeal from the United States |
| | : | Bankruptcy Court for the District |
| _____ | : | of Delaware, Case No. 04-13382 |
| | : | (PJW) |
| SLAZENGERS LTD, *et al.*, | : | |
| | : | |
| Appellants, | : | |
| | : | |
| v. | : | |
| | : | |
| SGP ACQUISITION, LLC, *et al.*, | : | |
| | : | |
| Appellees. | : | |
| | *** | |

## DEBTORS-APPELLEES' BRIEF

Dated: Wilmington, Delaware
August 23, 2005

Frederick B. Rosner (No. 3995)
JASPAN SCHLESINGER HOFFMAN
913 Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 351-8000
Facsimile: (302) 351-8010
frosner@jshllp-de.com

H. Jeffrey Schwartz   (OBR #0014307)
Mark A. Phillips     (OBR #0047347)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
2300 BP Tower, 200 Public Square
Cleveland, Ohio 44114-2738
Telephone: (216) 363-4500
Facsimile: (216) 363-4588

Counsel for Debtor-Appellee

14618

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ........................................................................................................... 1

II. SUMMARY OF ARGUMENT ................................................................................. 3

III. STATEMENT OF FACTS ........................................................................................ 4

IV. ARGUMENT .......................................................................................................... 12

    A. STANDARD OF REVIEW ......................................................................... 12

    B. THE BANKRUPTCY COURT PROPERLY RULED THAT SLAZENGERS LACKED STANDING TO OBJECT TO THE KEY PARTIES SETTLEMENT ................................................................. 13

    C. SLAZENGERS LACK STANDING TO MAINTAIN THIS APPEAL ....................................................................................................... 18

    D. THE BANKRUPTCY COURT PROPERLY RULED THAT THE KEY PARTIES SETTLEMENT WAS APPROPRIATE, WITHIN THE RANGE OF REASONABLENESS, AND IN THE BEST INTERESTS OF THE ESTATE ..................................................................... 20

    E. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IS LIMITING NOTICE OF THE KEY PARTIES SETTLEMENT .............................................................................................. 25

V. CONCLUSION ....................................................................................................... 26

CERTIFICATE OF SERVICE ............................................................................................ 28

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                              <u>Page</u>

*Ars Brook, LLC v. Jalbert* (*In re Servisense.com, Inc.*), 382 F.3d 68 (1st Cir. 2004) ..................................................................................................................................23

*Brown v. General Motors Corp.*, 152 B.R. 935 (W.D.Wis. 1993) ................................................16

*Cinicola v. Scharffenberger*, 248 F.3d 110 (3d Cir. 2001) ............................................................12

*Committee of Unsecured Creditors v. Interstate Cigar Distribution, Inc.* (*In re Interstate Cigar Co.*), 240 B.R. 816 (Bankr.E.D.N.Y. 1999) ...........................................23

*Continental Airlines, Inc. v. Air Line Pilots Ass'n, Int'l* (*In re Continental Airlines, Inc.*), 907 F.2d 1500 (5th Cir. 1990) ..........................................................................................12

*Depoister v. Mary M. Holloway Found.*, 36 F.3d 582 (7th Cir. 1994) ..........................................23

*Federal Communications Comm'n v. NextWave Personal Communications, Inc.*, 537 U.S. 293, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003) .......................................................14

*In re All-Type Printing, Inc.*, 274 B.R. 316 (Bankr.D.Conn. 2002), *aff'd*, 80 Fed.Appx. 700 (2d Cir. 2003) ..........................................................................................14, 15

*In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985) .............................................................16, 18, 21

*In re ANC Rental Corp.*, 57 Fed. Appx. 912 (3d Cir. 2003) ..........................................................19

*In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004) ..........................................................19

*In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723 (Bankr.S.D.N.Y. 1992) .....................22

*In re Dykes*, 10 F.3d 184 (3d Cir. 1993) ........................................................................................19

*In re Grant Broadcasting of Philadelphia*, 71 B.R. 390 (Bankr.E.D.Pa. 1987) ............................25

*In re Madigan*, 270 B.R. 749 (9th Cir. B.A.P. 2001) .....................................................................16

*In re Marvel Entertainment Group, Inc.*, 222 B.R. 243 (D.Del. 1998) .........................................22

*In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455 (Bankr.E.D.Pa. 1998) ..........................25

*In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999) ....................................................19

*In re Purofied Down Products Corp.*, 150 B.R. 519 (S.D.N.Y. 1993) ....................................12, 23

*In re PWS Holding Corp.*, 228 F.3d. 224 (3d Cir. 2000) .......................................................... 18, 19

*In re Richardson*, 307 B.R. 485 (Bankr.D.Md. 2004) .................................................................. 21

*In re Schleifer*, 170 B.R. 283 (Bankr.D.V.I. 1994) ...................................................................... 16

*In re Sigman*, 270 B.R. 858 (Bankr.S.D. Ohio 2001) .................................................................. 16

*In re Tempo Technology Corp.*, 202 B.R. 363 (D.Del. 1996) ...................................................... 12

*In re Torwico Electronics, Inc.*, 8 F.3d 146 (3d Cir. 1993), *cert. denied,* 511 U.S. 1046, 114 S.Ct. 1576, 128 L.Ed.2d 219 (1994) ........................................................... 14

*In re Troutman Enters., Inc.* 286 F.3d 359 (6th Cir. 2002) ......................................................... 18

*In re Udell*, 18 F.3d 403 (7th Cir. 1994) ...................................................................................... 14

*IPSCO Steel (Alabama), Inc. v. Blaine Constr. Corp.*, 371 F.3d 150 (3d Cir. 2004) ................... 19

*Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ................... 14

*Johnson v. Jackson Family Television, Inc. (In re Media Cent., Inc.)*, 190 B.R. 316 (E.D.Tenn. 1994) ....................................................................................................... 23

*Kane v. Johns-Manville Corp*, 843 F.2d 636 (2d. Cir. 1988) ...................................................... 18

*Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490 (3d Cir. 1998) .................. 19

*Kimmelman v. Port Auth. of N.Y. and N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311 (3d Cir. 2003) ....................................................................................................... 13

*Martin v. Ayers (In re Martin)*, 91 F.3d 389 (3d Cir. 1996) ........................................................ 22

*Mercy Hosp. of Watertown v. New York State Dept. of Social Services*, 171 B.R. 490 (N.D.N.Y. 1994) ............................................................................................................ 19

*Mullen v. United States,* 696 F.2d 470 (6th Cir. 1983) .......................................................... 14, 16

*Neshaminy Office Bldg. Assocs.,* 62 B.R. 798 (E.D.Pa. 1986) .................................................... 22

*New York City Employees Retirement Sys. v. Villarie (In Re Villarie),* 648 F.2d 810 (2d Cir. 1981) ............................................................................................................... 15

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) ........................................... 22

*State Bank of S. Utah v. Gledhill* (*In re Gledhill*), 76 F.3d 1070 (10th Cir. 1996) ....................... 13

*Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737 (3d Cir. 1995) .................................... 18, 19, 20

*Unofficial Comm. of Zero Coupon Holders v. Grand Union Co.*, 179 B.R. 56
    (D.Del. 1995) ............................................................................................................ 17, 18, 21

Statutes

11 U.S.C. § 101(5) ............................................................................................................... 14, 16

11 U.S.C. § 101(10) ............................................................................................................. 13, 14, 16

11 U.S.C. § 502(b) ..................................................................................................................... 15

11 U.S.C. § 506(a) ..................................................................................................................... 21

11 U.S.C. § 544 ........................................................................................................................... 6

11 U.S.C. § 547(b) ....................................................................................................................... 6

11 U.S.C. § 548 ........................................................................................................................... 6

11 U.S.C. § 553 ......................................................................................................................... 21

11 U.S.C. § 1107 .......................................................................................................................... 1

11 U.S.C. § 1108 .......................................................................................................................... 1

11 U.S.C. § 1109(b) .............................................................................................................. 13, 16

Other

Fed.R.Bankr.P. 2002 ..................................................................................................... 4, 14, 18, 25

Fed.R.Bankr.P. 8002 ................................................................................................................ 3, 19

Fed.R.Bankr.P. 9006(c) ............................................................................................................... 25

Fed.R.Bankr.P. 9019(a) ..................................................................................................... 1, 3, 8, 22

I.  **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

On November 30, 2004 (the "Petition Date"), Debtor-Appellee SGP Acquisition LLC ("SGP" or "Debtor") filed with this Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, 11 U.S.C. §§ 1107 & 1108, SGP continued to operate its business and continues to manage its property and assets as a debtor in possession. On December 15, 2004, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors ("the Committee"), which has been actively involved in the Debtor's chapter 11 case.

As will be described in greater detail below, the Appellants, Slazengers Limited, Dunlop Slazenger International Limited, Dunlop Sports Group Americas, Inc., and Dunlop Slazenger Manufacturing LLC (collectively, the "Slazengers Entities" or "Appellants"), asserted claims against the Debtor's estate for, *inter alia*, pre- and post-petition royalties. In conjunction with its chapter 11 proceedings, SGP commenced three adversary proceedings against the Slazengers Entities and certain affiliates. On June 27, 2005, the Bankruptcy Court issued its *Order Under R. Bankr. P. 9019 Approving Settlement Agreement and Rejection of Executory Contracts,* in which it approved a settlement between SGP and the Slazengers Entities (the "Slazengers Settlement"). D. 357; A157.[1]

In the Slazengers Settlement, the Slazengers Entities relinquished their claims against SGP's estate and agreed to pay SGP the sum of $575,000. In return, SGP agreed, *inter alia,* to reject its contracts with the Slazengers Entities and to dismiss two of the three aforementioned adversary proceedings. It was further agreed that the third adversary proceeding would continue

---

[1] Throughout this Brief, "D." refers to the docket numbers of the Bankruptcy Court record, and "A" refers to the pages of the appendix to Appellants' Opening Brief.

14618

and that the Slazengers Entities' claims would be preserved solely for the purpose of offsetting any judgment in favor of SGP in that litigation. See D. 345 at 4-5, A125-26, and Exhibit 1 thereto, A132. As the Slazengers Entities have acknowledged to the Bankruptcy Court, under the Slazengers Settlement, the Slazengers Entities "cannot recover a nickel" from the Debtor's estate even if they prevail on their claims in the adversary proceeding. D. 401 at 16; A244.

Following the payment of $575,000 to the Debtor's estate pursuant to the terms of the Slazengers Settlement, SGP and *all of the remaining key parties in interest* in SGP's bankruptcy case reached a settlement with regard to the allocation of those funds ("Key Parties Settlement"). See D. 364, Ex. A at 2; A174. The Key Parties Settlement also provided for supplemental financing to fund the administration of the bankruptcy estate and for the allocation of any proceeds from the remaining litigation against the Slazengers Entities, the most significant remaining asset of SGP's estate. D. 364 Ex. A at 3; A175. On July 1, 2005, SGP moved the Bankruptcy Court for an order approving the Key Parties Settlement. D. 364; A169. Because all of the remaining key parties in interest were involved in the negotiation of, and were parties to, the Key Parties Settlement, SGP also moved to limit notice of the proposed settlement so the motion for its approval could be heard at the next omnibus hearing set for July 14, 2005. D. 365; A183. On July 5, the Bankruptcy Court granted that motion. D. 369; A187.

Notwithstanding the fact that the Slazengers Entities, by virtue of the Slazengers Settlement, have no further interest in SGP's bankruptcy case, and certainly had no interest in the distribution or allocation of the funds it paid to the estate pursuant to that settlement, the Slazengers Entities objected to both the motion to approve the Key Parties Settlement and the motion to limit notice. D. 373; A188. The matter was heard by the Bankruptcy Court on July 14, 2005. D. 401; A229. At the hearing, the Bankruptcy Court overruled the Slazengers' Entities

objection concluding that they lacked standing to object and that, in any event, the objection was without merit. D. 401 at 21-23; A249-51. On July 15, 2005, the Bankruptcy Court issued its *Order Under Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement Between the Debtor and Other Key Parties in Interest In This Chapter 11 Case.* D. 386; A256. The Slazengers Entities thereafter timely noticed their appeal to this Court. D. 394.

**II.   SUMMARY OF ARGUMENT**

1.   The Bankruptcy Court properly determined that the Slazengers Entities lack standing to object to the Key Parties Settlement. By virtue of the Slazengers Settlement, they are no longer "creditors" of the estate. To be "creditors," they must have a "claim" against the estate, and to have a "claim" they must have a right to payment. Under the terms of the Slazengers Settlement, the Slazengers Entities retained only the right to present counterclaims and defenses in the remaining adversary proceeding, and any recovery on those claims and defenses was limited to "offset" any recovery to SGP in that litigation. Thus, the Slazengers Entities have no "right to payment."

2.   Even if the Slazengers Entities had standing to interpose an objection to the proposed Key Parties Settlement, they lack standing to appeal from the order approving that agreement. To have standing to appeal an order of the bankruptcy court pursuant to Fed.R.Bankr.P. 8002, a party must demonstrate that it is a "person aggrieved." A party who has "no pecuniary interest in the particular allocation of fixed payments" is simply not a "person aggrieved" by a bankruptcy court's order. Because the Slazengers Entities have no pecuniary interest in SGP's estate, or the allocation or distribution of funds of that estate, they are not a "person aggrieved" by the Bankruptcy Court's order.

3. The Slazengers Entities also attack the Bankruptcy Court's rejection of their objection on its merits. Because the Slazengers Entities cannot show that the Bankruptcy Court abused its discretion in approving the Key Parties Settlement, this Court, should it reach the merits of the Slazengers Entities' objection, must affirm that approval.

4. Nor did the Bankruptcy Court abuse its discretion by limiting notice of the Key Parties Settlement. Bankruptcy courts are vested with broad discretion to limit or shorten the notice period for a proposed settlement. A court does not abuse that discretion by limiting notice of a proposed settlement when all parties with an interest in the proceedings are parties to the settlement.

### III.  STATEMENT OF FACTS

SGP, a limited liability company formed under the laws of the State of Delaware, is a privately held company that, as of the Petition Date, had the exclusive right to sell Slazenger-brand golf products in the United States, Canada, Mexico, and the Caribbean Islands (the "Territory") pursuant to a long term license (the "License Agreement") with Slazengers Limited ("SL") and Dunlop Slazenger International Limited ("DSIL"), both companies organized under the laws of England. Under the License Agreement, SL and DSIL granted SGP an exclusive right to design, manufacture, and sell certain golf products and apparel using the "SLAZENGER" and related trademarks within the Territory. This right became the basis for SGP's business.

Concurrent with the execution of the License Agreement in November 2002, SGP entered into a supply agreement with Dunlop Slazenger Manufacturing LLC ("DSM"), a South Carolina limited liability company, pursuant to which DSM agreed to supply SGP with golf balls in response to quarterly forecasts and periodic purchase orders (the "Supply Agreement"). At the

same time, SGP also entered into a technology sharing agreement with Dunlop Slazenger Group Americas, Inc. ("DSGA"), in which SGP and DSGA set forth the terms under which they would collaborate in the design, development and testing of golf balls (the "Technology Agreement").

Based on the rights obtained under these agreements, SGP commenced business in 2003 developing, marketing and selling premium golf apparel, golf balls, and related accessories through a national sales force and a customer service and order fulfillment operation located in Greenville, South Carolina. By 2004, SGP had developed and was marketing two new lines of golf balls as well as various golf apparel lines. However, in February 2004, Sports World International Limited ("SWI"), a privately held company organized under the laws of England, acquired, directly or indirectly, SL, DSIL, DSM, DSGA and other affiliated companies. Soon after the acquisition, SGP's relationship with the Slazengers Entities began to deteriorate and SGP's efforts to expand its business operations were stymied. In the fall of 2004, SWI, through DSGA, agreed to acquire SGP's assets but, within a month, backed out of that transaction. SL and DSIL then announced that they would be terminating the License Agreement. With its business operations crippled and its very existence threatened, SGP was compelled to seek relief under the Bankruptcy Code in order to, among other things, preserve its interests under the License Agreement.

On December 8, 2004, a week after the Petition Date, SGP commenced an adversary proceeding, docketed below as Adversary Proceeding No. 04-57512, by filing a Verified Complaint against SWI, SL, DSIL, DSM, DSGA and an SWI affiliate, The Antigua Group, Inc., alleging, *inter alia*, breach of the License and Supply Agreements and tortious interference with contractual and business relations, and seeking injunctive and declaratory relief with respect to the attempted termination of the agreements by SL, DSIL and DSM (the "Contract Suit"). On

January 6, 2005, the defendants in the Contract Suit filed a joint answer to the Complaint containing, *inter alia*, counterclaims on behalf of SL and DSM alleging breaches of the License and Supply Agreements by SGP and seeking injunctive and declaratory relief declaring the agreements terminated. The defendants filed an amended answer and an amended corrected answer the following day.

SGP also filed two additional adversary proceedings against certain of the Slazenger Entities: one seeking the avoidance of preferential transfers under Section 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b), ("the Preference Suit"), and one seeking avoidance of preferential transfers and a fraudulent transfer under Sections 544 and 548 of the Bankruptcy Code, 11 U.S.C. §§ 544 & 548, ("the Fraudulent Transfer Suit.").

On February 28, 2005, the Slazengers Entities filed a motion for relief from the automatic stay (the "Stay Motion") and a motion to terminate SGP's exclusive period to file a plan of reorganization, seeking in both to terminate the Debtor's reorganization efforts just three months after the Petition Date. Those motions were opposed by SGP, the Committee, and SGP's secured lender, Provident Bank (the "Bank"). Hearings on the motions were continued while SGP sought to negotiate the sale of its business as a going concern to a leading licensor, designer, and marketer of high quality men's and women's apparel. However, the filing of the Stay Motion and the hostility of the Slazengers Entities toward any transfer of the License Agreement impaired SGP's ability to market its business or obtain additional infusions of capital. Ultimately, SGP's efforts to negotiate a sale of its business collapsed, in large measure due to the Slazengers Entities' antipathy toward any sale of the Debtor as a going concern. Soon thereafter, the Slazengers Entities moved the Bankruptcy Court for an order converting the bankruptcy case to a liquidation under chapter 7 of the Bankruptcy Code (the "Conversion Motion").

6

Confronting an almost ceaseless barrage of motions from the Slazengers Entities seeking to terminate its reorganization efforts, facing the scheduled expiration of authority to use cash collateral and of its debtor-in-possession financing, and lacking a final determination regarding the continued viability of the License Agreement, SGP concluded that the value of its estate could best be maximized through an orderly wind-down of its business and affairs in chapter 11. Accordingly, it entered into discussions that resulted ultimately in the Slazengers Settlement. D. 345 Ex. 1; A132. Under that settlement, the Slazengers Entities agreed to pay SGP's estate $575,000 (the "Slazengers Settlement Proceeds"), to withdraw and/or not assert claims in the Debtor's case totaling at least $3,546,975, and to withdraw certain pleadings (including the Stay and Conversion Motions) filed in the Debtor's chapter 11 case, in exchange for SGP's agreement to, *inter alia,* dismiss the Preference and Fraudulent Transfer Suits and to reject the License, Supply and Technology Agreements. D. 345 Ex. 1 at 3-5; A136-38.

The Slazenger Settlement further provided that the Contract Suit would proceed:

> <u>Survival of Contract Suit Claims, Counterclaims, Defenses and Offsets.</u> The Contract Suit, the Slazenger Group counter-claims and all defenses and offsets assertable by all parties in the Contract Suit will survive and not be affected by this agreement. Specifically, and without limiting the foregoing, the counter-claims of SL and DSM asserting unpaid royalties and damages survive and are not affected by this agreement *except as otherwise provided in paragraph 1 hereof with respect to the assertion of certain claims in the Bankruptcy Case.* Notwithstanding the foregoing, no member of the Slazenger Group will assert any claim exceeding five years' damages or right to offset in the Contract Suit based on or arising from the rejection of the Agreements pursuant to paragraph 2 hereof.

D. 345 Ex. 1 at 4; A137 (emphasis added). Paragraph 1 of the agreement provided that SL and DSM would withdraw and not assert its claims in the bankruptcy case.[2] D. 345 Ex. 1 at 3; A136.

---

[2] Paragraph 2 of the agreement also provided that the Slazengers Entities would withdraw and not assert any claim under the Bankruptcy Code for damages arising by virtue of SGP's rejection of the License, Supply and Technology Agreements. D. 345 Ex. 1 at 4; A137.

7

Thus, as Slazengers would later concede in open court, Slazengers gave up their claims against SGP's estate, retaining *only* the right to assert them as defenses and counterclaims in the Contract Suit and *only* to the extent they would offset any recovery SGP received in that action. D. 401 at 8-9; A236-37. The Slazengers Settlement was approved by the Bankruptcy Court by order entered on June 27, 2005.[3] D. 357; A157.

In anticipation of that approval, SGP and the remaining key parties in interest entered into negotiations concerning the distribution and allocation of the Slazengers Settlement Proceeds. These negotiations resulted in the Key Parties Settlement between SGP and all of the other remaining key parties in interest in SGP's case following the Slazengers Settlement—the Committee, the Bank, Kimolos II, L.P. ("Kimolos"), and Zapis Capital.[4] D. 364 Ex. A; A172. The Key Parties Settlement, as later slightly modified, provided, *inter alia,* that the first $290,000 would be paid to the Bank. The remaining proceeds were to be used to pay the administrative claims of the estate for professional fees and expenses. Because the Bank had determined that it would no longer fund the administration of the estate after September 2005, Kimolos agreed to provide at least $300,000 in additional financing to the estate for the purpose of funding the continued administration of the SGP estate and the litigation against the Slazengers Entities and their affiliates in the Contract Suit. The Key Parties Settlement also contained provisions that will govern the distribution of any funds received from the successful

---

[3] The Court will note that the hearing on the Slazengers Settlement was held on just five days' notice with the acquiescence -- indeed, at the insistence -- of the Slazengers Entities. See *Motion to Limit Notice for Order Under Fed. R. Bankr. P. 9019 Approving Settlement Agreement with the Dunlop Slazenger Entities*, filed June 22, 2005. D. 346, A 280.

[4] Debtor's counsel, Benesch, Friedlander, Coplan & Aronoff LLP, was also a party to the Key Parties Settlement because it agreed to defer a portion of its administrative claim for professional fees pending resolution of the Contract Suit.

prosecution or settlement of the Contract Suit. In its motion seeking approval of the Key Parties Settlement, the Debtor stated:

> The Debtor believes that the settlement embodied in the Supplemental Funding and Settlement Agreement rises well above the "lowest point in the range of reasonableness." Here, the settlement resolves the dispute between the Debtor's estate and the Bank over allocation of the Dunlop Settlement Proceeds. Additionally, it provides for the payment of estate professionals in this case -- the estate's primary, accrued and outstanding administrative expense – and memorializes an agreement to provide additional funding to the Debtor for (a) purposes of paying the costs of administration subsequent to the expiration of the existing postpetition financing being provided by the Bank and (b) paying the costs of liquidating one of the Debtor's primary remaining assets: the estate's remaining claims against the Dunlop Slazenger Entities. The settlement embodied in the Supplemental Funding and Settlement Agreement is the product of arms-length, good faith negotiations between the Debtor and the Major Parties in Interest, all of whom were represented by competent and experienced bankruptcy counsel. Accordingly, the Debtor believes that the settlement embodied in the Supplemental Funding and Settlement Agreement benefits the estate by avoiding litigation over the allocation of the Dunlop Settlement Proceeds and establishing a framework for the future administration of this case.

D. 364 at 10; A170.

As noted above, on July 1, 2005, SGP moved for an order approving the Key Parties Settlement. D. 364; A159. In addition, because all remaining key parties in interest joined the Key Parties Settlement, SGP simultaneously filed a motion to limit notice of the Settlement and the motion so that the motion could be heard at the next omnibus hearing set for July 14, 2005. D. 365; A183. The Bankruptcy Court entered an order limiting notice on July 5, 2005. D. 369; A187.

Notwithstanding the fact that the Slazengers Entities no longer had any interest in SGP's estate, or any claim to the proceeds that they had paid into the estate pursuant to the Slazengers Settlement, they objected to both the Key Parties Settlement and the limited notice. D. 373; A188. SGP responded by asserting that the Slazengers Entities lacked standing to present their

objection. D. 379; A198. The Bankruptcy Court heard the motion and the Slazengers Entities' objection on July 14, 2005. D. 401; A229.

At the hearing, counsel for the Debtor, the Bank, and the Committee all spoke in favor of the Key Parties Settlement, with counsel for the Committee noting that the Committee had voted unanimously in favor thereof. D. 401 at 19-20; A247-48. Counsel for the Slazengers Entities conceded that, pursuant to the Slazengers Settlement, they no longer had any interest in SGP's estate:

> THE COURT: Well, let me ask you about that because I'm confused. Slazenger says they have a $12 million claim, that's what they say in their objection. And you say they have no claim?
>
> MR. PHILLIPS: We are saying that, if you recall the hearing on June 27th, Your Honor, with respect to the settlement, as part of that settlement the Dunlop Slazenger entities have waived and, if you will, withdrawn their claims in the Chapter 11 case for collection purposes.
>
> . . . . The agreement was that they would retain those [claims] for purposes of counterclaims . . . [and] defenses in the adversary proceeding itself but would have no opportunity to have a positive collection, if you will, from the debtor's estate with respect to those claims if they succeed on them.
>
> So—
>
> THE COURT: Okay, let me discuss—counsel, do you agree with that interpretation?
>
> MR. COOK: *Yes, absolutely, Your Honor, [that's] the deal.*

D. 401 at 8-9; A236-37 (emphasis added).

Moreover, counsel for Slazengers implicitly acknowledged that the only reason Slazengers objected was to thwart or prohibit SGP from liquidating the most significant remaining asset of the estate—the Contract Suit—by denying the SGP the financing necessary to pursue the litigation:

10

>   MR. COOK: *In this case* and in the litigation what we can do is affect, impair, diminish if not demolish the major asset of the estate which [is] remaining, so they say, the litigation against our client.

D. 401 at 10; A235 (emphasis added). He also conceded that Slazengers had no further interest in any portion of SGP's estate:

>   THE COURT: You cannot recover a nickel from this estate, correct?
>
>   MR. COOK: *That's right.* But we can—but we can diminish, if not demolish, the estate's major remaining asset, the so-called Dunlop litigating [sic].

D. 401 at 16-17; A244-45 (emphasis added).[5]

At the conclusion of the hearing, the Bankruptcy Court ruled that the Slazenger Entities lacked standing and that, in any event, their objections were without merit:

>   THE COURT: Okay, I'll grant the motion. I'll enter the order.
>
>   . . . .
>
>   THE COURT: Okay, well, let me finish up with my remarks. For the reasons I've indicated in my questioning of Mr. Cook, I conclude that the Slazenger Group is a stranger to this settlement agreement. But aside from that in looking at the objection that they filed and I'm looking at Page 3, Paragraph 6, it says, "The Court cannot approve the proposed insider financing for at least the following reasons. First bullet point, "SGP failed to disclose all of the financing material terms." I think they are now disclosed in the proposed form of order.
>
>   The next bullet point is, "SGP failed to describe let alone mention any attempt to obtain alternative financing." And then the last point is that they didn't—failed to explain why Provident Bank wouldn't do it.
>
>   The comments by counsel for the committee I think clearly demonstrate why nobody else is going to finance this litigation because it's risky. Mr. Cook, your experience is probably longer than mine in bankruptcy matters and have you ever heard of a bank financing litigation? I haven't.
>
>   So I think the objections themselves are basically unfounded and for those reasons I'll grant the motion.

---

[5] The basis for even this assertion is questionable since, as noted above, only two of the defendants in the Contract Suit -- SL and DSM -- have asserted counterclaims in that litigation.

11

D. 401 at 21-23; A249-51.

The Bankruptcy Court entered an Order approving the Key Parties Settlement on July 15, 2005. D. 386; A256. In that Order, the Court expressly concluded that "[t]he Settlement among the Debtor and the Major Parties in Interest is appropriate and within the range of reasonableness as the Debtor was otherwise unable to obtain financing to pursue the Dunlop Litigation and the financing described herein is hereby approved." D. 386 at 2; A257. The Bankruptcy Court further concluded that "[t]he relief requested in the Motion is in the best interests of SGP, its estate and its creditors." D. 386 at 3; A258. It is from this Order that Slazengers appealed.

IV. ARGUMENT

    A. STANDARD OF REVIEW.

"[T]he bankruptcy court's findings of fact [are reviewed] under a clearly erroneous standard, and its conclusions of law under a plenary standard." *Cinicola v. Scharffenberger*, 248 F.3d 110, 115 n.1 (3d Cir. 2001) (citations omitted).

> The lower court's factual findings are reviewed under a clearly erroneous standard. A factual finding is clearly erroneous if it is "completely devoid of minimum evidentiary support displaying some hue of credibility or . . . bears no rational relationship to the supportive evidentiary data."

*In re Tempo Technology Corp.*, 202 B.R. 363, 367 (D.Del. 1996) (citations omitted).

"A bankruptcy court's decision to approve or disapprove a settlement is reviewed under an abuse of discretion standard." *Continental Airlines, Inc. v. Air Line Pilots Ass'n, Int'l* (*In re Continental Airlines, Inc.*), 907 F.2d 1500, 1520 (5th Cir. 1990). "A Bankruptcy Court's decision to approve a settlement should not be overturned unless its decision is manifestly erroneous and 'a clear abuse of discretion.'" *In re Purofied Down Products Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (citations omitted).