The bankruptcy court's decision to limit notice is reviewed for abuse of discretion. *State Bank of S. Utah v. Gledhill* (*In re Gledhill*), 76 F.3d 1070, 1084-85 (10th Cir. 1996). The court must also "review questions concerning the scope or opportunity for discovery for an abuse of discretion." *Kimmelman v. Port Auth. of N.Y. and N.J.* (*In re Kiwi Int'l Air Lines, Inc.*), 344 F.3d 311, 323 (3d Cir. 2003).

### B. THE BANKRUPTCY COURT PROPERLY RULED THAT SLAZENGERS LACKED STANDING TO OBJECT TO THE KEY PARTIES SETTLEMENT.

The Slazengers Entities first argue that they had standing to object to the approval of the Key Parties Settlement because they are "creditors" within the meaning of that term under the Bankruptcy Code. Because the Slazengers Entities relinquished all rights to recovery from SGP's bankruptcy estate, however, they cannot be considered "creditors" within the meaning of the Code. Accordingly, the Bankruptcy Court correctly determined that the Slazengers Entities were "strangers" and lacked standing to object to the Key Parties Settlement, and their appeal from that Court's approval of that Settlement must be dismissed.

Appellants rely primarily upon 11 U.S.C. § 1109(b), which provides:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, *a creditor*, and equity security holder, or any indenture trustee, *may raise and may appear and be heard on any issue in a case under this chapter.*

11 U.S.C. § 1109(b) (emphasis added). For this provision to apply, however, the Slazengers Entities must establish that they are one of the parties listed therein. The only one they actually rely upon is "creditor."

Section 101(10) of the Bankruptcy Code defines "creditor" as an:

> (A) entity that has a *claim* against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

11 U.S.C. § 101(10) (emphasis added). In turn, the Bankruptcy Code defines "claim" as a:

(A) *right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added). Although the definition of "claim" is generally a broad one, see *In re Udell*, 18 F.3d 403, 406 (7th Cir. 1994); see also *Federal Communications Comm'n v. NextWave Personal Communications, Inc.*, 537 U.S. 293, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003); *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), it is not without limitation. *Mullen v. United States*, 696 F.2d 470, 472 (6th Cir. 1983) ("Admittedly, this a broad definition. However, it should not be read to encompass every monetary obligation unless Congress has evinced such an intent.").

One such limitation is set forth in the definition itself—to possess a "claim," a "creditor" must have a "right to payment." The Slazengers Entities simply have no "right to payment" from the SGP bankruptcy estate and, therefore, have no "claim." Accordingly, they are not creditors of SGP or its estate.

The Third Circuit has concluded that a "right to payment" generally involves "a situation where [a party] is attempting to get money from the debtor . . . ." *In re Torwico Electronics, Inc.*, 8 F.3d 146, 151 (3d Cir. 1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1576, 128 L.Ed.2d 219 (1994). See also *In re All-Type Printing, Inc.*, 274 B.R. 316, 321 (Bankr.D.Conn. 2002) ("All-

Type had no general 'right to payment' from Ralph and/or Shirley by virtue of the Payments it made to them, and on their behalf. The Letter Agreement states that such payments would be *credited* toward, and *only in the event of,* a redemption of Ralph's Shares, *i.e.,* All-Type enjoyed a specialized credit, not a general right to payment.") (emphasis in original), *aff'd*, 80 Fed.Appx. 700 (2d Cir. 2003).

In *New York City Employees Retirement Sys. v. Villarie* (*In Re Villarie*), 648 F.2d 810 (2d Cir. 1981), the Second Circuit considered whether a loan a debtor had taken from his public retirement system was a "debt" dischargeable in bankruptcy. The Court noted that the definition of "debt" was dependent upon the definition of "claim," which required a "right to payment." *Id.,* 648 F.2d at 812. The Court concluded that the retirement system did not have a "claim" against the debtor because it had no right to payment. Rather, if the debtor "retire[d] or resign[ed] from the City's employ, [the retirement system] *would merely offset the amount borrowed against his future benefits.* In the language of 11 U.S.C. § 502(b), this 'claim is unenforceable against the debtor . . . .'" *Id.*, 648 F.2d at 812 (emphasis added). Because the retirement system had no "right to payment," it had no "claim." And because it had no "claim," there was no "debt" dischargeable in bankruptcy.

The Bankruptcy Court for District of the Virgin Islands reached a similar conclusion:

> As in *Villarie,* the debtor in the instant case is required to participate in the [retirement] System . . . . Membership in the System entitles the debtor to obtain a loan . . . . [The statute] provides, "In case of separation from service for any reason, including death or disability of the member, the balance due on the loan and any accrued interest thereon, shall be deducted from any refund of contributions, annuity, death benefit or any other benefit due to the member or his beneficiary."
>
> This court does not find that [the statute] authorizes the System, upon severance of the employment relationship, to sue the debtor for the amount of any outstanding portion of an advance, but *merely authorizes the System to offset the outstanding amount against future benefits. Consequently, as in Villarie, the*

15

> *statutory provisions governing the loan do not give the System a "right to payment". Without such a right, the System cannot hold a valid claim in the debtor's bankruptcy estate as defined in Section 101(5)(A).*

*In re Schleifer*, 170 B.R. 283, 285 (Bankr.D.V.I. 1994) (emphasis added) (citations omitted). See also *Mullen,* 696 F.2d at 472. *See also In re Sigman*, 270 B.R. 858 (Bankr. S.D. Ohio 2001) (right to recoupment is not a "right to payment" and those parties with recoupment rights do not have "claims" against debtors); *Mercy Hosp. of Watertown v. New York State Dept. of Social Services*, 171 B.R. 490 (N.D.N.Y. 1994) (same); *Brown v. General Motors Corp.*, 152 B.R. 935 (W.D.Wis. 1993) (same); *In re Madigan*, 270 B.R. 749 (9th Cir. B.A.P. 2001) (same).

Certain of the Slazengers Entities, notwithstanding their convoluted argument to the contrary, possess, at most, a potential offset to SGP's recovery in the Contract Suit. They can no longer, by virtue of the Slazengers Settlement, sue independently on their "claims" or otherwise assert them in SGP's bankruptcy case. Thus, the Slazengers Entities have no "right to payment." Because they have "no right to payment," they have no "claim" against SGP's bankruptcy estate. And because they have no "claim," they are not creditors entitled to be heard pursuant to 11 U.S.C. §1109(b).

Notwithstanding the fact that the Slazengers Entities are not "creditors" under Section 101(10), they assert that they nevertheless have standing under 11 U.S.C. § 1109(b) because they have a "stake" in the outcome of the proceedings. Once again, it must be observed that this provision, on its face, applies to, *inter alia,* "creditors," and the Slazenger Entities cannot be considered "creditors."

Moreover, both the Third Circuit and this Court have held that, under § 1109(b), "courts must determine on a case by case basis whether the prospective party in interest has a sufficient stake *in the proceeding* to require representation." *In re Amatex Corp.*, 755 F.2d 1034, 1042

(3d Cir. 1985) (emphasis added). See also *Unofficial Comm. of Zero Coupon Holders v. Grand Union Co.,* 179 B.R. 56, 59 (D.Del. 1995).

In this case, the Slazengers Entities have no stake in the outcome of "the proceeding," *i.e.,* the motion to approve the Key Parties Settlement. They paid SGP a sum of money as part of a settlement of most of the disputes between them and SGP. The subsequent Key Parties Settlement dealt primarily with the distribution and allocation of those proceeds—an issue in which the Slazengers Entities clearly have no stake.

The other primary provision of the agreement -- and the one to which the Slazengers Entities most vigorously object -- is the provision for supplemental financing for the continued administration of the estate and the remaining litigation against the Slazengers Entities. But because the Slazengers Entities no longer have a claim payable from the funds in the bankruptcy estate—a fact it cannot and does not deny—the terms of the supplemental funding cannot affect their interests. The fact that Kimolos, a party that the Slazenger Entities dub as an "insider," agreed to provide supplemental financing on terms that the Slazengers Entities deem to be unfairly favorable to Kimolos, cannot affect or impair any recovery by any of the Slazengers Entities for the simple reason that no right to such recovery can be claimed. Indeed, as counsel acknowledged in open court, the Slazengers Entities "cannot recover a nickel from this estate." D. 401 at 16-17; A244-45.

A review of the Slazengers Entities' objection further reveals that they have no stake in these proceedings. What they object to is the fairness of the Key Parties Settlement to the other parties remaining in the case, *all of who were signatories to the Agreement and none of who interposed an objection.* In fact, both the Committee and the Bank expressly supported the settlement at the July 14, 2005 hearing. See, e.g., D. 401 at 17-20; A245-48.

17

The Third Circuit has cautioned against allowing parties not having a stake in the outcome to assert the rights of those parties who do:

> Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert rights of another party even though that other party is present in the proceedings and is capable of representing himself. Third-party standing is of a special concern in the bankruptcy context where, as here, one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties who apparently favor the plan. In this context, the courts have been understandably skeptical of the litigant's motives and *have often denied standing as to any claim that asserts only third-party rights.*

*In re PWS Holding Corp.*, 228 F.3d. 224, 248 (3d Cir. 2000) (emphasis added) (quoting *Kane v. Johns-Manville Corp*, 843 F.2d 636, 644 (2d. Cir. 1988)). The Slazengers Entities are the prototypical "third parties," attempting to interfere with an administrative settlement between parties whose "rights" are allegedly being impaired, even though those parties have concluded that the settlement is in their best interests. The Bankruptcy Court herein correctly concluded that the Slazengers Entities lack "a sufficient stake in the proceedings so as to require representation" and, accordingly, have no right to be heard regarding these matters. *Unofficial Comm. of Zero Coupon Holders*, 179 B.R. at 59 (quoting *In re Amatex Corp.*, 755 F.2d at 1042). Accordingly, this Court should affirm that determination and dismiss this appeal.

C. **SLAZENGERS LACK STANDING TO MAINTAIN THIS APPEAL.**

Even if Slazengers had standing to interpose an objection to the proposed Key Parties Settlement, they lack standing to appeal from the order approving the agreement. Accordingly, this Court should dismiss the appeal.

"Appellate standing in bankruptcy cases is more limited than Article III standing or the prudential requirements associated therewith." *In re Troutman Enters., Inc.* 286 F.3d 359, 365 (6th Cir. 2002). See also *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995)

(citations omitted) ("[T]he standing requirement in bankruptcy appeals is more restrictive than the 'case or controversy' standing requirement of Article III, which 'need not be financial and need only be 'fairly traceable' to the alleged illegal action."); *In re ANC Rental Corp.*, 57 Fed. Appx. 912, 914 (3d Cir. 2003); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004); *IPSCO Steel (Alabama), Inc. v. Blaine Constr. Corp.*, 371 F.3d 150, 155 (3d Cir. 2004); *In re PWS Holding Corp.*, 228 F.3d at 248.

To have standing to appeal an order of the bankruptcy court pursuant to Fed.R.Bankr.P. 8002, a party must demonstrate that it is a "person aggrieved." *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 494 (3d Cir. 1998). The "person aggrieved" standard provides that those parties "whose pecuniary interests are *directly and adversely affected* by a bankruptcy court order that 'diminishes their property, increases their burdens, or impairs their rights,' may appeal." *Id.* at 495 (emphasis added) (citing, *Travelers Ins. Co.*, 45 F.3d at 741-42 (quoting, *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)). See also *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 530 (3d Cir. 1999) (rights or interests must be affected pecuniarily by bankruptcy court order to have standing to appeal); *In re ANC Rental Corp.*, 57 Fed. Appx. at 914 (same); *In re Combustion Eng'g, Inc.*, 391 F.3d at 214; *In re PWS Holding Corp.*, 228 F.3d at 249. A party who has "no pecuniary interest in the particular allocation of fixed payments" is simply not a "person aggrieved" by a bankruptcy court's order. *In re Dykes*, 10 F.3d at 188.

> "Person aggrieved" is, of course, a term of art: almost by definition, all appellants may claim in some way to be "aggrieved," else they would not bother to prosecute their appeals. In conventional disputes, the class of potential plaintiffs is defined by the constitutional doctrine of standing. But in bankruptcy proceedings, which typically involve a "myriad of parties ... indirectly affected by every bankruptcy court order," the need to limit collateral appeals is particularly acute. Thus, the "person aggrieved" doctrine:
>
>> [E]xists to fill the need for an explicit limitation on standing to appeal in bankruptcy proceedings. This need springs from the nature of bankruptcy

litigation which almost always involves the interests of persons who are not formally parties to the litigation. In the course of administration of the bankruptcy estate disputes arise in which numerous persons are to some degree interested. Efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected.

*Standing has thus been denied to marginal parties involved in bankruptcy proceedings who, even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not "directly affected" by that order.*

*Travelers Ins. Co.*, 45 F.3d at 741 (emphasis added) (citations omitted).

In this case, none of the Slazengers Entities can establish that its pecuniary interests are directly and adversely affected. The Slazengers Entities possess zero likelihood of receiving any distribution in SGP's bankruptcy case because they relinquished that right in settlement. Indeed, one of the primary provisions of the Key Parties Settlement is the distribution or allocation of funds received from the Slazengers Entities in SGP's settlement with them. Certainly, Appellants do not contend that they have an interest in the allocation of those funds to other parties when that allocation can in no way affect their interests.

At best, the Slazengers Entities argue that their pecuniary interests are tenuously and indirectly affected in that the Key Parties Settlement provides a means of financing the Contract Suit against the defendants in that action. Indeed, the only "interest" they were able to identify below is their ability to "affect, impair, diminish if not demolish the major asset of the estate which is remaining, . . . the litigation against our client." D. 401 at 10, A235 (emphasis added).[6] Yet at no point do the Slazengers Entities cite any authority that even comes close to suggesting that being a defendant in a lawsuit brought by a debtor confers standing on that defendant to

---

[6] The Bankruptcy Court, having witnessed the Slazengers Entities' tactics and motion practice throughout the proceedings, discerned a complimentary interest: "[T]o burden the estate with additional legal expenses and duties and trouble in order to wear them out." D. 401 at 26, A254.

object to the funding of the debtor's estate simply because the defendant can "diminish if not demolish" any judgment the debtor hopes to obtain.[7]

Undoubtedly, the Slazengers Entities may regard an agreement among all constituencies in the SGP bankruptcy that allows for the continued administration of the estate and the prosecution of litigation against the Slazengers Entities and their affiliates to be adverse to their interests. However, such an indirect result is simply insufficient to satisfy the "person aggrieved" standard for appellate standing. Accordingly, this appeal must be dismissed.[8]

---

[7] The decisions in *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985), and *Unofficial Comm. of Zero Coupon Noteholders v. The Grand Union Co.*, 179 B.R. 56 (D. Del. 1995), relied upon by the Slazengers Entities, provide no support for this proposition. In both instances, the pecuniary interest of the parties at issue was in a positive recovery, directly or indirectly, from the debtor's estate, not an alleged ability to "demolish" any recovery that may be obtained for the estate's actual creditors.

[8] The Slazengers Entities attempt to "bootstrap" their position on appeal by attempting to invent a "claim" under §§ 506(a) and 553 of the Bankruptcy Code. 11 U.S.C. § 506(a) provides:

> *An allowed claim* of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis added). Simply stated, to have a secured claim pursuant to Section 506(a), an entity must (i) be a creditor, (ii) with an "allowed" claim, (iii) that is subject to setoff under Section 553 of the Bankruptcy Code, 11 U.S.C. § 553. None of the Slazengers Entities can, however, demonstrate that they have an "allowed claim."

Pursuant to the terms of the Slazengers Settlement, the Slazengers Entities agreed to forego any distribution or dividend from SGP's estate pursuant to a plan of reorganization or plan of liquidation. Accordingly, they do not, and cannot, have an "allowed" claim. See *In re Richardson*, 307 B.R. 485 (Bankr.D.Md. 2004) ("An allowed claim, on the other hand, is an entitlement to the holder of the right to receive a distribution from the bankruptcy estate and/or the right to specific treatment under either a Chapter 11 or Chapter 13 plan."). And, as noted

21

D.  **THE BANKRUPTCY COURT PROPERLY RULED THAT THE KEY PARTIES SETTLEMENT WAS APPROPRIATE, WITHIN THE RANGE OF REASONABLENESS, AND IN THE BEST INTERESTS OF THE ESTATE.**

The Slazengers Entities also attack the Bankruptcy Court's rejection of their objection on its merits. Because the Slazengers Entities cannot show that the Bankruptcy Court abused its discretion in approving the Key Parties Settlement, this Court, should it reach the merits of the Slazengers Entities' objection, should affirm that approval.

Fed.R.Bankr.P. 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy. *Martin v. Ayers (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The Third Circuit recognizes four criteria the Bankruptcy Court should consider in evaluating a proposed settlement:

> (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*Martin*, 91 F.3d at 393. See also *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D.Del. 1998). The decision to approve a settlement or compromise lies within the discretion of the bankruptcy court and is warranted when the settlement is found to be reasonable and fair in light of the particular circumstances of the case. *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25, 88 S.Ct. 1157, 1163-64, 20 L.Ed.2d 1 (1968); *Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D.Pa. 1986). Courts have "broad authority [under Fed.R.Bankr. P. 9019(a)] to approve compromises and settlements." *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 758 (Bankr.S.D.N.Y. 1992).

---

above, the Slazengers Entities are not "creditors" because they have no "right to payment" from, and therefore no "claim" against, SGP.

"[T]he responsibility of the bankruptcy judge, and ours on review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Ars Brook, LLC v. Jalbert* (*In re Servisense.com, Inc.*), 382 F.3d 68, 71-72 (1st Cir. 2004).

The bankruptcy court need not "conduct an evidentiary hearing as a prerequisite to approving" a settlement. *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994). See also *Johnson v. Jackson Family Television, Inc.* (*In re Media Cent., Inc.*), 190 B.R. 316, 321 (E.D.Tenn. 1994) (In determining whether to approve a settlement, "the bankruptcy court should canvass the issues and determine whether the proposed settlement falls within the range of reasonableness in the case, but without trying the case or otherwise deciding the issues of law and fact presented.") (citation omitted); *Committee of Unsecured Creditors v. Interstate Cigar Distribution, Inc.* (*In re Interstate Cigar Co.*), 240 B.R. 816, 822 (Bankr.E.D.N.Y. 1999) (In determining reasonableness of settlement, the bankruptcy court "is not charged with holding a mini trial on the merits, but must review the issues which are subject to the settlement.") (citation omitted). In making this determination:

> The reviewing court need not conduct its own investigation concerning the reasonableness of the settlement and may credit and consider the opinion of the Trustee and counsel that the settlement is fair and equitable. Similarly, the court need not conduct a "mini trial" to determine the merits of the underlying litigation. Rather, the court's responsibility is "to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"

*In re Purofied Down Products Corp.*, 150 B.R. at 522 (citations omitted).

At the hearing on the Key Parties Settlement, counsel for the Committee noted that the negotiations for the settlement were vigorous, and that the parties compromised on the allocation of the proceeds of the Slazengers Settlement. D. 401 at 17-18; A245-46. With regard to the

supplement financing contained in the Key Parties Settlement, counsel for the Committee gave the Committee's reason for its support:

> But ultimately in this case were we to recover that $575,000, the case would be over. We went out and looked for law firms to take on a contingency basis the law suit against Dunlop. There was no firm willing to do so. We worked with the debtor on this. We collectively went to I think four law firms. No law firm to take it on a contingency. No law firm was willing to take it on a contingency even if all their expenses were paid.
>
> And so ultimately, Your Honor, the only way the estate can get more than a couple of pennies for unsecured creditors in this case is if we're victorious in the law suit and the only way to we can ever win that law suit is if we have money to fund it. So instead of taking the position that I want the 575,000 which will pay off administrative claims and then we'll have a Chapter 7 and maybe unsecured creditors will get a penny, we had a vote of the committee and the committee decided that we were better off taking a lower allocation up front, 285,000 and then getting a $300,000 loan for starters to pursue the litigation against the Dunlop entities and an agreement by the Benesch firm to defer their administrative claims, they don't need to be paid immediately so that the case remains administratively solvent while we pursue the litigation.

D. 401 at 18-19; A246-47. The Committee believed that the Key Parties Settlement was "in the best interest of creditors of the estate." D. 401 at 20; A248. Counsel for the Bank also spoke in favor of the Key Parties Settlement. D. 401 at 21-22; A249-50.

From the foregoing, it is clear that the Bankruptcy Court did not abuse its discretion in approving the Key Parties Settlement. Indeed, Slazengers can make no showing to the contrary. All parties to the settlement averred that the Key Parties Settlement, and the supplemental financing provided for therein, was the only practical way to liquidate the remaining significant asset of SGP's estate, the Contract Suit. The interests of the Slazengers Entities' would obviously be better served if it could prevent that litigation from going forward, but their interests are adverse to the interests of SGP, its estate, and its creditors. The Bankruptcy Court properly approved the Key Parties Settlement, and that approval should be affirmed.

E.  **THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IS LIMITING NOTICE OF THE KEY PARTIES SETTLEMENT.**

Finally, the Slazengers Entities assert that the Bankruptcy Court erred by limiting notice on SGP's motion for an order approving the Key Parties Settlement under Fed.R.Bankr.P. 2002 and 9006. They also assert that they should have been permitted to conduct discovery "regarding the fairness of the proposed settlement." Appellants' Brief at 23. These assertions are completely without merit, and this Court should rule that the Bankruptcy Court did not abuse its discretion in limiting notice.

Initially, it must be observed that Fed.R.Bankr.P. 9006(c) expressly provides that the Bankruptcy Court "for cause shown may in its discretion" reduce the amount of time for giving notice of a proposed settlement under Fed.R.Bankr.P. 2002. See *In re Grant Broadcasting of Philadelphia*, 71 B.R. 390, 396-97 (Bankr.E.D.Pa. 1987). A bankruptcy court does not abuse its discretion by limiting notice of a proposed settlement agreement when counsel for all parties in interest have actual notice. *Id.* at 397. Indeed bankruptcy courts should reject an objection to a reduction in notice which objection is interposed "as a technical defense to block approval of the Settlement Agreement." *Id.*[9]

Moreover, the Slazengers Entities' argument once again incorrectly presumes that they have standing to object to the limitation of notice. As demonstrated above, they have no standing. Throughout their brief to this Court, they once again make clear that they are seeking to establish the unfairness of the agreement to the Bank and the Committee. See generally Appellants' Brief

---

[9] Appellants also complain that all of the terms of the supplemental financing were not included in the notice. "Adequate notice does not require that all of the terms of settlement be included." *In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 458 n.1 (Bankr.E.D.Pa. 1998) (citation omitted).

at 20. Yet both of these parties were parties to the negotiations and the agreement, and their counsel spoke in favor of the agreement notwithstanding the Slazengers Entities' objection. As the Bankruptcy Court aptly noted, "[t]hey're big boys. They can take care of themselves." D. 401 at 15; A243.

Nor have the Slazengers Entities identified any discovery they now argue should have been allowed that in any way goes to establish the Key Parties Settlement's unfairness to them, or that would show that the Settlement affects their interests in any direct way. Thus, it cannot show that their lack of opportunity constituted an abuse of discretion. Accordingly, the Court should affirm the Bankruptcy Court's Order of July 5, 2005 limiting notice.

V.   CONCLUSION

For the foregoing reasons, Debtors-Appellees respectfully urge this Court to dismiss this appeal, or in the alternative, to affirm the Bankruptcy Court's July 15, 2005 Order.

Dated: Wilmington, Delaware
       August 23, 2005

Respectfully submitted,

/s/ Frederick B. Rosner
Frederick B. Rosner (No. 3995)
JASPAN SCHLESINGER HOFFMAN LLP
913 Market Street, 12th Floor
Wilmington, DE  19801
Telephone:  302-351-8000/8005
Facsimile:  302-351-8010
frosner@jshllp-de.com

and

H. Jeffrey Schwartz  (OBR #0014307)
Mark A. Phillips (OBR #0047347)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH  44114-2378
(216) 363-4500
(216) 363-4588 (Facsimile)

Counsel for Debtor-Appellee