## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
In re                                          :    Case No. 04-13382 (PJW)
                                               :
SGP ACQUISITION, LLC,                          :    Chapter 11
                                               :
                         Debtors.              :
-------------------------------------------------------------x
SLAZENGERS LIMITED, et al.,                    :
                                               :
                         Appellants,           :    Civ. No. 05-cv-00563-GMS
                                               :
        v.                                     :
                                               :
SGP ACQUISITION, LLC, et al.,                  :
                                               :
                         Appellees.            :
-------------------------------------------------------------x
```

### RESPONSE OF APPELLEE SGP ACQUISITION, LLC IN OPPOSITION
### TO SLAZENGER'S EMERGENCY MOTION FOR STAY PENDING APPEAL

<div style="margin-left:40%">

Frederick B. Rosner (No. 3995)
JASPAN SCHLESINGER HOFFMAN LLP

913 North Market Street, 12th Floor
Wilmington, DE  19801
Telephone:    (302) 351-8000
Facsimile:    (302) 351-8010

- and -

H. Jeffrey Schwartz  (OBR #0014307)
Mark A. Phillips (OBR # 0047347)
Michael D. Zaverton  (OBR #0038597)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH  44114-2378
Telephone:    (216) 363-4500
Facsimile:    (216) 363-4588

Counsel for SGP Acquisition, LLC, Debtor and
Debtor in Possession

</div>

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ……………………………………………………………..ii

I.   SUMMARY OF ARGUMENT ........................................................................... 2

II.  STATEMENT OF FACTS .................................................................................. 3

III. ARGUMENT

    A.   Denial Of The Motion Is Warranted Because The Slazengers Entities Have Failed To Comply With The Requirements Of The Applicable Bankruptcy Rules. ...................... 8

        1.   The Slazengers Entities have not complied with Bankruptcy Rule 8011(d). ......... 8

        2.   The Slazengers Entities have not complied with Bankruptcy Rule 8005. .............. 9

    B.   The Motion Must Be Denied Because The Slazengers Entities Cannot Demonstrate That They Are Likely To Succeed On The Merits Of The Appeal. ............................ 10

        1.   The Slazengers Entities lacked standing to object to the Key Parties Settlement because they were not "creditors" of SGP when the Key Parties Settlement was approved............................................................................................................ 10

        2.   The Slazengers Entities lack standing to prosecute this appeal. .......................... 13

    C.   The Slazengers Entities Cannot Demonstrate That They Will Suffer "Irreparable Harm" If The Stay Is Denied. ....................................................................... 14

    D.   SGP's Creditors Will Suffer Greater Harm Than Will The Slazengers Entities If The Key Parties Settlement Order Is Stayed....................................................... 18

    E.   The Public Interest Will Be Best Served If The Stay Is Denied................................. 19

IV.  CONCLUSION.................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*American Hospital Assoc. v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) ................................. 14

*Bergemann v. Babcock & Wilcox Co. (In re Babcock & Wilcox)*, 2000 WL 533492 at *2 (E.D. La. May 3, 2000)........................................................................................................................ 9

*Campbell Soup Co. v. ConAgra, Inc.*, 801 F. Supp. 1298 (D.N.J. 1991) ..................................... 14

*Church of Scientology v. United States*, 506 U.S. 9 (1992)......................................................... 15

*Federal Communications Comm'n v. NextWave Personal Communications, Inc.*, 537 U.S. 293 (2003) .......................................................................................................................................... 11

*Green Point v. Treston*, 188 B.R. 9, 12 (S.D.N.Y. 1995) ........................................................... 18

*Hamilton v. Edell*, 67 F.R.D. 18 (D.C. Pa. 1975) ....................................................................... 19

*In re ANC Rental Corp.*, 57 Fed. Appx. 912, 914 (3d Cir. 2003)................................................. 13

*In re Byrd*, 172 B.R. 970 (Bankr. W.D. Wash. 1994).................................................................... 7

*In re Charter Co.*, 72 B.R. 70, 71-72 (Bankr. M.D. Fla. 1987)..................................................... 7

*In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004) ................................................. 13

*In re Dobslaw*, 20 B.R. 922 (Bankr. E.D. Pa. 1982)..................................................................... 7

*In re Duncan*, 107 B.R. 758, 759 (W.D. Okla. 1988) .................................................................... 9

*In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993) ............................................................................. 13

*In re Fullmer*, 323 B.R. 287, 304 (Bankr. D. Nev. 2005).......................................................... 14

*In re Hydronic Enterprises, Inc.*, 51 B.R. 176 (Bankr. D.R.I. 1985)........................................... 19

*In re Intermet Realty Partnership*, 27 B.R. 938 (Bankr. E.D. Pa. 1983)....................................... 7

*In re Lykes Bros. S.S. Co.*, 221 B.R. 881 (Bankr. M.D. Fla. 1997) ....................................... 17, 18

*In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 530 (3d Cir. 1999) ........................................... 13

*In re Power Recovery Systems, Inc.*, 950 F.2d 798, 804 n.31 (1st Cir. 1991) .............................. 18

*In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000)....................................................... 12

*In re Torwico Electronics, Inc.*, 8 F.3d 146, 151 (3d Cir. 1993) ................................................... 11

*In re Udell*, 18 F.3d 403, 406 (7th Cir. 1994) ................................................................................ 11

*In re Ward*, 184 B.R. 253 (Bankr. D.S.C. 1995) ........................................................................... 7

*IPSCO Steel (Alabama), Inc. v. Blaine Constr. Corp.*, 371 F.3d 150, 155 (3d Cir. 2004) ........... 13

*Johnson v. Home State Bank*, 501 U.S. 78 (1991) .......................................................................... 11

*Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 494 (3d Cir. 1998) .......... 13

*Mullen v. United States,* 696 F.2d 470, 472 (6th Cir. 1983) ......................................................... 11

*Nelson v. Coleman Co.*, 41 F.R.D. 7 (D.C.S.C. 1966) .................................................................... 19

*The Resolution Trust Corp. v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.)*, 16 F.3d 552, 560 (3d Cir. 1993) .................................................. 15

*Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995) ...................................... 13

*U.S. Trustee v. Official Comm. of Equity Security Holders (In re Zenith Electronics Corp.)*, 329 F.3d 338, 346-47 (3d Cir. 2003) ............................................................................................. 16

*Zahn v. Keybank of New York (In re Zahn Farms)*, 206 B.R. 643, 645 (2d Cir. B.A.P. 1997) ...... 9

**Statutes and Rules**

11 U.S.C. § 101(5) .................................................................................................. 11

11 U.S.C. § 1109(b) ............................................................................................ 10, 12

11 U.S.C. §101 ....................................................................................................... 4

11 U.S.C. 364(e) .................................................................................................... 15

11 U.S.C. § 547(b) .................................................................................................. 4

11 U.S.C. § 1107 .................................................................................................... 3

11 U.S.C. § 544 ...................................................................................................... 4

11 U.S.C. § 548 ...................................................................................................... 4

Fed. R. Bankr. P. 8011(d) ................................................................................... 2, 8

Fed. R. Bankr. P. 8005 ........................................................................................... 9

11 U.S.C.  101(10) ................................................................................................ 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------------x
In re                                    :    Case No. 04-13382 (PJW)
                                         :
SGP ACQUISITION, LLC,                    :    Chapter 11
                                         :
                       Debtors.          :
-------------------------------------------------------------x
SLAZENGERS LIMITED, et al.,              :
                                         :
                       Appellants,       :    Civ. No. 05-cv-00563-GMS
                                         :
           v.                            :
                                         :
SGP ACQUISITION, LLC, et al.,            :
                                         :
                       Appellees.        :
-------------------------------------------------------------x
```

**RESPONSE OF APPELLEE SGP ACQUISITION, LLC IN OPPOSITION
TO SLAZENGER'S EMERGENCY MOTION FOR STAY PENDING APPEAL**

SGP Acquisition, LLC ("SGP"), debtor and debtor in possession in the above-captioned chapter 11 proceeding and the appellee herein, responds in opposition to the "emergency"[1] motion of the Slazengers Entities[2] (the "Motion") for a stay pending their appeal from the *Order Under Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement Between the Debtor and Other Key Parties in Interest In This Chapter 11 Case* (the "Key Parties Settlement Order"), entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on July 15, 2005. For the reasons stated below, SGP requests that the Motion be denied.

---

[1] Although the movants purport to seek expedited consideration of their motion on an "emergency" basis, they have not complied with any of the requirements of Federal Rule of Bankruptcy Procedure 8011(d). See *infra*, p. 9-10.

[2] The "Slazengers Entities" are Slazengers Limited, Dunlop Slazenger International Limited, Dunlop Sports Group Americas, Inc., and Dunlop Slazenger Manufacturing LLC.

# I. SUMMARY OF ARGUMENT

1.      The Court should not enter a stay of the Key Parties Settlement Order because the

Slazengers Entities' purported "emergency" motion does not comply with the requirements of

Rules 8005 and 8011(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Contrary to these requirements, the Motion:

> (a) is not accompanied by an affidavit "setting forth the nature of the emergency" and stating "when and how opposing counsel was notified" prior to the filing of the emergency request;
>
> (b) does not "state whether all grounds advanced in support [of the Motion] were submitted to the bankruptcy judge" and, if not, "why the motion should not be remanded to bankruptcy judge for reconsideration";
>
> (c) fails to "show why the relief . . . was not obtained from the bankruptcy judge"; and
>
> (d) does not explain why the Slazengers Entities did not file a motion for stay in the Bankruptcy Court rather than just orally request such relief.

These failures to comply with the most basic requirements of the applicable Bankruptcy Rules

justify denial of the Motion.

2.      There can be no dispute that the Slazengers Entities have unequivocally

relinquished any right to recovery from SGP's bankruptcy estate, and therefore lack any stake in

the outcome of SGP's chapter 11 case and any standing to object to SGP's financing under the

Key Parties Settlement Order.  Thus, in seeking a stay of that order, the Slazengers Entities

cannot meet their burden of demonstrating (1) a likelihood that they will prevail on the merits of

their appeal; (2) that they would suffer irreparable harm if the stay is not granted; and (3) that

other parties would not suffer substantial harm if the stay is granted.

3.      The Slazengers Entities cannot meet their burden of demonstrating a likelihood of

success on the merits of their appeal of the Key Parties Settlement Order because they are not a

"creditor" of SGP and therefore lacked standing to object to the Key Parties Settlement Order or to file the within appeal.

4.     The Slazengers Entities cannot meet their burden of demonstrating "irreparable harm" if a stay of the Key Parties Settlement Order is denied because (i) the appeal will not be mooted if financing commences under the order and (ii) the Slazengers Entities have relinquished all rights to recover any money from SGP under any circumstances and, therefore, cannot possibly be harmed by or benefited from the allocation of funds or provision of financing under the Key Parties Settlement Order.

5.     The Slazengers Entities cannot meet their burden of demonstrating that a stay will not substantially harm SGP's creditors because, without the immediate financing provided by the Key Parties Settlement Order, SGP cannot prosecute litigation against the Slazengers Entities, which litigation constitutes SGP's most significant asset.

## II.  STATEMENT OF FACTS[3]

SGP commenced its chapter 11 bankruptcy case on November 30, 2004 (the "Petition Date"), by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[4]  Since the Petition Date, SGP has operated its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.  On December 15, 2004, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"), which has been actively involved in SGP's chapter 11 case.

As of the Petition Date, SGP had the exclusive right to sell Slazenger-brand golf products in the United States, Canada, Mexico, and the Caribbean Islands pursuant to a long term license agreement (the "License Agreement") and supply agreement (the "Supply Agreement") with

---

[3]     A complete recitation of the underlying facts are set forth in SGP's Debtors-Appellees' Brief at pp. 4-12 and is incorporated herein by reference.

certain of the Slazengers Entities. The Slazengers Entities asserted claims against SGP in SGP's bankruptcy case for, *inter alia*, pre- and post-petition royalties under the License Agreement.

**SGP's Postpetition Litigation against the Slazengers Entities.**

On December 8, 2004, following the filing of its chapter 11 petition, SGP commenced an adversary proceeding against the Slazengers Entities and certain related entities, docketed as Adversary Proceeding No. 04-57512, by filing a Verified Complaint alleging, *inter alia*, breach of the License and Supply Agreements and tortious interference with contractual and business relations and (the "Contract Suit"). On January 6, 2005, the Slazengers Entities filed a joint answer to the Complaint containing, *inter alia*, counterclaims alleging breaches of the License and Supply Agreements by SGP and seeking injunctive and declaratory relief declaring the agreements terminated. The Slazengers Entities filed an amended answer and an amended corrected answer the following day.[5]

**The Slazengers Entities' release of all rights to recovery from SGP.**

On June 27, 2005, the Bankruptcy Court issued its *Order Under R. Bankr. P. 9019 Approving Settlement Agreement and Rejection of Executory Contracts,* in which it approved a settlement between SGP and the Slazengers Entities (the "Slazengers Settlement"). D. 357; A157.[6] Under the Slazengers Settlement:

- the Slazengers Entities released their claims against SGP's estate and agreed to pay SGP $575,000;

---

[4]  The "Bankruptcy Code" refers to 11 U.S.C. §101, *et seq.*

[5]  SGP also filed two additional adversary proceedings against certain Slazengers Entities: one seeking the avoidance of preferential transfers under Bankruptcy Code section 547(b) (the "Preference Suit"), and one seeking avoidance of preferential transfers and a fraudulent transfer under Bankruptcy Code sections 544 and 548 (the "Fraudulent Transfer Suit").

[6]  Throughout this Brief, "D." refers to the docket numbers of the Bankruptcy Court record, and "A" refers to the pages of the appendix to Appellants' Opening Brief.

- SGP agreed, *inter alia,* to reject its contracts with the Slazengers Entities and to dismiss the Preference Suit and the Fraudulent Transfer Suit;  and

- the Slazengers Entities preserved their defenses and counterclaims in the Contract Suit, but *only* for the purpose of offsetting any judgment in favor of SGP in the Contract Suit.   D. 345 at 4-5, A125-26, and Exhibit 1 thereto, A132.

The Slazengers Entities' release of claims against SGP in the Slazenger Settlement is critical here.   Specifically, the Slazenger Settlement agreement provided that the Slazengers Entities would withdraw and not assert all of their claims in SGP's bankruptcy case, but would retain their counterclaims in the Contract Suit for the limited purpose of setting off any judgment in favor of SGP.  D. 345 Ex. 1 at 3; A136.   Thus, as the Slazengers Entities conceded in open court, the Slazengers Entities gave up their claims against SGP's estate, retaining *only* the right to assert them as defenses and counterclaims in the Contract Suit and *only* to the extent they would offset any recovery SGP received in that suit.  D. 401 at 8-9; A236-37.

**Key Parties' agreed allocation of Slazengers Settlement, Contract Suit Proceeds, and Wind-Down Financing and the Slazengers Entities objection thereto.**

Following the Slazengers Entities' payment of $575,000 to SGP under the Slazengers Settlement, SGP and *all of the remaining key parties in interest* in SGP's bankruptcy case reached agreement on the allocation of those funds (the "Key Parties Settlement").  D. 364, Ex. A at 2; A174.  The Key Parties Settlement also provided for supplemental financing to fund the administration of SGP's bankruptcy case and for the allocation of any proceeds from the Contract Suit, SGP's most significant remaining asset.  D. 364 Ex. A at 3; A175.

On July 1, 2005, SGP moved the Bankruptcy Court for an order approving the Key Parties Settlement.  D. 364; A169.  Because all of the remaining key parties in interest were

involved in the negotiation of, and were parties to, the Key Parties Settlement, SGP also moved to limit notice of the proposed settlement (the "Limited Notice Motion") so the motion for its approval could be heard at the next omnibus hearing set for July 14, 2005.  D. 365; A183.  On July 5, the Bankruptcy Court granted the Limited Notice Motion.  D. 369; A187.

Notwithstanding the fact that the Slazengers Entities no longer had any interest in SGP's estate, or any claim to the proceeds that they had paid into the estate pursuant to the Slazengers Settlement, the Slazengers Entities objected to both the Key Parties Settlement and the Limited Notice Motion.  D. 373; A188.  SGP responded by asserting that the Slazengers Entities lacked standing to present an objection to the Key Parties Settlement.  D. 379; A198.  The Bankruptcy Court heard the motion to approve the Key Parties Settlement and the Slazengers Entities' objection thereto on July 14, 2005.  D. 401; A229.

**The Bankruptcy Court's determination that the Slazengers Entities lacked standing to object to the Key Parties Settlement and the approval thereof.**

At the hearing on the motion to approve the Key Parties Settlement, counsel for SGP, the Provident Bank (the "Bank," SGP's senior secured lender), and the Committee all spoke in favor of the Key Parties Settlement, with counsel for the Committee noting that the Committee had voted unanimously in favor thereof.  D. 401 at 19-20; A247-48.

Counsel for the Slazengers Entities conceded that, as a result of the Slazengers Entities' release of their claims under the Slazengers Settlement, the Slazengers Entities no longer had any interest in SGP's estate:

> THE COURT:  You cannot recover a nickel from this estate, correct?
>
> MR. COOK:  *That's right.*  But we can—but we can diminish, if not demolish, the estate's major remaining asset, the so-called Dunlop litigat[ion].

D. 401 at 16-17; A244-45 (emphasis added).  Moreover, counsel for the Slazengers Entities implicitly acknowledged that the only reason the Slazengers Entities objected to the Key Parties

Settlement was to thwart or prohibit SGP from liquidating the the Contract Suit against the Slazengers Entities, sole significant remaining asset of the estate, by denying the SGP the financing necessary to pursue the litigation.  D. 401 at 10; A235.

At the conclusion of the hearing, the Bankruptcy Court ruled that the Slazengers Entities lacked standing to object to the Key Parties Settlement and that, in any event, the Slazengers Entities' objections were without merit.  D. 401 at 21-23; A249-51.  The Bankruptcy Court approved the Key Parties Settlement via entry of the Key Parties Settlement Order (the order that is the subject of the present Motion for stay) on July 15, 2005.  D. 386; A256.

### III.  ARGUMENT

In order to obtain a stay of the Key Parties Settlement Order under Bankruptcy Rule 8005, the Slazengers Entities bear the burden (*see, e.g., In re Charter Co.*, 72 B.R. 70, 71-72 (Bankr. M.D. Fla. 1987)) of demonstrating (1) a likelihood that they will prevail on the merits of their appeal; (2) that they would suffer irreparable harm if the stay is not granted; (3) that other parties would not suffer substantial harm if the stay is granted; and (4) that the stay serves the public interest  *See, e.g., In re Dobslaw*, 20 B.R. 922 (Bankr. E.D. Pa. 1982), *aff'd on other grounds*, 712 F.2d 864 (3d Cir. 1983); *In re Ward*, 184 B.R. 253 (Bankr. D.S.C. 1995); *In re Byrd*, 172 B.R. 970 (Bankr. W.D. Wash. 1994); *In re Internet Realty Partnership*, 27 B.R. 938 (Bankr. E.D. Pa. 1983).  The Slazengers Entities' Motion must be overruled as a matter of law because the Slazengers Entities cannot meet any of these threshold requirements.

Critically, there is no dispute that the Slazengers Entities have unequivocally withdrawn and agreed not to assert all of their claims against SGP.  The Slazengers Entities have retained their right to assert *counterclaims* against SGP in the Contract Suit *defensively*, but that right is valid only to the point of setting off and reducing the Slazengers Entities' liability to zero dollars. The Slazengers Entities cannot recover any money from SGP under any circumstances.  In other

words, even if the Slazengers Entities obtain a multi-million dollar judgment against SGP, and SGP is denied all relief against the Slazengers Entities, the Slazengers Entities can do nothing more than walk away with their paper judgment. This much is absolutely stipulated and undisputed.

**A.     Denial Of The Motion Is Warranted Because The Slazengers Entities Have Failed To Comply With The Requirements Of The Applicable Bankruptcy Rules.**

**1.     The Slazengers Entities have not complied with Bankruptcy Rule 8011(d).**

Bankruptcy Rule 8011(d) governs motions in appeals where the movant requests expedited action to avoid irreparable harm. Although the Slazengers Entities have denominated the Motion as an "emergency," they have not complied with any of the rule's requirements. Specifically, the Motion is not accompanied by an affidavit "setting forth the nature of the emergency" and stating "when and how opposing counsel was notified" prior to the filing of the motion of the emergency request. Fed. R. Bankr. P. 8011(d). Nor does the Motion "state whether all grounds advanced in support [of the Motion] were submitted to the bankruptcy judge" and, if not, "why the motion should not be remanded to bankruptcy judge for reconsideration." *Id.* With respect to this latter requirement, the Slazengers Entities have merely averred that they "orally requested a stay pending appeal, which the [bankruptcy] court denied." Brief at 6. Their failure to comply with these requirements, when combined with their failure to comply with Bankruptcy Rule 8005 as described below, constitutes sufficient grounds for denial of the Motion in its entirety. *See Zahn v. Keybank of New York (In re Zahn Farms)*, 206 B.R. 643, 645 (2d Cir. B.A.P. 1997) (denying motion for stay pending appeal for failure of movants to comply with requirements of Fed. R. Bankr. P. 8005 and 8011(d)).

### 2.    The Slazengers Entities have not complied with Bankruptcy Rule 8005.

Although purporting to rely upon the provisions of Bankruptcy Rule 8005, the Slazengers Entities ignore its express language.  In authorizing a party to move the district court for a stay of an order pending appeal, the rule requires that the movant "show why the relief, modification, or termination was not obtained from the bankruptcy judge."  Fed. R. Bankr. P. 8005.  This provision requires that the movant "set out the reasons given for the [bankruptcy] judge's action."  10 *Collier on Bankruptcy* ¶ 8005.10, at 8005-11 (15th rev. ed. 2005).  A movant's failure to address why the bankruptcy judge denied its application for a stay violates the rule and is a basis for denying the motion.  *Bergemann v. Babcock & Wilcox Co. (In re Babcock & Wilcox)*, 2000 WL 533492 at *2 (E.D. La. May 3, 2000) (motion to district court violated Bankruptcy Rule 8005 where it failed to indicate the reasons for bankruptcy judge's denial of motion for stay) (a copy is attached hereto as <u>Exhibit A</u>); *In re Duncan*, 107 B.R. 758, 759 (W.D. Okla. 1988) (same).

As noted above, the Slazengers Entities have simply informed this court that they orally requested that the Bankruptcy Court issue a stay and that the request was denied.  By failing to articulate the reasoning of the Bankruptcy Court or, at the very least, describe the arguments presented below on the issue, they have denied this court "the benefit of the views of the Judge who is familiar with the issues pertaining to any purported emergency."  *In re Zahn Farms*, 206 B.R. at 645.  Moreover, as a result of such omission, it is impossible to discern why they would not have filed an actual motion with the Bankruptcy Court as contemplated in the first sentence of Bankruptcy Rule 8005 as opposed to making a mere oral request at hearing.  Fed. R. Bankr. P. 8005 ("A motion for a stay . . . must ordinarily be presented to the bankruptcy judge in the first instance.").  The Slazengers Entities' utter disregard for the rules governing the Motion requires that the court deny the requested relief.

**B.      The Motion Must Be Denied Because The Slazengers Entities Cannot Demonstrate That They Are Likely To Succeed On The Merits Of The Appeal.**

The Slazengers Entities assert three arguments in support of their appeal of the Key Parties Settlement Order: (i) the Bankruptcy Court improperly held that the Slazengers Entities lacked standing to object to the Key Parties Settlement; (ii) the Key Parties Settlement should not have been approved on the merits; and (iii) the Bankruptcy Court improperly shortened notice of the hearing on the Key Parties Settlement.

For the reasons explained more fully below, the Slazengers Entities are not likely to succeed on any of these arguments and, therefore, cannot meet their burden of demonstrating likelihood of success on the merits of this appeal.

**1.      The Slazengers Entities lacked standing to object to the Key Parties Settlement because they were not "creditors" of SGP when the Key Parties Settlement was approved.**

The Slazengers Entities first argue that they had standing to object to the approval of the Key Parties Settlement because they are "creditors" within the meaning of that term under the Bankruptcy Code.  However, because the Slazengers Entities relinquished all rights to recovery from SGP's bankruptcy estate before the motion for approval of the Key Parties Settlement was heard, they cannot be considered "creditors" as a matter of law.  Thus, the Bankruptcy Court correctly determined that the Slazengers Entities lacked standing to object to the Key Parties Settlement.  Accordingly, the Slazengers Entities' appeal of the Key Parties Settlement Order is unlikely to succeed on the merits.

The Slazengers Entities rely primarily upon 11 U.S.C. § 1109(b), which provides:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, *a creditor*, and equity security holder, or any indenture trustee, *may raise and may appear and be heard on any issue in a case under this chapter*.

(emphasis added).  For this statute to apply, however, the Slazengers Entities must establish that they are one of the parties listed therein.  The only one they actually rely upon is "creditor."

Section 101(10) of the Bankruptcy Code defines "creditor" as, *inter alia*, an "entity that has a *claim* against the debtor that arose at the time of or before the order for relief concerning the debtor[.]"  11 U.S.C. § 101(10) (emphasis added).  In turn, the Bankruptcy Code defines "claim" as a "*right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured [or a] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."  11 U.S.C. § 101(5) (emphasis added).

Although the definition of "claim" is generally a broad one, it is not without limitation. *See, e.g., In re Udell*, 18 F.3d 403, 406 (7th Cir. 1994); *Federal Communications Comm'n v. NextWave Personal Communications, Inc.*, 537 U.S. 293 (2003); *Johnson v. Home State Bank*, 501 U.S. 78 (1991)); *Mullen v. United States,* 696 F.2d 470, 472 (6th Cir. 1983) ("Admittedly, this a broad definition.  However, it should not be read to encompass every monetary obligation unless Congress has evinced such an intent.").  One such limitation is set forth in the definition itself—to possess a "claim," a "creditor" must have a "right to payment."  Indeed, the Third Circuit has concluded specifically that a "right to payment" generally involves "a situation where [a party] is attempting to get money from the debtor[.]"  *In re Torwico Electronics, Inc.*, 8 F.3d 146, 151 (3d Cir. 1993).

Here, as explained more fully in SGP's Brief of Appellee, the Slazengers Entities simply have no "right to payment" from SGP, and, therefore, have no "claim."  The Slazengers Entities,

notwithstanding their convoluted argument to the contrary, possess, at most, a potential offset to SGP's recovery in the Contract Suit.  By virtue of the Slazengers Settlement, the Slazengers Entities can no longer sue independently on those "claims" or otherwise assert them in SGP's bankruptcy case.  Thus, the Slazengers Entities have no "right to payment."  And because the Slazengers Entities have no "claim," they are not creditors entitled to be heard pursuant to 11 U.S.C. §1109(b).

Beyond a "right to payment," the Slazengers Entities similarly have no "stake" in these proceedings.  In their objection to the Key Parties Settlement, the Slazengers Entities complained that it was unfair to the other parties remaining in the case.  But all of those parties signed the Key Parties Settlement.  Indeed, both the Committee and the Bank expressly supported the settlement at the July 14, 2005 hearing.  D. 401 at 19-20; A247-48.  The Slazengers Entities cannot assert the rights of other parties in interest to create an artificial "stake" in SGP's chapter 11 case.  *See, e.g., In re PWS Holding Corp.*, 228 F.3d. 224, 248 (3d Cir. 2000), quoting *Kane v. Johns-Manville Corp*, 843 F.2d 636, 644 (2d. Cir. 1988).

Here, the Slazengers Entities are the proverbial "third party" attempting to interfere with an administrative settlement between parties whose "rights" are allegedly being impaired, even though those parties have concluded that the settlement is in their best interests.  The Bankruptcy Court herein correctly concluded that the Slazengers Entities lack "a sufficient stake in the proceedings so as to require representation" and, therefore, have no right to be heard regarding these matters.  Accordingly, the Slazengers Entities lacked standing to object to the Key Parties Settlement, thereby rendering the success of their appeal unlikely.

2.      **The Slazengers Entities lack standing to prosecute this appeal.**

The Slazengers Entities will not likely succeed in this appeal because they lack standing to prosecute it.  *See, e.g., Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995) ("[T]he standing requirement in bankruptcy appeals is more restrictive than the 'case or controversy' standing requirement of Article III, which 'need not be financial and need only be 'fairly traceable' to the alleged illegal action.'"); *In re ANC Rental Corp.*, 57 Fed. Appx. 912, 914 (3d Cir. 2003); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004); *IPSCO Steel (Alabama), Inc. v. Blaine Constr. Corp.*, 371 F.3d 150, 155 (3d Cir. 2004).

To have standing to appeal an order of the bankruptcy court pursuant to Bankruptcy Rule 8002, a party must demonstrate that it is a "person aggrieved."  *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 494 (3d Cir. 1998).  A "person aggrieved" is one "whose pecuniary interests are *directly and adversely affected* by a bankruptcy court order that 'diminishes their property, increases their burdens, or impairs their rights[.]'"  *Id.* at 495 (emphasis added) (citing, *Travelers Ins. Co.*, 45 F.3d at 741-42 (quoting, *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)).  *See also In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 530 (3d Cir. 1999) (rights or interests must be affected pecuniarily by bankruptcy court order to have standing to appeal).

In this case, the Slazengers Entities cannot establish that their pecuniary interests are directly and adversely affected because the Slazengers Entities relinquished all of their rights to recover money from the estate in the Slazengers Settlement.  Accordingly, the Slazengers Entities lack standing to prosecute this appeal, which will not likely succeed on the merits as a result.

**C.**    **The Slazengers Entities Cannot Demonstrate That They Will Suffer "Irreparable Harm" If The Stay Is Denied.**

According to the Slazengers Entities, they will suffer irreparable harm if they cannot obtain effective appellate relief.  Yet at no point do they articulate why they will be unable to obtain "effective appellate relief" absent a stay of the Bankruptcy Court's order.  Instead, they merely assert that to the extent that SGP borrows and expends funds pursuant to the Supplemental Financing, "SGP will undoubtedly argue that this appeal with respect to the expended funds is moot."  (Brief at 10.)  In other words, the Slazengers Entities do not contend that the appeal *will be* moot in the absence of a stay—only that SGP "will undoubtedly argue" that it is.  This mere *possibility* of mootness, even if real, simply does not rise to the level of "irreparable injury" required to obtain a stay pending appeal.  *See, e.g., American Hospital Assoc. v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) ("Only harm that the district court cannot remedy following a final determination on the merits may constitute irreparable harm."); *Campbell Soup Co. v. ConAgra, Inc.*, 801 F. Supp. 1298 (D.N.J. 1991) (same), *vacated on other grounds*, 977 F.2d 86.

As a matter of law, the mere "risk that an appeal may become moot does not by itself constitute irreparable injury."  *In re Fullmer*, 323 B.R. 287, 304 (Bankr. D. Nev. 2005) (surveying cases).  Even if the Slazengers Entities were able to demonstrate that such risk exists, it would not justify imposition of a stay.  And, in truth, the specter of mootness is just that—an apparition.  As the Court of Appeals for the Third Circuit has recognized, "an appeal is not to be dismissed as moot merely because a court cannot restore the parties to the status quo ante.  Rather, when a court can fashion 'some form of meaningful relief,' even if it only partially redresses the grievances of the prevailing party, the appeal is not moot."  *The Resolution Trust Corp. v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.)*, 16

F.3d 552, 560 (3d Cir. 1993) (emphasis in original), quoting *Church of Scientology v. United States*, 506 U.S. 9, 113 S.Ct. 447, 450 (1992).

The *Swedeland* court's application of this "meaningful relief" rule is instructive with respect to the Slazengers Entities' fear that, if funding under the Key Parties Settlement Order commences, SGP will be able to argue that the appeal is moot with respect to any funds expended. In *Swedeland*, two different lenders sought bankruptcy court approval to provide working capital loans to the debtor under Bankruptcy Code section 364(d), which, under certain circumstances, authorizes chapter 11 debtors to obtain credit secured by liens that are senior to all existing liens on the debtor's property (*i.e.*, section 364(d) allows the debtor to grant "superpriority" liens to post-petition lenders, which liens are deemed to "prime" existing liens). A prepetition secured lender whose formerly senior liens were subordinated to the new lenders via the twin 364(d) orders sought and obtained reversal of the two orders in district court. The debtor appealed the district court's vacation of the two financing orders on grounds, *inter alia*, that the prepetition lender's appeals were moot due to the lender's failure to obtain stays of the orders pending appeal to the district court pursuant to Bankruptcy Code section 364(e).[7] *Swedeland*, 16 F.3d at 557-558.

The *Swedeland* court held that an appeal of the order authorizing one of the two loans (the "First Fidelity Loan"), which had been partially disbursed, was *not* moot absent a stay because "the court could grant [the subordinated prepetition lender] effective relief simply by prohibiting First Fidelity from making further advances." *Id.* at 561.

---

[7] Bankruptcy Code section 364(e) provides that "[t]he reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted . . . unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal." 11 U.S.C. 364(e).

*Swedeland*'s analysis of mootness principles is directly applicable here. If the requested stay of the Key Parties Settlement Order is denied, and the financing thereunder commences, the court would still be able to fashion effective relief (in the event the Slazengers Entities succeed on appeal) simply by prohibiting Kimolos[8] from making further advances. Thus, denial of a stay of the Key Parties Settlement Order will not render this appeal moot, even if Kimolos commences funding.

Moreover, to the extent SGP held any funds previously disbursed by Kimolos to SGP, those funds could be ordered returned to Kimolos. More specifically, any of the Kimolos funds previously disbursed to SGP's professionals could conceivably be subject to disgorgement. *See U.S. Trustee v. Official Comm. of Equity Security Holders (In re Zenith Electronics Corp.)*, 329 F.3d 338, 346-47 (3d Cir. 2003) (reversing district court's holding that appeal was moot where relief sought by U.S. Trustee was disgorgement of professional fees).[9]   In short, a variety of forms of effective relief could be fashioned with respect to the Kimolos funds if the Slazengers Entities were to prevail.

The forgoing discussion of the various modes of "effective relief" presumes, *arguendo*, that the Slazengers Entities have an interest in the source and terms of *any* postpetition financing of SGP's estate. This presumption is incorrect, however, because the Slazengers Entities have agreed to forego any right to recover money from SGP. Thus, even beyond the procedural "mootness" allegations raised in the Motion, the Slazengers Entities cannot suffer the "irreparable harm" required for a Rule 8005 stay as a matter of law.

---

[8]    "Kimolos" is Kimolos II, L.P., the lender under the Key Parties Settlement.

[9]    This would, of course, be a truly bizarre and incongruous result since one of the Slazengers Entities' arguments is that the allocation of the Slazengers Settlement Proceeds under the Key Parties Settlement is unfair to the estate's professionals because it purportedly deprives the professionals of funds they should have received.

The Bankruptcy Court for the Middle District of Florida explained this fundamental point in *In re Lykes Bros. S.S. Co.*, 221 B.R. 881 (Bankr. M.D. Fla. 1997), in which the court denied a creditor's request for a stay of a reorganization plan confirmation order. The appellant-creditor in *Lykes Bros.* sought a stay of the confirmation order pending an appeal of an order denying administrative priority treatment of its claim. The court found that the creditor could not satisfy the "irreparable harm" requirement because, regardless of whether the creditor's claim were afforded administrative priority, the creditor still would recover nothing on the claim because of the estate's inability to satisfy senior, superpriority claims. *Id.* at 884-885.

*Lykes Bros.* is especially instructive here. The *Lykes Bros.* court held that it was impossible for the appellant-creditor to demonstrate "irreparable harm" because, with or without a stay, the appellant-creditor had no ability to recover on its claim. *See id.* at 885. Here, the Slazengers Entities are similarly "out of the money"—and therefore incapable of being "irreparably harmed"—just for a different reason (*i.e.*, the Slazengers Entities have no right to recover money from SGP because of a contractual relinquishment). Regardless of whether the financing under the Key Parties Settlement Order is funded, the Slazengers Entities right to recover from SGP is the same: zero. If the Slazenger Entities held a valid, allowed claim (which they do not), they might arguably be subject to "injury" if the superpriority financing under the Key Parties Settlement Order ultimately devalued their hypothetical junior claim. But they have no such allowed claim and, therefore, have no potential to suffer legally recognizable "harm" or "injury," irreparable or otherwise, from the implementation of the Key Parties Settlement. Accordingly, the Slazengers Entities cannot point to the substance of the Key Parties Settlement Order as evidence of the "irreparable harm" required for a stay.

While the Court's determination of whether to grant a stay of the Settlement Order requires consideration and balancing of all four of the criteria mentioned above, if one criteria cannot be satisfied at all (*i.e.*, irreparable harm), the Court need not evaluate the other three because the stay must be denied as a matter of law. *See, e.g., Lykes Bros.*, 221 B.R. at 884, citing *In re Power Recovery Systems, Inc.*, 950 F.2d 798, 804 n.31 (1st Cir. 1991) ("[Appellant], realizing that it may not be able to meet all of the [four] elements, nevertheless contends that it still may obtain the relief it is seeking by a strong showing that it will likely succeed on appeal. This proposition urged by [appellant] is not supported by existing law. . . . 'Failure to meet even one of the criteria justifies denial.'"); *Lykes Bros.*, 221 B.R. at 884, citing *In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 53 (Bankr. S.D.N.Y. 1988) ("[T]he moving party must show 'satisfactory evidence on all four criteria.'").

Bluntly, the "failure to satisfy one prong of the standard for granting a stay pending appeal dooms [a stay] motion." *Green Point v. Treston*, 188 B.R. 9, 12 (S.D.N.Y. 1995). Thus, regardless of what the Slazengers Entities demonstrate in support of the other three stay criteria, the Motion must be denied as a matter of law because, for the reasons explained above, the Slazengers Entities cannot demonstrate irreparable harm.

**D.    SGP's Creditors Will Suffer Greater Harm Than Will The Slazengers Entities If The Key Parties Settlement Order Is Stayed.**

A stay cannot be granted because the harm to SGP's creditors will outweigh any harm to the Slazengers Entities. The Contract Suit is the estate's most significant, unliquidated asset. Without the financing provided under the Key Parties Settlement, SGP simply does not have sufficient resources to prosecute the Contract Suit. The Slazengers Entities could have settled the Contract Suit as part of the Slazengers Settlement. Instead, they Slazengers Entities elected to submit to the risks associated with litigation of such claims.

SGP's creditors, on the other hand, will be prejudiced severely by the imposition of a stay (*i.e.*, a block on funding of the costs of litigating the Contract Suit) pending a future resolution of this appeal, which resolution could be months or even years away.  SGP's creditors will be prejudiced and harmed by a stay because (a) a stay delays the prospect of recovery on their claims; (b) the costs of administration—including opposition to further maneuvering by the Slazengers Entities to avoid litigating the Contract Suit—will continue to mount; and (c) delay in litigating the Contract Suit would make fact gathering and investigation inherently more difficult.  Thus, a stay may seriously jeopardize the prospects of recoveries for SGP's unsecured creditors.  *See, e.g., In re Hydronic Enterprises, Inc.*, 51 B.R. 176 (Bankr. D.R.I. 1985) (imposing sanctions on a stay movant for the trustee's costs of opposing the stay).

**E.    The Public Interest Will Be Best Served If The Stay Is Denied.**

The Slazengers Entities are before the Court on the present stay Motion as part of a plan to pull the plug on funding for the Contract Suit against them.  Granting of the requested stay will not effect a resolution of the Contract Suit on the merits.  Much to the contrary, it may serve to jeopardize a meritorious conclusion, all to the injury of SGP's myriad unsecured creditors.

Indeed, the "public interest" question here presents itself frequently in analogous default judgment situations in civil litigation.  Without question, public policy disfavors entry of default judgments and mandates that defaults be declared only as a last resort upon a firm demonstration of due notice and opportunity for hearing.  *See, e.g., Nelson v. Coleman Co.*, 41 F.R.D. 7 (D.C.S.C. 1966); *Hamilton v. Edell*, 67 F.R.D. 18 (D.C. Pa. 1975) (observing that defaults are disfavored because the "interests of justice" are best served by a trial on the merits).

If a stay is entered here, the Slazengers Entities will have succeeded in pushing the Contract Suit down a slippery slope towards possible non-prosecution for want of funding.

Bearing in mind that, as a matter of law, the Slazengers Entities cannot demonstrate that they will suffer any "irreparable harm" if a stay is denied, the Court should not endorse the Slazengers Entities' stay Motion because it is clearly a tactic designed to bolster their negotiating leverage in the Contract Suit. A stay will not encourage a meritorious resolution to the Contract Suit (*i.e.*, one that could be do-or-die for unsecured creditor recoveries). Accordingly, the public interest will be best served by a denial of the Motion.

## IV.  CONCLUSION

WHEREFORE, for the reasons and authorities cited herein, SGP requests that the Court deny the Motion and the request for stay therein and grant all other and further relief as is proper under the circumstances.

August 29, 2005
Wilmington, Delaware

Respectfully submitted,

/s/ Frederick B. Rosner
Frederick B. Rosner (No. 3995)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE  19801
Telephone:     (302) 351-8000
Facsimile:     (302) 351-8010

- and -

H. Jeffrey Schwartz  (OBR #0014307)
Mark A. Phillips (OBR # 0047347)
Michael D. Zaverton  (OBR #0038597)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH  44114-2378
Telephone:     (216) 363-4500
Facsimile:     (216) 363-4588

Counsel for SGP Acquisition, LLC, Debtor and
Debtor in Possession

Doc 1311695   Ver 1